# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN THE MATTER OF RYAN DENVER | : | IN ADMIRALTY |
| AS OWNER OF M/V MAKE IT GO AWAY, | : | |
| FOR EXONERATION FROM OR | : | 1:21-cv-11841-ADB |
| LIMITATION OF LIABILITY | : | |

### THE UNITED STATES OF AMERICA'S CLAIM AND ANSWER TO RYAN DENVER'S, AS OWNER OF THE M/V MAKE IT GO AWAY, PETITION FOR EXONERATION FROM OR LIMITATION OF LIABILITY

Pursuant to Rule F(5) of the Supplemental Rules for Admiralty and Maritime Claims, the United States of America submits its Claim and Answer in response to Ryan Denver's, as owner of M/V MAKE IT GO AWAY, Complaint for Exoneration From or Limitation of Liability.  *See* ECF No. 1.

### THE UNITED STATES OF AMERICA'S CLAIM

The United States, by the authority of the Attorney General, and through undersigned counsel, files this Claim on behalf of the United States Coast Guard against Limitation Plaintiff Ryan Denver and his vessel, the M/V MAKE IT GO AWAY, and alleges that:

### NATURE OF THE ACTION

1.     This civil action is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2.     This Claim is brought pursuant to the Rivers and Harbors Act, 33 U.S.C. §§ 401 *et seq*., and the general maritime law seeking recovery on behalf of the United States and its agency, the U.S. Coast Guard, for damage to Boston Main Channel Light 5, an aid to

navigation owned by the United States, totaling approximately $300,981 that resulted from an allision with the M/V MAKE IT GO AWAY on July 17, 2021.

3.      The United States is, and was at all times pertinent to this Claim, a sovereign nation authorized to sue pursuant to the Rivers and Harbors Act, 33 U.S.C. §§ 401, *et seq.*

4.      The Court has jurisdiction over the subject matter and the parties.  *See* 28 U.S.C. §§ 1331, 1333, 1345.

5.      Venue is proper in this Court pursuant to 28 U.S.C § 1391(b), as it is the judicial district in which a substantial part of events giving rise to this cause of action occurred.

## PARTIES

6.      Upon information and belief, at all material times, Ryan Denver was a resident of Boston, Massachusetts.

7.      Upon information and belief, at all material times, Ryan Denver owned, operated, managed, or controlled the M/V MAKE IT GO AWAY, which remains located in this District.

8.      At all material times, the M/V MAKE IT GO AWAY was a 37-foot Pursuit recreational vessel on the navigable waters of the United States, with its home port in Boston, Massachusetts.

9.      Through the United States Coast Guard, the United States owned and maintained an aid to navigation entitled the Boston Main Channel Light 5 ("Channel Light 5") located at the entrance to Boston Harbor at Latitude 42-20-0.162N, Longitude 071-0-3.732W.

## FACTS

10.      Channel Light 5 is a stationary lighted tower located in Boston Harbor.

11.     On July 17, 2021, Channel Light 5 had a green light flashing at two-and-a-half (2.5) second intervals, was equipped with three (3) square green day boards, and stood 32 feet high.

12.     Upon information and belief, early in the morning hours of July 17, 2021, Limitation Plaintiff Ryan Denver and seven (7) passengers were on board the M/V MAKE IT GO AWAY in or near Boston Harbor.

13.     At approximately 0245 hours on July 17, 2021, Ryan Denver was operating the M/V MAKE IT GO AWAY near the entrance to Boston Harbor in the vicinity of Castle Island when the vessel allided with Channel Light 5.

14.     Upon information and belief, Ryan Denver was operating the M/V MAKE IT GO AWAY in an unsafe manner and/or at an unsafe rate of speed when the vessel allided with Channel Light 5.

15.     Upon information and belief, the M/V MAKE IT GO AWAY was damaged from the allision with Channel Light 5 and began taking on water and eventually capsized.

16.     Upon information and belief, Ryan Denver was operating the M/V MAKE IT GO AWAY without a proper lookout.

17.     Channel Light 5 was damaged from the allision. The structure's platform foundation piles, cross-beams, bracing, decking and primary access ladder were damaged from the impact with the M/V MAKE IT GO AWAY.

