**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN THE MATTER OF<br>RYAN DENVER AS OWNER OF<br>M/V MAKE IT GO AWAY,<br>FOR EXONERATION FROM OR<br>LIMITATION OF LIABILITY | **CIVIL ACTION NO. 21-11841-ADB**<br>**IN ADMIRALTY** |

**RYAN DENVER'S THIRD-PARTY COMPLAINT AGAINST LEE ROSENTHAL**

Now comes Limitation Plaintiff/Third-Party Plaintiff Ryan Denver ("Denver") by and through his undersigned counsel, and pursuant to Fed. R. Civ. P. 14 files his Third-Party Complaint against Third-Party Defendant Lee Rosenthal ("Rosenthal").

**PARTIES**

1. Limitation Plaintiff/Third-Party Plaintiff Ryan Denver is the owner of M/V MAKE IT GO AWAY ("the Vessel"), a recreational 37 feet 11 inches (37'11") Pursuit Vessel, Model DC 365, built in 2021, with three 2020 Yamaha 300 HP engines.

2. Third-Party Defendant, Lee Rosenthal is resident of Beverly, Massachusetts, within this District, and is the operator of a vessel that was navigating near and around Daymarker No. 5 (located East of Castle Island) from shortly before 3:00 a.m. on July 17, 2021, until shortly after 3:00 a.m. on July 17, 2021.

3. Claimant Wilfred Julce, as Special Personal Representative of the Estate of Jeanica Julce, is a resident of Somerville, Massachusetts. Jeanica Julce (the "Decedent") was a passenger onboard the Vessel during the subject voyage and was a resident of Somerville, Massachusetts.

4. Claimant Aristide Lex is resident of Boston, Massachusetts, and was a passenger onboard the Vessel during the subject voyage.

5.  Claimant Tory Govan is resident of Somerville, Massachusetts, and was a passenger onboard the Vessel during the subject voyage.

6.  Claimant Marzouk Onifade is resident of Boston, Massachusetts, and was a passenger onboard the Vessel during the subject voyage.

7.  Claimant Musse Kassa is resident of Belmont, Massachusetts, and was a passenger onboard the Vessel during the subject voyage.

## JURISDICTION

8.  The jurisdiction of this Honorable Court is predicated upon and within the maritime jurisdiction of this Honorable Court pursuant to 28 U.S.C. § 1333 and Fed. R. Civ. P. 9(h).

9.  In the alternative, the jurisdiction of this Honorable Court is predicated upon and within the supplemental jurisdiction of this Honorable Court pursuant to 28 U.S.C. § 1367, as these claims arise out of a common nucleus of operative facts with the claims asserted in Denver's Limitation Complaint and the resolution of the factually connected claims in a single proceeding will further the interests of conserving judicial resources and fairness to the parties in this forum.

## STATEMENT OF FACTS

10. Limitation Plaintiff repeats and realleges each and every allegation set forth in his Limitation Complaint, ECF No. 1, and incorporates each allegation as if they were all set forth herein.

11. At approximately 0247 hours on July 17, 2021, Denver was navigating the Vessel in Boston Harbor, from the Quincy area to Boston's Inner Harbor (in a Northwesterly direction) to the East of Castle Island, and in a proper manner and at an appropriate speed when the Vessel allided with a fixed navigational aid (Daymarker No. 5) in the vicinity of Castle Island.

12. Claimants Aristide Lex, Tory Govan, Marzouk Onifade, Musse Kassa, and Jeanica Julce, as well as other passengers, Pierre Joas and Matthew Postal, were onboard the Vessel during the subject voyage.

13. Denver was unable to avoid the allision by the time Daymarker No. 5 came into sight.

14. After the allision, which occurred at approximately 2:47 a.m. on July 17, 2021, the Vessel began taking on water, so Denver and the seven (7) passengers, including Claimants and decedent Jeanica Julce, eventually entered the water.

15. Denver and one of the passengers who could swim did everything they could to assist the remaining passengers, including Claimants, until search and rescue/law enforcement arrived.

16. At approximately at 2:30 a.m. on July 17, 2021, Rosenthal and at least two (2) other individuals, entered the Fan Pier Marina to board Rosenthal's vessel.

17. Shortly after arriving at Fan Pier Marina, Rosenthal transited his vessel out of Boston's Inner Harbor with several passengers onboard.

