UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **IN THE MATTER OF<br>RYAN DENVER AS OWNER OF<br>M/V MAKE IT GO AWAY,<br>FOR EXONERATION FROM OR<br>LIMITIATION OF LIABILITY** | **Civil Action No. 21-11841-ADB<br>In Admiralty** |

**LIMITATION PLAINTIFF'S BRIEF OPPOSING MOTION TO DISMISS**

**Introduction**

Movants failed to comply with LR 7.1(a)(2)'s requirement to confer with Limitation Plaintiff Ryan Denver's counsel before filing the Fed. R. Civ. P. 12(b)(6) joint motion to dismiss. Claimants then compounded their failure by acknowledging that Denver's Limitation Complaint's "careful pleading" and "factual allegations…are interposed to avoid dismissal…." ECF No. 7 at 8 and n.5.  Thus Denver's threshold argument is that Claimants agree their motion should not have been filed so it should be procedurally denied.

Substantively, the legal issue presented by their motion is whether Denver, as the owner of MAKE IT GO AWAY and at its helm at the time of the allision, is entitled to continue this action when his Limitation Complaint plausibly alleges with facts that he did not have "privity or knowledge" of negligence and to the contrary alleges Claimants' losses are due to third-party tortfeasors.  Judge Tauro's *In re Martin*, 18 F.Supp.2d 126 (D. Mass. 1998), is factually distinguishable since the only possible tortfeasor there was the owner at the helm.  This case is not that simple and the motion to dismiss should be denied.

Denver's Limitation Complaint, ECF No. 1, alleges Daymarker No. 5 was defective for recreational boating night use, ¶¶ 7-14, and that another vessel criminally violated its 46 U.S.C. § 2304 duty to render assistance in the immediate aftermath of the allision, ¶¶ 16-20.  Those failings are alleged, respectively, by Denver in his forthcoming counterclaim against the United

States Coast Guard ("USCG") and in his third-party complaint against "Bad Samaritan" Lee Rosenthal, filed herewith, ECF No. 19.

## Facts

There is no dispute that Denver owns MAKE IT GO AWAY and was at its helm on the early morning of July 17, 2021.  His Limitation Complaint's Statement of Facts alleges he was navigating in a proper manner and at an appropriate speed, ECF No. 1 at ¶ 6, and was on the same trackline he made good on the earlier outbound trip, as recorded and displayed on the chartplotter, *id*. at ¶ 12, when the boat allided with Daymarker No. 5's pilings, *id.* at ¶ 14.  Denver denies fault, *id*. at ¶ 24, and denies "privity or knowledge," *id.* at ¶ 25.

Denver pointedly asserts that Daymarker No. 5 was defective and its pilings unmarked as the reason he did not see them whilst keeping the boat on the same track line, *id.* at ¶¶ 7-14, and that Claimant Wilfred Julce's, as Special Personal Representative of the Estate of Jeanica Julce, Claimant Aristide Lex's, Claimant Tory Govan's, as well as non-moving Claimants Marzouk Onifade's and Musse Kassa's, plus any other personal injury claimant's alleged damages are due wholly or at least in substantial part to Rosenthal's criminally heartless refusal to render assistance to them, as well as the other two people in the water, *id*. at ¶¶ 15-20; ECF No. 19.

## Legal Argument[1]

**I. Standard of Review**

The standard of review for a motion to dismiss for failure to state a claim under Fed. R. Civ. P. Rule 12(b)(6) is clear in that the Court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *A.G. ex*

---

[1] There is some tension between Fed. R. Civ. P. 12 (motion "must be made before pleading if a responsive pleading is allowed") and Supp. Rule F(5), *see In re Columbia Leasing L.L.C.*, 981 F.Supp.2d 490, 494 (E.D. Va. 2013) (no standing unless claim is filed first, among cases discussed).  Denver will not bog the Court down on the timing of this Claimants' motion.

*rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013).  The complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and should contain "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The complaint must demonstrate "'a plausible entitlement to relief'" by alleging facts that directly or inferentially support each material element of some actionable legal theory.  *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008), *quoting Twombly*, 550 U.S. at 559.  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), *quoting Twombly*, 550 U.S. at 555.

Determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  The Court's scope of review in deciding Claimant's Fed. R. Civ. P. 12(b)(6) motion to dismiss is confined to the pleadings, *El Dia, Inc. v. Governor Rossello*, 165 F.3d 106, 110 (1st Cir. 1999), but the Court "may augment the facts in the complaint by reference to '(i) documents annexed to [the complaint] or fairly incorporated into it, and (ii) matters susceptible to judicial notice.'"  *Gagliardi*, 513 F.3d at 306.

**II.  *In re Martin* Does Not Support Dismissal of Denver's Limitation Action**

Undersigned counsel is familiar with *In re Martin*, 18 F.Supp.2d 126 (D. Mass. 1998), which is entirely distinguishable.  That case involved a passenger allegedly injured in rough seas with the owner at the helm.  Only the owner could have been negligent; there was no other tortfeasor.  *See id*. at 128, citing as support *Fecht v. Makowski*, 406 F.2d 721 (5 th Cir. 1969) (owner at the helm only possible tortfeasor) and *In re Ingoglia*, 723 F. Supp. 512 (C.D. Cal.

3

1989) (same).  Judge Tauro considered *Martin* a simple case of liability but Denver's case is more "complicated," *id*. at 128, involving other tortfeasors.

While Denver was indeed the owner at the helm, he alleges he had no privity or knowledge, or in other words, no "personal participation…in the fault or negligence which caused or contributed to the loss or injury," *see Coryell v. Phipps*, 317 U.S. 406, 411 (1943), which he alleges to be defective Daymarker No. 5 and Rosenthal.

*Martin*, 18 F.Supp.2d at 127-28, and Claimants, ECF No. 7 at 5-6, both rely on the former Fifth Circuit *Fecht* precedent.  However, the Eleventh Circuit narrowed the *Fecht* holding in *In re M/V Sunshine, II,* 808 F.2d 762 (11th Cir. 1987), as recently pointed out by another owner at the helm case, *In re Albergo*, 2017 WL 5632042 at *3-*4 (S.D. Fla. 2017) (after *Sunshine, II,* unless "owner concedes privity or knowledge" or "it is otherwise impossible under any set of circumstances for the vessel owner to demonstrate absence of privity or knowledge," the "Court cannot skip forward and shift the burden to [owner] to prove the absence of privity or knowledge when the question of negligence or unseaworthiness of the Vessel remains unresolved").

As Judge Stearns noted in *Keller v. Jennette*, 940 F. Supp. 35, 38 (D. Mass. 1996), "'[t]he owner's presence is not necessarily fatal to his right to limit if the evidence suggests that his conduct was in all respects prudent,'" citing "*M/V Sunshine, II*, 808 F.2d at 765, *quoting* G. Gilmore & C. Black, *The Law of Admiralty* § 10-23, 883 n.93 (2d ed. 1975)."

And as Eleventh Circuit Judge Godbold, *the same judge who wrote Fecht,* stated in *Sunshine, II*:

> in most circumstances negligence in operation will be sufficiently
> connected to the owner on board his own small vessel and
> operating it that he will be found to have privity or knowledge, but
> this common sense recognition of how the facts will usually work

4

> out is **not an ineluctable doctrine to be applied at the pleading stage, on conclusory and disputed allegations, as a substitute for the knowledge necessary to lead a court to rational decision.** The 'owner at the helm' doctrine is a useful tool directed toward proper decision and **not a talisman**.

808 F.2d at 765 (emphasis added).

The owner at the helm doctrine should not be applied like a talisman here. Denver notes that Judge Tauro in *Martin* purports to distinguish *Keller*, as do Claimants, who argue that "in *Keller* the claimant had asserted that his injuries were caused, at least in part by the negligent operation of another vessel. *Martin* at 129." ECF No. 7 at 5. However, there is nothing textual in the *Keller* decision indicating the claimant there asserted a negligence claim anywhere against anybody but Keller. All *Keller* says is "While Keller was at the helm, a wake stirred by a larger vessel caused his boat's mainsail to jibe," evidently killing Kay Jennette. 940 F. Supp at 36. It would appear that was an allegation made by Keller, the owner at the helm, *id*. n.1, contrary to what Judge Tauro and Claimants assert.

In any event, here it makes no difference that it is Denver (and at least not currently) the Claimants who is counterclaiming against the USCG[2] and filing a third-party complaint against Rosenthal. Denver's pointing to other tortfeasors is consistent with the Limitation Complaint's denial of his privity or knowledge and makes *Martin* inapplicable, particularly when Claimants acknowledge Denver's "careful pleading" avoids dismissal. ECF No. 7 at 8 and n.5.