18.     Estimates to repair Channel Light 5 total approximately $300,981.

**Count I – Negligence for the Allision of M/V MAKE IT GO AWAY
and Channel Light 5**

19.     The United States refers to and incorporates by reference, as though fully set forth herein, each and every foregoing paragraph of this claim.

20.     Ryan Denver had a duty to act as a reasonably prudent owner and operator of the M/V MAKE IT GO AWAY.

21.     The allision on July 17, 2021, and the resulting damages, were caused by the fault, negligence, want of care, on the part of the operator, owner, and/or the crew of the M/V MAKE IT GO AWAY, or by the unseaworthy condition of the vessel, all within the privity or knowledge of the owner of the M/V MAKE IT GO AWAY.

**Count II – Strict Liability Arising Under the Rivers and Harbors Act of 1899 for the Allision of the M/V MAKE IT GO AWAY and the Channel Light 5**

22.     The United States refers to and incorporates by reference, as though fully set forth herein, each and every foregoing paragraph of this claim.

23.     Ryan Denver, as owner and operator of the M/V MAKE IT GO AWAY, is a "person" within the meaning of the Rivers and Harbors Act, as amended, 33 U.S.C. § 408.

24.     Boston Harbor is a navigable water of the United States within the meaning of 33 U.S.C. § 408.

25.     Channel Light 5 is a public work built and maintained for the improvement of the navigable waters of the United States within the meaning of 33 U.S.C. § 408.

26.     At all materials times, the M/V MAKE IT GO AWAY was and is a vessel "used and employed" within the meaning of 33 U.S.C. § 412.

27.     Ryan Denver, *in personam*, and the M/V MAKE IT GO AWAY, *in rem*, are liable to the United States for the cost of repairing Channel Light 5 to include pre-judgment interest.

## DAMAGES

28.     Ryan Denver and the M/V MAKE IT GO AWAY (*in rem*) are liable, under the general maritime law, the Rivers and Harbors Act, or both, to the United States for damage to Channel Light 5 in the amount of at least $300,981, together with interest and costs as provided by 33 U.S.C. § 412, no part of which has been paid.

## <u>UNITED STATES' ANSWER AND AFFIRMATIVE DEFENSES</u>

### JURISDICTION

1.     This is a case of admiralty and maritime jurisdiction under 28 U.S.C. §1333(1), Fed. R. Civ. P. 9(h), Supplemental Rule F, and 46 U.S.C. § 30511 and § 30502 (2006).

<u>ANSWER</u>:  The United States admits that this is an admiralty action within the meaning of Fed. R. Civ. P. 9(h)  and 28 U.S.C. § 1333(1).  The United States denies that the Limitation of Liability Act, 46 U.S.C. §§ 30501-12 *et seq.* applies to its claim brought pursuant to the Rivers and Harbors Act of 1899, 33 U.S.C. §§ 401 *et seq.*

### VENUE

2.     Venue is proper in the District of Massachusetts pursuant to Supplemental Rule F(9) because the Vessel has not been attached or arrested; no known civil suits have been commenced against its owner; and the Vessel was operating in Boston Harbor on navigable waters of the United States at the time of the accident.

<u>ANSWER</u>: The United States admits that venue is proper in this district because it is the judicial district in which a substantial part of events giving rise to this cause of action occurred under 28 U.S.C § 1391(b). The United States denies the remaining allegations in paragraph 2 because it lacks sufficient knowledge or information to form a belief as to the truth of the allegations.

## PARTIES

3.      Limitation Plaintiff Ryan Denver is the registered owner of the Vessel.

Limitation Plaintiff resides in Boston, MA.

ANSWER:  The United States, upon information and belief, admits the allegations

contained in paragraph 3.

4.      The Vessel is a recreational 37 feet 11 inches (37'11") Pursuit Vessel, Model DC

365, built in 2021, with three 2020 Yamaha 300 HP engines.

ANSWER:  The United States lacks sufficient knowledge or information to form a belief

as to the truth of the allegations in paragraph 4, and therefore denies them.

5.      There were seven (7) passengers onboard the Vessel in addition to Limitation

Plaintiff, some of whom sustained injuries in the accident and one of whom died later.