18. Moments after Denver and the passengers, including the Claimants and decedent Jeanica Julce, entered the water, Rosenthal's vessel arrived at the scene.

19. Rosenthal and his passengers heard a broadcast over the radio from T/V STEVEN J. LEAMAN, which was located near Castle Island, which notified Rosenthal and his passengers that people were in the water near Daymarker # 5.

20. Rosenthal and his passengers were again alerted that people were in the water near Daymarker # 5, by crewmen onboard the nearby STEVEN J. LEAMAN yelling and waving their arms at Rosenthal and his passengers in order to get their attention so Rosenthal could render aid to Limitation Plaintiff and his passengers in the water.

21. Rosenthal and his passengers heard a broadcast over the STEVEN J. LEAMAN's loudspeaker, which directed them to assist the people in the water.

22. At all relevant times herein, STEVEN J. LEAMAN's spotlight was directed at the scene of the accident so Rosenthal and his passengers could render aid.

23. STEVEN J. LEAMAN could not get any closer to render aid due to its draft constraints.

24. Rosenthal and his passengers observed the STEVEN J. LEAMAN shining a spotlight on people hanging onto the Daymarker No. 5, the wreckage of MAKE IT GO AWAY, and people in the water.

25. After Rosenthal and his passengers heard the broadcasts and requests for assistance from STEVEN J. LEAMAN, Rosenthal navigated his vessel towards Daymarker # 5 and completed at least one circle, in close proximity, around Daymarker # 5.

26. Moments after Limitation Plaintiff and his passengers entered the water, Rosenthal and his vessel was positioning to provide assistance to the eight (8) people in the water, such that Denver and others began moving towards Rosenthal's vessel in belief and reliance that aid was to be provided.

27. Rosenthal positioned his vessel in close proximity to the scene of the accident and stopped his vessel as Denver swam towards Rosenthal and his vessel.

28. Rosenthal and his passengers observed Denver in the water with a large bleeding cut on his head.

29. Rosenthal's passengers opened up the fish door on Rosenthal's vessel in order to render aid to Denver and his passengers.

30. As Denver got within feet of Rosenthal's vessel, Rosenthal and his passengers heard Denver ask Rosenthal and his passengers help Denver's friend, Jeanica Julce, who was in the water nearby.

31. At this point, without notice, Rosenthal's vessel departed the scene at a high rate of speed and failed to provide any assistance to Denver and the seven (7) passengers, who were either in the water, or holding on to the wreckage, or Daymarker # 5.

32. Passengers on Rosenthal's vessel were heard yelling at Rosenthal as he left the scene with the vessel's fish door still open: "What the hell are you doing?"

33. STEVEN J. LEAMAN's Captain called Rosenthal again as he departed, stressing that there were people in the water and requesting him to render assistance in efforts to prevent Rosenthal from departing the scene, but Rosenthal continued to operate his vessel away from the scene.

34. A passenger on Rosenthal's vessel, Evan Casalino, called 911 from his cell phone to report that people were in the water but could not provide a location when requested because Rosenthal's vessel had already left the scene.

35. Casalino did not call 911 for nearly five (5) minutes after Rosenthal's vessel departed the scene.

36. Casalino told the 911 operator that Rosenthal and his passengers could see that search and rescue/law enforcement was "on the way out" to the scene of the accident because they could see blue lights in the distance.

37. Rosenthal's vessel departed the scene nearly ten (10) minutes before search and rescue responders arrived on scene.

38. The Claimants who also remained in the water were allegedly caused to suffer emotional and mental distress due to their fear of drowning.

39. Pursuant to 46 U.S.C. § 2304, Rosenthal, as the master of his vessel, was required to render assistance to Denver and the seven (7) passengers in the water.

40. Rosenthal was in a position to render assistance to Denver and the seven (7) passengers, without serious danger to his vessel or individuals on board.

41. Rosenthal, as a vessel operator, violated his duty to provide assistance pursuant to 46 U.S.C. § 2304.

42. Rosenthal consciously chose not to assist or render aid to the people in the water.

43. Instead of rendering aid, Rosenthal decided to get he and his vessel as far away from the scene of the accident as possible before search and rescue/law enforcement arrived.