---

[2] Like here, *In re Lasala*, 2020 WL 6938808, *2 (E.D. La. 2020), involved a recreational boat alliding with a fixed structure alleged by the owner at the helm to be negligently lit, supporting his denial of privity or knowledge. The motion to dismiss was denied. *Id.* *3.

### A. Claimants' Confuse Fed. R. Civ. P. 56 Summary Judgment Cases with Fed. R. Civ. P 12(b)(6) Motions to Dismiss: Because the Record Here is Confined to the Pleadings, Claimants' Motion Should be Denied

Claimants' Fed. R. Civ. P. 12(b)(6) motion to dismiss relies heavily for support on Fed. R. Civ. P. 56 summary judgment owner at the helm privity or knowledge dismissal decisions (in addition to *Martin*) with litigation records that go beyond the pleadings to affidavits, depositions, and other discovery. Those cases include *Fecht* (dispensed with above); *Ingoglia; In re Marine Sports, Inc.*, 840 F. Supp. 46, n.2 (D. Md. 1993); and *In re Nagler*, 246 F.Supp.3d 648 (E.D.N.Y. 2017).

However, the procedural postures of those Fed. R. Civ. P. 56 summary judgment cases makes them unavailing for Claimants' Fed. R. Civ. P. 12(b)(6) motion. *Ingoglia* agrees "that a determination of limitation [i.e, privity or knowledge] would be inappropriate in a motion to dismiss," as here, but can be determined if there is no "genuine issue of triable fact" on a motion for summary judgment. 723 F. Supp. 515; *see also* other owner at the helm cases, *e.g., In re Schnittger*, 431 F.Supp.3d 109, 114 (E.D.N.Y. 2019) (denying limitation claimant's Fed. R. Civ. P. 12(b)(6) motion to dismiss, Court cannot "review the evidence until after the parties benefit from complete discovery"); *Albergo*, 2017 WL 5632042 at *4 (motion to dismiss on privity or knowledge denied until negligence/unseaworthiness resolved); *cf. In re Kaufman*, 2015 AMC 995, 997-1000 (E.D.N.Y. 2015) (Fed. R. Civ. P. 12(c) motion on the pleadings cannot determine privity or knowledge without discovery and must be denied).

Here the record is the Limitation Complaint. *See El Dia,* 165 F.3d 110. The more exacting scrutiny of the merits on whether the owner at the helm had privity or knowledge that went into the summary judgment decisions cited by Claimants are no authority for their motion

seeking a threshold dismissal for failure to state a claim.  As the First Circuit recently made "luminously clear," failure to state a claim is a cucumber, summary judgment a pickle [sic]. *Rios-Campbell v. U.S. Department of Commerce*, 927 F.3d 21, 25 (2019).

### B. Fed. R. Civ. P. 8(a) Plausibility is Satisfied under *Twombly/Iqbal* and its Application to Privity or Knowledge in this Limitation Case

Claimants cite, in passing, a recent Second Circuit case, *Bensch v. Estate of Umar*, 2 F.4th 70 (2d Cir. 2021), which applies the *Twombly/Iqbal* Fed. R. Civ. P. 8(a) plausibility standard to a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim, specifically in the context of a Supp. Rule F(2) limitation complaint's alleged lack of privity or knowledge by an owner at the helm.  ECF No. 7 at 3 and 9.

A discussion of *Bensch*[3] would help.  It involved a collision between a rented jet ski and a pleasure craft with its owner at the helm.  *Bensch*, 2 F.4th at 72.  Before the Second Circuit was the owner at the helm's deficient limitation complaint, his deficient first proposed amended limitation complaint, and finally his second proposed amended limitation complaint, which passed *Twombly* muster and was held non-futile.

The Second Circuit started by straightening things out, noting that "legal conclusions couched as factual allegations are not sufficient to plausibly state a claim upon which relief can be granted," *id*. at 81, and there must be something more factually specific than "standard admiralty wording," arguably endorsed by Judge Learned Hand, *id*. at 77.