ANSWER:  The United States admits there were seven (7) passengers on board the M/V

MAKE IT GO AWAY at the time of the allision. One of the passengers, Jeanica Julce,

died following the allision. As to the remaining allegations in paragraph 5, the United

States lacks sufficient knowledge or information to form a belief as to the truth of the

allegations, and therefore denies them.

## STATEMENT OF FACTS

6.      At approximately 0245 hours on July 17, 2021, Limitation Plaintiff was

navigating the Vessel in Boston Harbor, from the Quincy area to Boston's Inner Harbor

(in a Northwesterly direction) to the East of Castle Island, and in a proper manner and at

an appropriate speed when the Vessel allided with a fixed navigational aid (Daymarker

No. 5) in the vicinity of Castle Island.

ANSWER:  The United States admits that Limitation Plaintiff's Vessel allided with Daymarker No. 5 in the vicinity of Castle Island on July 17, 2021.  The United States denies the remaining allegations in paragraph 6.

7.       Daymarker No. 5's primary purpose is to warn large deep-draft ocean-going vessels heading inbound and outbound to/from the Port of Boston, which are constrained by their draft to the ship channel, of shallow water in order to prevent large vessel groundings.

ANSWER:  Paragraph 7 contains statements which require no response from the United States.  To the extent a response is required by the United States, the allegations in paragraph 7 are denied.

8.       Daymarker No. 5 is maintained by the United States Coast Guard and is supposed to be equipped with a green light that flashes once every two-and-a-half (2.5) seconds, which is affixed to a platform constructed on top of four (4) pilings that are driven into the seafloor.

ANSWER:  The United States admits that Daymarker No. 5 is maintained by the United States Coast Guard and is equipped with a green light that flashes at two-and-a half (2.5) second intervals. The United States denies the remaining allegations in paragraph 8 as written.

9.       At the time of the allision, the light was nearly forty feet (40') above the water level, and the four pilings were mostly exposed and were taller than the Vessel (measured from the waterline to the bottom of the platform).

ANSWER:  The United States denies the allegations in paragraph 9.

10.     None of Daymarker No. 5's pilings were illuminated or affixed with any

reflective material to make them visible at night.

<u>ANSWER</u>:  The United States admits that Daymarker No. 5's pilings were not affixed

with reflective material.  The United States lacks sufficient knowledge or information to

form a belief as to the truth of the remaining allegations in paragraph 10, and therefore

denies them.

11.     At the time of the allision, the Boston Harbor Phase 3 Rock Removal Project (the

"Dredging Project") was in operation and DREDGE NEW YORK (DREDGE NEW

YORK has a length of 200' and beam of 57') and DRILLBOAT APACHE

(DRILLBOAT APACHE has a length of 210' and a beam of 60') were off Castle Island,

Northwest of Daymarker No. 5. (Behind Daymarker No. 5, from the Vessel's

perspective).

<u>ANSWER</u>:  The United States lacks sufficient knowledge or information to form a belief

as to the truth of the allegations in paragraph 11, and therefore denies them.

12.     Limitation Plaintiff was navigating the Vessel on its return trip to Boston by

keeping the Vessel on the same track line he made good on the earlier outbound trip, as

recorded and displayed on the Vessel's chartplotter.

<u>ANSWER</u>:  The United States lacks sufficient knowledge or information to form a belief

as to the truth of the allegations in paragraph 12, and therefore denies them.

13.     The Moon had set hours before the allision, and Limitation Plaintiff could not see

Daymarker No. 5 because of the dark pilings and the 40 foot high light was absorbed by

background lights including from the Dredging Project.

ANSWER: The United States lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 13, and therefore denies them.

14.     Limitation Plaintiff was unable to avoid the allision by the time Daymarker No. 5 came into sight; despite being on the same track line as his earlier outbound trip.

ANSWER:  The United States denies the allegations in paragraph 14.

15.     After the allision, the Vessel began taking on water, so Limitation Plaintiff and the seven (7) passengers entered the water. They were not ejected in the allision.

ANSWER:  The United States lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 15, and therefore denies them.