44. Rosenthal acted outrageously, recklessly, and with callous indifference under the circumstances by departing the scene without rendering assistance to Denver and the seven (7) passengers, including Claimants.

45. Jeanica Julce died by drowning at some point after Rosenthal's vessel departed and before the rescue vessel arrived.

46. Jeanica Julce would not have died but for Rosenthal's negligence, recklessness and callous indifference in failing to provide aid and assistance.

47. The Claimants would not have suffered their alleged pain, severe anxiety, mental and emotional suffering, including damages related to fear of drowning, as alleged in their Claims, but for Rosenthal's negligence, recklessness and callous indifference in failing to provide aid and assistance.

48. On December 17, 2021, Wilfred Julce, as Special Personal Representative of the Estate of Jeanica Julce, filed an Answer and Claim, including claims for wrongful death, pain and suffering, and punitive damages.

49. On December 17, 2021, Aristide Lex filed an Answer and Claim, including claims that he was caused to suffer serious and permanent injuries, including anguish of mind, allegedly related to his fear of drowning.

50. On December 21, 2021, Tory Govan filed an Answer and Claim, including claims for damages allegedly related to her pain, severe anxiety, mental and emotional suffering.

51. On December 28, 2021, Marzouk Onifade filed an Answer and Claim, including claims that he was caused to suffer serious and permanent injuries, including anguish of mind, allegedly related to his fear of drowning.

52. On December 29, 2021, Musse Kassa, filed an Answer and Claim, including claims for damages allegedly related to his mental anguish.

53. Denver anticipates that the remaining passengers may assert similar claims.

## COUNT I
## NEGLIGENCE

54. Denver reaffirms and reiterates all of his allegations contained in Paragraph Nos. 1 through 53 inclusive, and incorporates same by reference herein.

55. Pursuant to 46 U.S.C. § 2304, Rosenthal, as the master of his vessel, was required to render assistance to the eight (8) individuals in the water since those rescue efforts could have been accomplished without serious danger to Rosenthal's vessel or the individuals onboard.

56. Under maritime law, the Good Samaritan rule states that a person who voluntarily undertakes an affirmative course of action to come to someone's aid has a duty to exercise due care.

57. A Good Samaritan who attempts to help someone is liable if he does not exercise due care and ends up causing harm.

58. Rosenthal owed a duty to Denver and the seven (7) passengers, including Claimants, who were in the water, to render aid and exercise due care.

59. Rosenthal breached his duty of care to Denver and the seven (7) passengers, including Claimants, when he carelessly, negligently, and recklessly began to render assistance then failed to do so and departed the scene without notice.

60. Rosenthal's actions in failing to provide assistance to Denver and the seven (7) passengers, including Claimants, was in violation of 46 U.S.C. § 2304 and the Good Samaritan Rule.

61. Jeanica Julce would not have died but for Rosenthal's negligence in failing to provide aid to her and the Vessel's other passengers.

62. As a direct, foreseeable, and proximate result of Rosenthal's negligence, Jeanica Julce died.

63. Rosenthal's negligent conduct in failing to provide assistance and abandoning the Claimants caused their alleged severe emotional and mental distress.

64. As a direct, foreseeable, and proximate result of Rosenthal's negligence, Denver sustained damages, including legal fees, costs and related expenses incurred in the defense of Claimants' alleged injuries and damages, and Denver is entitled to recovery of said damages and expenses from Rosenthal.

## COUNT II
## GROSS NEGLIGENCE

65. Denver reaffirms and reiterates all of his allegations contained in Paragraph Nos. 1 through 64 inclusive, and incorporates same by reference herein.

66. Pursuant to 46 U.S.C. § 2304 and the Good Samaritan rule, Rosenthal owed a duty to Denver and the seven (7) passengers in the water, including Claimants, to exercise due care.

67. Rosenthal's outrageous and grossly negligent actions in failing to provide assistance to Denver and the other passengers in the water, including Claimants, were in violation of 46 U.S.C. § 2304 and the Good Samaritan Rule.

68. Rosenthal acted grossly negligently, recklessly and with conscious disregard for the safety of Denver and the seven (7) passengers, including Claimants, when he departed the scene without rendering any assistance and while knowing that his actions would cause injuries, including death.

69. Rosenthal breached his duty of care to Denver and the seven (7) passengers, including Claimants, when he began to render assistance then recklessly failed to do so and departed the scene without notice and in conscious disregard for the safety of those in the water.