Having reviewed the limitation complaint's evolving versions, the Second Circuit commented that while the second proposed amendment's allegations added navigational information from the owner at the helm which "could be more factually detailed" -- as examples,

---

[3] *Bensch*, 2 F.4th at 73, has a nice legal background summary of the Limitation of Liability Act, 46 U.S.C. § 30501 *et seq.*

the owner at the helm's alleged "'appropriate' evasive action" was "somewhat conclusory" and did "not identify the particular actions" he took or his "exact speed" -- nevertheless a higher level of specificity was not needed:

> **the plausibility standard does not require that a plaintiff plead every factual detail relevant to liability, or allege facts that, if proved to the factfinder's satisfaction, would rule out every possible defense to his claim.** It is sufficient for the pleading to contain sufficient factual allegations to "nudge[ ] [the petitioner's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570….

2 F.4th at 80 (emphasis added).

Applying *Bensch* to Denver's Limitation Complaint, this is a good time to alert the Court and parties that MAKE IT GO AWAY has been in the custody of the Commonwealth of Massachusetts since the accident, s*ee* ECF No. 1 ¶ 23; thus, Denver has not yet been able to ascertain certain information which may assist him in forming more specific factual allegations than already pled.[4] He nevertheless made specific factual allegations (not just "legal conclusions couched as factual allegations") regarding his proper navigation at an appropriate speed, ECF No. 1 at ¶ 6; his use of the chartplotter to follow the same trackline he made good on the earlier outbound trip, ¶¶ 12 and 14; the defective pilings and reasons for his not seeing them, ¶¶ 7-11; and Jeanica Julce's drowning after the Bad Samaritan fled the scene, ¶¶ 17-18.

There are no First Circuit cases addressing *Twombly/Iqbal* plausibility in the context of an owner at the helm alleging a lack of privity or knowledge. But if this Court were to adopt

---

[4] Limitation Plaintiff was arraigned on November 19, 2021. *See Commonwealth v. Ryan Denver*, Suffolk County Superior Court Docket No. 2184cr009670. The Suffolk County Superior Court has ordered, pursuant to Mass. R. Crim P. 14, that the Commonwealth disclose to Limitation Plaintiff all of the evidence presented to the Grand Jury no later than January 27, 2021, as Limitation Plaintiff has notified the Court he intends to file a motion to dismiss the indictments pursuant to *Commonwealth v. McCarthy*, 385 Mass. 160, 430 N.E.2d 1195 (1982), and *Commonwealth v. Odell*, 392 Mass. 445, 466 N.E.2d 828 (1984). Undersigned Counsel believe that once the Commonwealth's disclosure is complete and the boat is made available for inspection, information gleaned therefrom may well merit a motion to amend the Limitation Complaint.

out-of-circuit *Bensch* as instructive maritime common law,[5] it bears repeating that "the plausibility standard does not require that [Denver] plead every factual detail relevant to liability, or allege facts that, if proved to the factfinder's satisfaction, would rule out every possible defense to his claim." *Bensch* at 80.  What Denver alleges goes well beyond "conceivable to plausible." *See id*.  It is perfectly understandable that an up-in-the-air navigational aid intended for deep draft commercial ships nonetheless poses a navigational hazard to recreational boats due to its unmarked pilings.  *Bensch* teaches that precision exactitude on every aspect of Denver's boat operation is not required to satisfy Fed. R. Civ. P. 8(a)(2) which still, even after *Twombly/Iqbal*, requires only "a short and plain statement of the claim," not a treatise.

Denver suspects that is why Claimants made only passing reference to *Bensch.*  Instead, Claimants would have this Court think that *Nagler*, 246 F.Supp.3d 648, is sound authority for *Iqbal* dismissal at the Fed R. Civ. P. 12(b)(6) failure to state a claim early pleading stage.  ECF No. 7 at 8-9.  But *Nagler* is no help for Claimants, as indicated above, because its dismissal was on summary judgment, depositions of the parties had been completed, and there was a full and carefully cited record in the decision.  *See Nagler*, 246 F.Supp.3d at 653-55, 658-59, and 662.  Plus, *Nagler* involved a single claimant unlike the multi-party, much more complicated litigation that is about to mushroom here.[6]

---

[5] "With admiralty jurisdiction comes the application of substantive admiralty law.  Absent a relevant statute, the general maritime law, as developed by the judiciary, applies.  Drawn from state and federal sources, the general maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864-65 (1986) (citations and footnote omitted).
[6] This is not a "typical *Langnes v. Green*" single claimant case, *Keller*, 940 F.Supp. at 39, or a case "where the total claims do not exceed the value of the limitation fund," *Lewis v. Lewis & Clark, Inc.*, 531 U.S. 438, 448-51 (2001).