16.     Moments after Limitation Plaintiff and the passengers entered the water, another motor vessel with three people onboard, identification pending, arrived at the scene (the "Unidentified Vessel").

ANSWER:  The United States lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 16, and therefore denies them.

17.     The Unidentified Vessel arrived at the scene and was positioning to provide assistance to the eight (8) people in the water, such that Limitation Plaintiff and others began moving towards the Unidentified Vessel in belief and reliance that aid was to be provided.

ANSWER:  The United States lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 17, and therefore denies them.

18.     Without notice, the Unidentified Vessel departed the scene and failed to provide any assistance to the eight (8) people in the water, including Jeanica Julce who drowned at some point after the Unidentified Vessel departed.

ANSWER:  The United States lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 18, and therefore denies them.

19.     The two passengers on the Unidentified Vessel were heard yelling at its operator as he left the scene: "What the hell are you doing?"

ANSWER:  The United States lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 19, and therefore denies them.

20.     The Unidentified Vessel's operator violated his duty to provide assistance pursuant to 46 U.S. Code § 2304.

ANSWER:  The allegation in paragraph 20 contains a legal conclusion that is respectfully referred to the Court for determination and to which no response is required. To the extent a response is required, the United States denies the allegation in paragraph 20.

21.     Limitation Plaintiff and one of the passengers who could swim did everything they could to assist the remaining six (6) people in the water, until the United States Coast Guard arrived.

ANSWER:  The United States lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 21, and therefore denies them.

22.     The United States Coast Guard took seven (7) people including Limitation Plaintiff back to shore. Search and Rescue responders found Jeanica Julce's body sometime later.

ANSWER: The United States admits seven (7) people were taken back to shore following the incident.  The United States lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 22, and therefore denies them.

23.     The Vessel was later towed into port and remains in the custody of the

Commonwealth of Massachusetts.

ANSWER: The United States admits that the M/V MAKE IT GO AWAY was towed into

port.  The United States lacks sufficient knowledge or information to form a belief as to

the truth of the remaining allegations in paragraph 23, and therefore denies them.

24.     The July 17, 2021, accident with the Vessel and any and all injuries, damages, and

losses claimed to have resulted from it were not caused by a breach of applicable statutes

or regulations, or any type of unseaworthiness, intentional fault, neglect, lack of

reasonable care, or liability by or on the part of Limitation Plaintiff or the Vessel.

ANSWER:  The United States denies the allegations in paragraph 24.

25.     Alternatively, any breach of applicable statutes or regulations, or any type of

unseaworthiness, fault, neglect, lack of reasonable care, or liability by or on the part of

Limitation Plaintiff or the Vessel that might have contributed to any and all injuries,

damages, and losses claimed to have resulted from the July 17, 2021, accident were

occasioned and incurred without the privity or knowledge of Limitation Plaintiff and/or

were occasioned and incurred due to the fault of other parties whose actions and/or

inactions are not Limitation Plaintiff's responsibility.

ANSWER:  The United States denies the allegations in paragraph 25.

## NOTICE OF CLAIM

26.     On August 6, 2021, Limitation Plaintiff received a letter of representation and

notice of claim from Wilfred and Evelyn Julce for the alleged wrongful death of their

daughter, Jeanica Julce.

ANSWER:  The United States admits that a notice of claim from Wilfred and Evelyn Julce on behalf of their daughter, Jeanica Julce, to Limitation Plaintiff is dated August 6, 2021.  The United States denies the remaining allegations in paragraph 26 because it lacks sufficient knowledge or information to form a belief as to the truth of those allegations.

27.     On October 6, 2021, Limitation Plaintiff received a letter of representation and notice of claim from Aristide Lex who allegedly suffered personal injuries during the allision.

ANSWER:  The United States admits a notice of claim from Aristide Lex to Limitation Plaintiff is dated October 6, 2021.  The United States denies the remaining allegations in paragraph 27 because it lacks sufficient knowledge or information to form a belief as to the truth of those allegations.

28.     On November 8, 2021, Limitation Plaintiff received a notice of claim from the United States Coast Guard for the alleged damage to Daymarker No. 5 as a result of the allision.