70. By departing the scene without rendering any aid, Rosenthal grossly negligently, recklessly, and consciously disregarded the probability of causing injuries, including severe emotional distress, to the individuals in the water, including Claimants.

71. As a direct, foreseeable, and proximate result of Rosenthal's gross negligence, recklessness, and conscious disregard for the safety of others, Jeanica Julce died.

72. Rosenthal's grossly negligent, reckless, callous, and outrageous conduct in failing to provide assistance and abandoning the claimants caused their alleged severe emotional and mental distress.

73. As a direct, foreseeable, and proximate result of Rosenthal's gross negligence, recklessness, and callous indifference, Denver sustained damages, including legal fees, costs and related expenses incurred in the defense of Claimants' alleged injuries and damages, and Denver is entitled to recovery of said damages and expenses from Rosenthal.

## COUNT III
## CONTRIBUTION

74. Denver reaffirms and reiterates all of his allegations contained in Paragraph Nos. 1 through 73 inclusive, and incorporates same by reference herein.

75. Within the claimants' Claims filed in the pending Limitation Action, Claimants allege that their damages were caused due to Denver's negligence.

76. Denver states that the Claimants' damages, including but not limited to Jeanica Julce's death and their alleged physical injuries, and severe emotional and mental distress, were caused in whole or in part by the negligence, recklessness, callous indifference, and/or culpable conduct by Rosenthal, without misconduct by Denver.

77. As a result of Rosenthal's conduct, Claimants allegedly suffered damages, including but not limited to Jeanica Julce's death and alleged physical injuries, and severe emotional and mental distress. If Claimants are entitled to recover against Denver, then Denver is entitled to contribution from Rosenthal for all damages he may be required to pay the Claimants, and for costs, expenses, and fees incurred in defense of this action.

## COUNT VI
## INDEMNITY

78. Denver reaffirms and reiterates all of his allegations contained in Paragraph Nos. 1 through 77 inclusive, and incorporates same by reference herein.

79. Within the claimants' Claims filed in the pending Limitation Action, Claimants allege that their damages were caused due to Denver's negligence.

80. Denver states that Claimants' damages, including but not limited to Jeanica Julce's death and their alleged physical injuries and severe emotional and mental distress were caused solely by the negligence, recklessness, callous indifference, and/or culpable conduct by Rosenthal, without misconduct by Denver.

81. A superseding cause may cut off liability for antecedent acts of negligence in admiralty cases where the superseding cause is the result of extraordinary negligence.

82. Rosenthal's grossly negligent, reckless, callous, and outrageous conduct in failing to provide assistance and abandoning Denver and the seven (7) passengers, including the Claimants, was so extraordinary that it superseded any alleged negligence by Denver and thus, Rosenthal is solely responsible for the claimants' damages.

83. As a result of Rosenthal's conduct, Claimants allegedly suffered damages, including but not limited to Jeanica Julce's death and alleged physical injuries, and severe emotional and mental distress. If Claimants are entitled to recover against Denver, then Denver is entitled to indemnity from Rosenthal for all damages he may be required to pay the claimants, and for costs, expenses, and fees incurred in defense of this action.

WHEREFORE, Limitation Plaintiff/Third-Party Plaintiff Ryan Denver demands judgment, including punitive damages, against Third-Party Defendant Lee Rosenthal in an amount to be determined by this Honorable Court together with attorneys' fees, costs, interest and such other relief as this Honorable Court deems appropriate.

RESPECTFULLY SUBMITTED January 3, 2021,

> RYAN DENVER
> By his counsel,
>
> */s/ Liam T. O'Connell*
> David J. Farrell, Jr. (BBO #559847)
> Liam T. O'Connell (BBO # 694477)
> Kirby L. Aarsheim (BBO #678774)
> **FARRELL SMITH O'CONNELL AARSHEIM APRANS LLP**
> 46 Middle Street, Second Floor
> Gloucester, MA  01930
> (978) 744-8918 x 18
> loconnell@fsofirm.com

## **CERTIFICATE OF SERVICE**

 Pursuant to Local Rule 5.2, I served the foregoing on all attorneys of record *via* the ECF/CM system on January 3, 2021.

           */s/ Liam T. O'Connell*
           Liam T. O'Connell