### C. Claimants' Premature Attempts to Establish Denver's *Per Se* Negligence Ignore That He Can Rebut Them

Claimants' arguments on *THE PENNSYLVANIA* Rule and *THE OREGON* Rule, ECF No. 7 at 8, are rebuttable, 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 43 at 123-25 and 127-29 (5th ed. 2011), thus making a conclusion of law on Denver's privity or knowledge based on alleged maritime *per se* negligence now, without an evidentiary record, premature.

Under *THE OREGON* Rule, a vessel can overcome the presumption of fault for an allision with a fixed object by proving "'[1] **that the allision was the fault of the stationary object** [;] [2] that the moving vessel acted with reasonable care[;] or [3] that the allision was an unavoidable accident.'" *Fischer v. S/Y NERAIDA*, 508 F.3d 586, 593 (11th Cir. 2007) (emphasis added), *cited* in 2 Schoenbaum § 43 at 128 n.26. Because Denver alleges the USCG-maintained Daymarker No. 5 was defective and its piling not visible, it is too soon for the Court on this record restricted to the pleadings to conclude it was not.

Under *THE PENNSYLVANIA* Rule, it is also too soon for Claimants to argue on a threadbare record that Denver committed statutory violations. Thus, Claimant's triple negative assertion that it is "implausible" Denver did not have privity or knowledge of any as yet unproven statutory violations, *see* ECF No. 7 at 8, is premature on this motion.

Claimants are trying to put the cart before the horse -- that Denver has privity or knowledge of negligence they have not yet established and which can be rebutted -- and they are trying to do it with fresh cucumbers without any pickling effort. *See, e.g., Kaufman,* 2015 AMC 1000 (discovery needed). This case is way more "complicated" than *Martin*. There is too much going on to now determine MAKE IT GO AWAY's fault, let alone Denver's privity or knowledge in it, in a case involving a defective navigational hazard; long awaited, notoriously slow USCG responses to Freedom of Information Act requests that may well evidence other

recreational boating accidents with the same hazardous pilings; Denver's appropriate navigation, speed, and electronics observations; and a barbaric boater who promptly came upon the scene but decided to flee without aiding people in need, in clear violation of the statutory duty to provide assistance at sea:

> (a)(1) A master or individual in charge of a vessel shall render assistance to any individual found at sea in danger of being lost, so far as the master or individual in charge can do so without serious danger to the master's or individual's vessel or individuals on board….
>
> (b) A master or individual violating this section shall be fined not more than $1,000, imprisoned for not more than 2 years, or both.

46 U.S.C. § 2304 (2006); *see also Thames Shipyard & Repair Co. v. United States*, 350 F.3d 247, 261 (1st Cir. 2003) (explains Good Samaritan Rule).

Discovery is needed here to sort all this out in this most capable forum.

**III. Claimants Ignore the Benefits of Concursus in the District of Massachusetts**

Denver had every right to file his Limitation Complaint in the District of Massachusetts under the Constitution, Art. III; 28 U.S.C. § 1333(1); 46 U.S.C. § 30511(a) ("The owner of a vessel may bring a civil action in a district court of the United States for limitation of liability under this chapter"); and Fed. R. Civ. P. Supp. F(1). Similarly, Denver had every right to designate it as an Admiralty or Maritime Claim without a jury under Fed. R. Civ. P. 9(h) and 38(e).

The District of Massachusetts is the most experienced and qualified forum to efficiently and economically adjudicate this complicated, multi-tortfeasor, multi-claimant maritime casualty in one "concursus." As Denver earlier noted in ECF No. 2-1 at 3-4 regarding admiralty limitation actions, "[t]he heart of this system is a concursus of all claims to ensure the prompt and economical disposition of controversies. . . ." *Maryland Cas. Co. v. Cushing*, 347 U.S. 409,

415 (1954); *see also In re Urbelis*, 2018 WL 701350, *6 (D. Mass. 2018) ("limitation proceedings following a marine disaster will certainly expedite matters by getting all the parties concerned involved in a single proceeding"); *Nagler*, 246 F.Supp.3d 656 n.8 ("a *concursus* is a proceeding to marshal all claims, or bring them into concourse, and settle all disputes in one action…").