ANSWER: The United States admits that the U.S. Coast Guard emailed Mr. Denver a letter dated November 8, 2021, advising him that he was liable for damages to Daymarker No. 5 as a result of the allision.  The United States lacks sufficient knowledge of the remaining allegations in paragraph 28, and therefore denies them.

29.     Pursuant to Supplemental Rule F(1), this Limitation Complaint is filed within six (6) months of any notice of claims.

ANSWER: The United States admits that not more than six months elapsed between August 6, 2021, and the date Limitation Plaintiff filed his Complaint and Petition. The United States denies the remaining allegations in Paragraph 29.

30.     Limitation Plaintiff does not know the total dollar amount of the claims already received or for any other potential claims that may be made for injuries, damages, and losses allegedly sustained by the other passengers or other entities as a result of the July 17, 2021 accident.

ANSWER:  The United States lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 30, and therefore denies them.

31.      Limitation Plaintiff expects that formal claims based on those injuries, damages, and losses may be presented in due course and that the total claims may exceed the post-casualty value of the Vessel.

ANSWER:  The United States admits that total claims may exceed the post-casualty value of the Vessel which is alleged to be $50,000.  *See* ECF No. 1, ¶ 32.  The United States lacks sufficient knowledge of the remaining allegations in paragraph 31, and therefore denies them.

**VALUE**

32.     According to the Declaration of Jonathan K. Klopman, filed herewith, the post-casualty value of the Vessel does not exceed to $50,000.00 following the conclusion of the subject voyage with no pending freight.

ANSWER:  The United States lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 32, and therefore denies them.

## EXONERATION/LIMITATION

33.     Limitation Plaintiff seeks exoneration from liability for any and all injuries,

damages, and losses of any kind arising from the July 17, 2021, incident with the Vessel

including personal injuries, loss of consortium or services, income loss, as well as any

other damages or claimed losses incurred which have been and/or may hereafter be

asserted, and Limitation Plaintiff states that he has valid defenses on the facts and the

law.

ANSWER:  The United States denies that Limitation Plaintiff is entitled to exoneration

from any injuries, damages, and losses of any kind resulting from the July 17, 2021,

incident. The United States lacks sufficient knowledge or information to form a belief as

to the truth of the remaining allegations in paragraph 33, and therefore denies them.

34.     Limitation Plaintiff alternatively seeks limitation of his liability arising from the

July 17, 2021, incident with the Vessel pursuant to 46 U.S.C. §§ 30501-12, Supplemental

Rule F, and case law, and to that end submitted with the Court a payment in the amount

of $50,500.00 ($50,000.00 for the value of Limitation Plaintiff's interest in the Vessel

plus $500.00 for statutory costs).

ANSWER:  The United States denies that Limitation Plaintiff is entitled to limit his

liability from the July 17, 2021, incident with the Vessel under 46 U.S.C. §§ 30501-12,

Supplemental Rule F, and/or case law.  The United States admits Plaintiff deposited with

the Court a payment in the amount of $50,500.  The United States lacks sufficient

knowledge or information to form a belief as to the truth of the remaining allegations in

paragraph 34, and therefore denies them.

**RELIEF SOUGHT**

WHEREFORE Limitation Plaintiff Ryan Denver, as owner of the M/V MAKE IT GO AWAY, USCG No. 1318281, requests the following relief:

1.     That this Honorable Court enter an injunctive order pursuant to Supplemental Rule F(3) ceasing and enjoining all lawsuits, causes of action, and claims against Limitation Plaintiff arising from the July 17, 2021, accident, except in this civil action;

2.     That Limitation Plaintiff serves a copy of that injunctive order on any person to be enjoined or provide a copy to such person's counsel;

3.     That the Court enter an order directing the issuance of a notice to Claimants, pursuant to Supplemental Rule F(4);

4.     That the Court adjudges Limitation Plaintiff not liable for any and all injuries, damages, or losses arising from the July 17, 2021 accident or that if Limitation Plaintiff is held liable in any part, his liability shall be limited at a maximum to the value of his $50,000.00 interest in the Vessel after the conclusion of the subject voyage and that Limitation Plaintiff be discharged from any such liability upon the surrender of such interest, and that the money surrendered, secured, or to be paid as aforesaid be divided *pro rata* among such Claimants as may duly prove their claims, saving to all parties any priorities to which they may be legally entitled, and that judgment may be entered discharging Limitation Plaintiff from all further liability; and

5.     That Limitation Plaintiff be provided such other and further relief as the Court may deem just and proper.

ANSWER:  Limitation Plaintiff's Wherefore paragraph does not require a response.  To
the extent a response is required, the United States denies the allegations and claims for
relief contained therein.