Following his receipt of written claims, Denver timely filed his Limitation Complaint which complied with Fed. R. Civ. P. Supp. F(2) and "set forth the facts on the basis of which the right to limit liability is asserted." ECF No. 1, ¶¶ 7-14 (defective USCG daymarker) and ¶¶ 16-20 (Bad Samaritan). As Claimants acknowledge, it involved careful pleading.

In response to the answers and claims filed by Lex, ECF. No. 8; Julce, ECF No. 9; Govan, ECF No. 10; Onifade, ECF No. 13; and Kassa, ECF No.15; Denver will timely counterclaim against the USCG and files herewith his third-party complaint under Fed. R. Civ. P. 14 against Rosenthal, ECF No. 19. It can be anticipated that the Claimants too will engage in additional third-party practice. A concursus in this Court, with federal court procedures and scheduling imposed and maritime law knowingly applied, is the best place to effectively litigate this marine casualty.

**IV. MAKE IT GO AWAY's Official Number is a Non-Issue**

Do Claimants actually believe the boat they were on in the allision was not Denver's badly damaged MAKE IT GO AWAY? There is certainly no such indication from the first page of their brief. ECF No. 7 at 1. Do they want to take their argument to the logical conclusion that they were on a different, very much undamaged boat with the same name?

Denver had recently purchased the MAKE IT GO AWAY involved in the accident and has not seen it since that morning as it remains in the custody of the Commonwealth of

Massachusetts. Although there was some confusion on the boat's Official Number issued by the USCG, Claimants cannot credibly claim that Denver "fatally fail[ed] to identify the vessel." ECF No. 7 at 2.

In Claimants' one paragraph argument, in which they acknowledge their "information and belief" that documentation status is unclear, we are again told it would be "implausible," *id.* at 9-10, that something akin to a license plate number might not match up with the physical vessel that was involved in the accident and that this somehow constitutes vessel misidentification like *In re Dolphin Services, Inc.*, 225 F.3d 515 (5th Cir. 2000), where there was actual confusion on which barge the claimant was aboard when injured.

In contrast, everyone knows what boat is at issue in this case: The Commonwealth of Massachusetts has it in custody.

If anything, the Official Number confusion is harmless error. The Court can take Fed. R. Evid. 201 judicial notice that (1) Denver received written USCG correspondence a few days before the Limitation Complaint was filed (which was relied on in drafting the Limitation Complaint and associated pleadings) identifying MAKE IT GO AWAY involved in the allision as having Official Number 1308302; and (2) last week undersigned counsel received clarifying USCG correspondence that no Official Number was assigned to the boat involved in the allision. *See* Exhibits 1 and 2.

## Conclusion

After tripping over LR 7.1(a)(2), and defeating themselves, *supra* at 1, Claimants try to accelerate findings of Denver's negligence and his privity or knowledge of whatever that negligence might be based on assumptions that somehow add up to his purported failure to state a claim in his Limitation Complaint.

Denver's plausible factual allegations denying fault and privity or knowledge while plausibly pointing to one tortfeasor for a hazardous daymarker and another tortfeasor for his heartless abandonment of shipwrecked passengers defeats Claimants' Fed. R. Civ. P. 12(b)(6) motion to dismiss.

RESPECTFULLY SUBMITTED January 3, 2022

>RYAN DENVER
>By his counsel,
>
>*/s/ David J. Farrell, Jr.*
>David J. Farrell, Jr. (BBO #559847)
>Liam T. O'Connell (BBO # 694477)
>Kirby L. Aarsheim (BBO #678774)
>**FARRELL SMITH O'CONNELL AARSHEIM APRANS LLP**
>2355 Main Street, P.O. Box 186
>S. Chatham, MA  02659
>(508) 432-2121 x 15
>dfarrell@fsofirm.com
>loconnell@fsofirm.com
>kaarsheim@fsofirm.com

## **CERTIFICATE OF SERVICE**

Pursuant to Local Rule 5.2, I served this brief on all attorneys of record via the ECF/CM system on January 3, 2022.

>*/s/ Liam T. O'Connell*
>Liam T. O'Connell