## UNITED STATES' AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Limitation Act does not apply to claims by the United States asserted under
the Rivers and Harbors Act, 33 U.S.C. §§ 401 *et seq*.

### SECOND AFFIRMATIVE  DEFENSE

If Limitation Plaintiff is found liable to the United States, such liability extends
beyond the value of the M/V MAKE IT GO AWAY including pending freight, due to the
fault, unseaworthiness, negligence, and lack of due care of Ryan Denver and the crew of
the M/V MAKE IT GO AWAY, all within the knowledge and privity of Limitation
Plaintiff.

### THIRD AFFIRMATIVE DEFENSE

The Limitation Complaint fails to state a claim upon which relief may be granted
in whole or in part.

**WHEREFORE**, the United States prays:

1.     That Limitation Plaintiff Ryan Denver be denied the right to exoneration from, or
limitation of liability and his Complaint be dismissed;

2.     That Limitation Plaintiff Ryan Denver be adjudged liable, without limitation, to
the United States for all losses sustained by the United States as a result of the July 17,
2021 incident, including interest, costs, and attorneys' fees;

3.     That the United States, at its discretion, be permitted to commission an

independent appraisal of the value of the M/V MAKE IT GO AWAY and offer evidence

of the same for the Court's consideration in setting the limitation amount, should

limitation be found to apply;

4.      That the claim of the United States be adjudicated herein, and that judgment be

entered against Limitation Plaintiff, Ryan Denver, and the M/V MAKE IT GO AWAY,

for all damages and losses sustained by the United States as a result of the July 17, 2021

incident described above.

5.      For all such other and further relief to which the United States may be entitled.

Dated: December 30, 2021

<div style="margin-left:40%">

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General
U.S. Department of Justice, Civil Division

NATHANIEL R. MENDELL
Acting United States Attorney

*/s/ Jessica G. Sullivan*
JESSICA G. SULLIVAN
Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
Post Office Box 14271
Washington, D.C. 20044-4271
Telephone: (202) 616-4044
Facsimile: (202) 616-4002
Email: jessica.sullivan@usdoj.gov

Attorneys for the United States of America

</div>

## CERTIFICATE OF SERVICE

I certify that on December 30, 2021, I electronically filed the United States of

America's Claim and Answer with the Clerk of Court through the CM/ECF system which

will send notification to all counsel of record:

Liam O'Connell
Kirby L. Aarsheim
Farrell Smith O'Connell, LLP
46 Middle Street, 2nd Flr.
Gloucester, MA 01930
loconnell@fsofirm.com
kaarsheim@fsofirm.com

Stesha A. Emmanuel
McCarter & English, LLP
City Place I
185 Asylum Street, 36th Fl.
Hartford, CT 06103
semmanuel@mccarter.com

William Burke O'Leary
The O'Leary Law Firm
63 Shore Road, Ste. 25
Winchester, MA 01890
bill@tuglaw.com

Carolyn M. Latti
Latti & Anderson, LLP
30 - 31 Union Wharf
Boston, MA 02109
clatti@lattianderson.com

Dennis P. Phillips
63 Shore Road, Ste. 23
Winchester, MA 01890
dppesq1@comcast.net

Robert W. Norton
Giarrusso, Norton, Colley & McGlone, PC
308 Victory Road
Marina Bay
North Quincy, MA 02171
rnorton@gncm.net

Peter R. Chandler
Sheff Law Offices, P.C.
The Daniel Webster Suite
10 Tremont Street
Boston, MA 02108
pchandler@shefflaw.com

/s/ Jessica G. Sullivan
JESSICA G. SULLIVAN
Trial Attorney
United States Department of Justice