UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **IN THE MATTER OF<br>RYAN DENVER AS OWNER OF<br>M/V MAKE IT GO AWAY,<br>FOR EXONERATION FROM OR<br>LIMITATION OF LIABILITY** | **CIVIL ACTION NO. 21-11841-ADB<br>IN ADMIRALTY** |

**LIMITATION PLAINTIFF'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM TO THE UNITED STATES OF AMERICA'S CLAIM**

Now comes Limitation Plaintiff Ryan Denver, by and through his undersigned counsel, and answers the United States of America's Claim, ECF No. 16, as follows:

## ANSWER

### The United States of America's Claim

No response is necessary to Claimant, the United States of America's ("USA"), first, unnumbered, introductory paragraph.

### Nature of Action

1. No response is required because ¶ 1 of the claim contains conclusions of law. To the extent that a response is necessary: Admitted.

2. No response is required because ¶ 2 of the claim contains conclusions of law. To the extent that a response is necessary: Admitted that general maritime law governs this action, but Denied as to the remaining averments contained within ¶ 2.

3. No response is required because ¶ 3 of the claim contains conclusions of law. To the extent that a response is necessary: Admitted.

4. No response is required because ¶ 4 of the claim contains conclusions of law. To the extent that a response is necessary: Admitted the Court has jurisdiction over the subject matter and

the parties pursuant to 28 U.S.C. §§ 1331 and 1333 but Denied as to the remaining averments.

5. No response is required because ¶ 5 of the claim contains conclusions of law. To the extent that a response is necessary: Admitted.

**Parties**

6. No response is required because ¶ 6 of the claim contains conclusions of law. To the extent that a response is necessary: Admitted.

7. Admitted.

8. Admitted.

9. Admitted USA owns the aid to navigation located at approximately 42° 20' 0.20" N, 071° 0.0' 3.74" W, but Denied as to the remaining averments. In further answering, Limitation Plaintiff states that the aid to navigation is not located at the entrance to Boston Harbor and calls upon USA to prove the same.

10. Admitted it is a fixed aid to navigation located in Boston Harbor but Denied as to the remaining averments and calls upon USA to prove the same.

11. Admitted USA's official notifications and publications state that the aid to navigation is equipped with a green light flashing at two-and-a-half (2.5) second intervals, three (3) square green dayboards, and that the focal height of the green light is thirty-two (32) feet above sea-level measured at mean high water, but Denied as to the remaining averments and calls upon USA to prove the same.

12. Admitted that Limitation Plaintiff and his seven (7) passengers were onboard M/V MAKE IT GO AWAY in or near Boston Harbor on July 17, 2021, at approximately 2:45 a.m., but Denied as to the remaining averments and calls upon USA to prove the same.

13. Admitted Limitation Plaintiff was operating M/V MAKE IT GO AWAY at approximately 2:45 a.m. on July 17, 2021, in the vicinity of Castle Island when the vessel allided with the aid to navigation but Denied as to the remaining averments and calls upon USA to prove the same.

14. No response is required because ¶ 14 of the claim contains conclusions of law.  To the extent that a response is necessary: Denied and calls upon USA to prove the same.

15. Admitted.

16. No response is required because ¶ 16 of the claim contains conclusions of law.  To the extent that a response is necessary: Denied and calls upon USA to prove the same.

17. Limitation Plaintiff lacks knowledge or information sufficient to form a belief as to the truth of the averments contained within ¶ 17 and therefore Denies them and calls upon USA to prove the same.

18. Limitation Plaintiff lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 18 and therefore Denies them and calls upon the USA to prove same.

**Count I**
**Negligence for the Allision**

19. No response is required, but to the extent that a response is necessary: Limitation Plaintiff reasserts each and every answer above as if fully incorporated herein.

20. No response is required because ¶ 20 of the claim contains conclusions of law.  To the extent that a response is necessary: Denied.

21. No response is required because ¶ 21 of the claim contains conclusions of law.  To the extent that a response is necessary: Denied.

## Count II
## Strict Liability Arising Under the Rivers and Harbors Act of 1899

22. No response is required, but to the extent that a response is necessary: Limitation Plaintiff reasserts each and every answer above as if fully incorporated herein.

23. No response is required because ¶ 23 of the claim contains conclusions of law.  To the extent that a response is necessary: Denied.

24. Admitted.

25. No response is required because ¶ 25 of the claim contains allegations of law.  To the extent that a response is necessary: Limitation Plaintiff lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 25 and therefore Denies them and calls upon the USA to prove same.

26. No response is required because ¶ 26 of the claim contains allegations of law.  To the extent that a response is necessary: Denied.

27. No response is required because ¶ 27 of the claim contains allegations of law.  To the extent that a response is necessary: Denied.

### Damages

28. No response is required because ¶ 28 of the claim contains allegations of law.  To the extent that a response is necessary: Denied.

### **AFFIRMATIVE DEFENSES**

Limitation Plaintiff further answers and provides the below separate affirmative defenses:

1. Limitation Plaintiff states that he is not responsible for the USA's alleged damages.

2. Limitation Plaintiff states that on or about July 17, 2021, the M/V MAKE IT GO AWAY was seaworthy and the vessel, its crew and appurtenances were reasonably fit for the vessel's intended purpose.

3. Limitation Plaintiff states that if the USA sustained damages as alleged, which is specifically denied, the purported actions or inactions of Limitation Plaintiff were not the proximate cause of the USA's alleged damages, but said damages, if any, were the result of other intervening and superseding causes for which Limitation Plaintiff is not responsible.

4. Limitation Plaintiff states that if the USA sustained damages as alleged, which is specifically denied, the USA's damages were caused by the USA's own intentional actions and for which Limitation Plaintiff is not responsible.

5. Limitation Plaintiff states that if the USA sustained damages as alleged, which is specifically denied, said alleged damage was the result of the dangers and hazards to vessels, particularly smaller vessels, created by the USA.

6. Include Affirmative Defense citing USA's violation of Reg….

7. Limitation Plaintiff states that if the USA sustained damages as alleged, which is specifically denied, said alleged damage was the result of the USA's failure to warn recreational vessel owners of the dangers and hazards to navigation it created by Daymarker No. 5.

8. Limitation Plaintiff states that if the USA sustained damages as alleged, which is specifically denied, said alleged damage was the result of the USA's negligence in constructing and maintaining Daymarker No. 5.

9. Limitation Plaintiff states that if the USA sustained damages as alleged, which is specifically denied, said damages resulted in whole or in part from the acts or omissions of third parties over whom Limitation Plaintiff exercised no direction or control and for whom Limitation Plaintiff is not legally responsible.

10. The USA has failed to state a claim.

11. Limitation Plaintiff states that at all material times he acted with reasonable care and did not breach any duty to the USA.

12. Limitation Plaintiff states that the claims set forth in the USA's Claim are subject to offset in whole or in part based on the equitable doctrine of recoupment.

13. Limitation Plaintiff states that if the USA sustained damages as alleged, which is specifically denied, said alleged damage was the result of an unavoidable accident.

14. Limitation Plaintiff states that if the USA sustained damages as alleged, which is specifically denied, said alleged damage was the result of an unavoidable accident due to the dangers and hazards USA created with Daymarker No. 5.

15. Limitation Plaintiff states that if the USA sustained damages as alleged, which is specifically denied, it was due to an Act of God for which Limitation Plaintiff is not legally responsible.

16. Limitation Plaintiff states that if the USA sustained damages as alleged, which is specifically denied, it was due in whole or in part to the USA's own negligence and failure to exercise due care and was not due to any negligence or fault on the part of Limitation Plaintiff nor any person or persons for whom Limitation Plaintiff may be legally responsible.

17. Limitation Plaintiff states that if the USA sustained damages as alleged, which is specifically denied, such injury was without the fault, privity, or knowledge of Limitation Plaintiff; that the damages claimed herein exceed the value of the vessel, including her pending freight; and Limitation Plaintiff herewith claims the benefit of any and all laws and statutes of the United States of America, including but not limited to, the Limitation of

Liability Act, 46 U.S.C. §30501, et. seq. as more fully pled in his Limitation Complaint, ECF No. 1.

18. Limitation Plaintiff states that the USA has failed to mitigate its damages.

19. Limitation Plaintiff states that if liability is found in favor of the USA, which is specifically denied, then the damages must be reduced proportionally by the degree of negligence on the part of the USA and other parties pursuant to the General Maritime Law.

20. Limitation Plaintiff claims the benefit of any and all such further Affirmative Defenses that become apparent as discovery progresses and reserves the right to assert the same.

## THIRD PARTY COMPLAINT

Limitation Plaintiff expressly incorporates his Third Party Complaint against Lee Rosenthal, ECF No. 19, with the same force and effect as if set forth in its entirety herein.

## RELIEF SOUGHT

WHEREFORE Limitation Plaintiff Ryan Denver, as owner of M/V MAKE IT GO AWAY, requests the following relief:

1. That the Court adjudge Limitation Plaintiff not liable or that if Limitation Plaintiff is held liable in any part, his liability shall be limited at a maximum to the value of his $50,000 interest in the Vessel after the accident.

2. That Claimant is not entitled to a jury trial.

3. That Limitation Plaintiffs be provided such other and further relief as the Court may deem just and proper.

## RYAN DENVER'S COUNTERCLAIM AGAINST
## THE UNITED STATES OF AMERICA

Now comes Limitation Plaintiff Ryan Denver, by and through his undersigned counsel, and pursuant to Fed. R. Civ. P. 13 files his Counterclaim against the United States of America ("USA") alleging upon knowledge concerning its own acts, and otherwise, upon information and belief, as follows.

### Parties

1. Limitation Plaintiff Ryan Denver is the registered owner of M/V MAKE IT GO AWAY, a recreational 37 feet 11 inches (37'11") Pursuit Vessel, Model DC 365, built in 2021, with three 2020 Yamaha 300 HP engines (the "Vessel").

2. Claimant USA is a Sovereign which by law has waived immunity from suit in Admiralty actions and has consented to be sued as this action concerns claims premised on fault or negligence due to actions or omissions by government agencies or departments.

3. USA, through the United States Coast Guard ("USCG"), established, owned, maintained, and operated an aid to navigation known as "Daymarker No. 5," which is located at approximately 42° 20' 0.20" N, 071° 0.0' 3.74" W.

4. Claimant Wilfred Julce, as Special Personal Representative of the Estate of Jeanica Julce, is a resident of Somerville, Massachusetts. Jeanica Julce (the "Decedent") was a passenger onboard the Vessel during the subject voyage and was a resident of Somerville, Massachusetts.

5. Claimant Aristide Lex is resident of Boston, Massachusetts, and was a passenger onboard the Vessel during the subject voyage.

6. Claimant Tory Govan is resident of Somerville, Massachusetts, and was a passenger onboard the Vessel during the subject voyage.

7. Claimant Marzouk Onifade is resident of Boston, Massachusetts, and was a passenger onboard the Vessel during the subject voyage.

8. Claimant Musse Kassa is resident of Belmont, Massachusetts, and was a passenger onboard the Vessel during the subject voyage.

## Jurisdiction

9. The jurisdiction of this Honorable Court is predicated upon and within the maritime jurisdiction of this Honorable Court pursuant to 28 U.S.C. § 1333, 46 U.S.C. § 741, and Fed. R. Civ. P. 9(h).

## Statement of Facts

10. Limitation Plaintiff repeats and realleges each and every allegation set forth in his Limitation Complaint, ECF No. 1, and incorporates each allegation as if they were all set forth herein.

11. At approximately 0247 hours on July 17, 2021, Limitation Plaintiff was navigating the Vessel in Boston Harbor, from the Quincy area to Boston's Inner Harbor (in a Northwesterly direction) to the East of Castle Island, and in a proper manner and at an appropriate speed when the Vessel allided with a fixed navigational aid (Daymarker No. 5) in the vicinity of Castle Island.

12. USA, through the USCG, owned, and had a duty to maintain an aid to navigation known as Daymarker No. 5 which the USA was and is responsible for its design, location, construction, equipment and/or fixtures, and maintenance.

13. As designed by USA, which it has officially noticed and published, Daymarker No. 5 is supposed to be equipped with a green light flashing at two-and-a-half (2.5) second intervals,

three (3) square green dayboards, and that the focal height of the green light is thirty-two (32) feet above sea-level measured at mean high water.

14. Daymarker No. 5's primary purpose, by USA's design, is to warn large deep-draft ocean-going vessels heading inbound and outbound to/from the Port of Boston, which are constrained by their draft to the ship channel, of shallow water in order to prevent large vessel groundings.

15. At the time of the allision, the light was nearly forty feet (40') above the approximate water level, and the four (4) black steel pilings were mostly exposed and were taller than the Vessel (measured from the waterline to the bottom of the platform).

16. The Vessel's draft was approximately three (3) feet on July 17, 2021, during the time the Vessel was navigating in the vicinity of Daymarker No. 5, leaving approximately fifteen (15) feet of water below the Vessel, within the two hundred (200) yard area surrounding Daymarker No. 5.

17. None of Daymarker No. 5's pilings were illuminated or affixed with any reflective material to make them visible at night.

18. The Vessel was entitled to navigate in or around any portion of navigable waters; thus, it was not, by law or in fact, constrained to the channel.

19. USA created dangers and hazards to navigation for smaller vessels that have lower heights of eye, by establishing, maintaining, and operating Daymarker No. 5.

20. USA failed to warn of the dangers and hazards it created with Daymarker No. 5.

21. At the time of the allision, the Boston Harbor Phase 3 Rock Removal Project (the "Dredging Project") was in operation and DREDGE NEW YORK[1] and DRILLBOAT APACHE[2] were

---

[1] DREDGE NEW YORK has a length of 200' and beam of 57'.
[2] DRILLBOAT APACHE has a length of 210' and a beam of 60'.

off Castle Island, Northwest of Daymarker No. 5. (Behind Daymarker No. 5, from the Vessel's perspective).

22. USA funded, implemented, managed, and controlled the Dredging Project.

23. USA failed to mitigate, manage, or reduce the level of background lighting created by its Dredging Project.

24. The dangers and hazards to navigation that USA created with Daymarker No. 5, was further aggravated when USA failed to exercise due care, in the continued operation of Daymarker No. 5 in relation to the Dredging Project.

25. USA failed to warn of the dangers and hazards with Daymarker No. 5, that were aggravated by USA's Dredging Project.

26. Limitation Plaintiff was navigating the Vessel on its return trip to Boston by keeping the Vessel on the same track line he made good on the earlier outbound trip, as recorded and displayed on the Vessel's chartplotter.

27. The Moon had set hours before the allision, and Limitation Plaintiff could not see Daymarker No. 5 because of the negligent design, establishment, maintenance, and operation of its high black pilings and its light (even if operational at the time), which was nearly forty (40) feet above the water level, which created dangers and hazards for vessels, particularly smaller vessels with lower heights of eye, like M/V MAKE IT GO AWAY.

28. The dangers and hazards created by USA were worsened by USA's Dredging Project, as Daymarker No. 5's forty (40) foot high light, if operational at the time, was absorbed by the backlight from USA's Dredging Project.

29. Claimants Aristide Lex, Tory Govan, Marzouk Onifade, Musse Kassa, and decedent Jeanica Julce, as well as other passengers, Pierre Joas and Matthew Postal, were onboard the Vessel during the subject voyage.

30. Denver was unable to avoid the allision by the time Daymarker No. 5 came into sight.

31. After the allision, which occurred at approximately 2:47 a.m. on July 17, 2021, the Vessel began taking on water, so Denver and the seven (7) passengers, including Claimants and decedent Jeanica Julce, eventually entered the water.

32. Limitation Plaintiff and one of the passengers who could swim did everything they could to assist the remaining six (6) people in the water, until help arrived.

33. Law enforcement agencies took seven (7) people including Limitation Plaintiff back to shore. Search and Rescue responders found Jeanica Julce's body sometime later.

34. On December 17, 2021, Wilfred Julce, as Special Personal Representative of the Estate of Jeanica Julce, filed an Answer and Claim, including claims for wrongful death, pain and suffering, and punitive damages.

35. On December 17, 2021, Aristide Lex filed an Answer and Claim, including claims that he was caused to suffer serious and permanent injuries, including anguish of mind, allegedly related to his fear of drowning.

36. On December 21, 2021, Tory Govan filed an Answer and Claim, including claims for damages allegedly related to her pain, severe anxiety, mental and emotional suffering.

37. On December 28, 2021, Marzouk Onifade filed an Answer and Claim, including claims that he was caused to suffer serious and permanent injuries, including anguish of mind, allegedly related to his fear of drowning.

38. On December 29, 2021, Musse Kassa, filed an Answer and Claim, including claims for damages allegedly related to his mental anguish.

## Count I
## Negligence

39. Limitation Plaintiff reasserts each and every ¶ above as if fully incorporated herein.

40. The USA, by and though the USCG, pursuant to federal law, has a duty to establish, maintain, and operate aids to navigation for the promotion of safety of navigation.

41. The USA had a duty to exercise due care in maintaining and ensuring that Daymarker No. 5 was in good working order.

42. USA made the decision to facilitate safe navigation in Boston Harbor, by constructing and placing Daymarker No. 5; therefore, USA had a duty to perform its undertaken responsibility with due care.

43. USA made the decision to facilitate safe navigation in Boston Harbor, by constructing and placing Daymarker No. 5, and in doing do, USA induced mariners, including smaller vessels, to rely on Daymarker No. 5 as an aid to navigation, but failed to warn smaller vessels of the dangers and hazards it created with Daymarker No. 5, particularly at night.

44. USA made the decision to facilitate safe navigation in Boston Harbor, by constructing and placing Daymarker No. 5, and in doing do, USA induced mariners, including smaller vessels, to rely on Daymarker No. 5 as an aid to navigation, but failed to warn smaller vessels of the dangers and hazards it created with Daymarker No. 5, which were aggravated by USA's Dredging Project.

45. USA made the decision to facilitate safe navigation in Boston Harbor, by constructing and placing Daymarker No. 5, which Limitation Plaintiff relied upon, but USA breached its duty

to perform its functions in a reasonable manner as it was foreseeable that Daymarker No. 5 was a danger and hazard to smaller vessels at night.

46. USA was required to operate and maintain Daymarker No. 5, regardless of the costs associated.

47. General principles of maritime law, impose upon USA a duty to exercise ordinary care, including the duty to warn of reasonably foreseeable harm.

48. USA had a duty to take precautions to warn of dangers it created by placing obstructions, such as Daymarker No. 5, within navigable waters.

49. USA had a duty to warn of the dangers and hazards to navigation, particularly to smaller vessels, that it created by negligently establishing, maintaining, and operating Daymarker No. 5.

50. The USA breached its duty of care to Limitation Plaintiff and Claimants by negligently constructing and maintaining Daymarker No. 5 such that it created a hazard to navigation for smaller vessels that have lower heights of eye.

51. Daymarker No. 5 was at all relevant times herein, a structure that caused an obstruction, as both terms are defined under 33 C.F.R. § 64.06, which created a hazard to navigation as defined by the same regulation.

52. The USA created a hazard to navigation by negligently constructing, operating, and maintaining Daymarker No. 5, which was further aggravated by the USA's Dredging Project.

53. When USA established Daymarker No. 5, and mariners subsequently relied on its actions, a duty was created for the USA to act reasonably and with due care to ensure that Daymarker

No. 5 was marked in a way that did not create a new hazard, aside from the one it was intended to warn of (the low water off of Castle Island).

54. The USA negligently constructed, maintained, operated, and or kept in good working order Daymarker No. 5, including but not limited to the following manners:

   a) Daymarker No. 5's dayboard was not maintained in accordance with the requirements that USA ensure the dayboard's film and/or retroreflective markings were not delaminated or worn beyond the acceptable limits set by the USA.

   b) Daymarker No. 5's dayboard was not maintained in accordance with the requirements that the dayboard's size, the dayboard's number's size, and coloring of same meet USA's required specifications.

   c) Daymarker No. 5 was not maintained in accordance with the requirements that its light comply with the USA's focus requirements and that the optic be within the prescribed tolerances of the same.

   d) USA failed to inspect, service, and/or maintain Daymarker No. 5 within the required intervals.

   e) USA failed to maintain and operate Daymarker No. 5, and its equipment and/or fixtures, in compliance with the various regulations and internal policies, procedures, and requirements.

   f) USA failed to properly illuminate or affix with any reflective material to Daymarker No. 5's exposed pilings to make them visible at night to smaller vessels.

   g) USA failed to maintain and operate Daymarker No. 5 in accordance with the requirements, as it failed to apply the correct degree of background lighting in determining the required luminous intensity and/or effective luminous intensity for Daymarker No. 5's light.

   h) USA failed to maintain and operate Daymarker No. 5 in accordance with the requirements, as it failed to apply the correct degree of background lighting, which was drastically increased by its own Dredging Project, in determining the required luminous intensity and/or effective luminous intensity for Daymarker No. 5's light, for the duration of the Dredging Project.

   i) USA failed to maintain and operate Daymarker No. 5 in accordance with the requirements, as it failed to correctly determine the correct height of eye of Daymarker No. 5's users in its determination of the light that is required.

j) USA failed to maintain and operate Daymarker No. 5's light with the required luminous intensity and/or effective luminous intensity.

k) USA failed to maintain and operate Daymarker No. 5 with the required detection range.

l) USA failed to maintain and operate Daymarker No. 5's light with the required operational range.

m) USA failed to maintain and operate Daymarker No. 5's light with the correct focal height.

n) USA failed to conduct a Waterway Analysis Management System study in accordance with its requirements.

o) USA failed to reassess its Waterways Analysis Management System analysis, in accordance with the requirements, when it commenced its Dredging Project.

p) And such other and further faults and negligence as discovery in this case may disclose.

55. The USA breached its duty to warn vessel owners, including the Limitation Plaintiff, of the dangers and hazards it created with establishing Daymarker No. 5 with exposed and unmarked pilings by failing to illuminate or affix any reflective material to the exposed pilings to make them visible at night to smaller vessels.

56. USA's failure to reasonably mark Daymarker No. 5, was a breach of its duty to administer the U.S. Aids to Navigation System in accordance with 33 C.F.R. § 62.1(c).

57. The damages caused by Daymarker No. 5 to Limitation Plaintiff, the Vessel, and as alleged by Claimants were reasonably foreseeable consequences of USA's failure to warn vessel operators, including Limitation Plaintiff, concerning the dangers and hazards with Daymarker No. 5.

58. As a direct, foreseeable, and proximate result of USA's negligence, Limitation Plaintiff's vessel M/V MAKE IT GO AWAY was a total loss, Claimants allegedly sustained injuries and Jeanica Julce drowned.

59. As a direct, foreseeable, and proximate result of the USA's negligence, Limitation Plaintiff sustained damages, including the total loss of M/V MAKE IT GO AWAY, as well as legal fees, costs and related expenses incurred in the defense of Claimants' alleged injuries and damages, and Limitation Plaintiff is entitled to recovery of said damages and expenses from USA.

## Count II
## Contribution

60. Limitation Plaintiff reasserts each and every ¶ above as if fully incorporated herein.

61. Within Claimants' Claims filed in the pending Limitation Action, Claimants allege that their damages were caused due to Limitation Plaintiff's negligence.

62. Limitation Plaintiff states that Claimants' alleged damages, including but not limited to Jeanica Julce's death and their alleged physical injuries, were caused in whole or in part by the negligence and/or culpable conduct by USA, without misconduct by Limitation Plaintiff.

63. As a result of the USA's conduct, Claimants allegedly suffered damages, including but not limited to Jeanica Julce's death and alleged injuries. If the Claimants are entitled to recover against Limitation Plaintiff, he is entitled to contribution from USA for all damages he may be required to pay Claimants, and for costs, expenses, and fees incurred in defense of this action.

## Count III
## Indemnity

64. Limitation Plaintiff reasserts each and every ¶ above as if fully incorporated herein.

65. Within Claimants' Claims filed in the pending Limitation Action, Claimants allege that their damages were caused due to Limitation Plaintiff's negligence.

66. Limitation Plaintiff states that Claimants' damages, including but not limited to Jeanica Julce's death, and their alleged physical injuries were caused solely by USA's negligence, without misconduct by Limitation Plaintiff.

67. A superseding cause may cut off liability for antecedent acts of negligence in admiralty cases where the superseding cause is the result of negligence.

68. As a result of USA's conduct, Claimants allegedly suffered damages, including but not limited to Jeanica Julce's death and alleged injuries.  If Claimants are entitled to recover against Limitation Plaintiff, he is entitled to indemnity from USA for all damages he may be required to pay Claimants, and for costs, expenses, and fees incurred in defense of this action.

## Count IV
## Recoupment

69. Limitation Plaintiff reasserts each and every ¶ above as if fully incorporated herein.

70. Within Claimants' Claims filed in the pending Limitation Action, Claimants allege that their damages were caused due to Limitation Plaintiff's negligence.

71. To the extent that USA's actions or omissions caused damage to Daymarker No. 5 due to its failure to properly warn recreational vessels concerning Daymarker No. 5, as well as caused the damage to Limitation Plaintiff's Vessel and the passenger Claimants, Limitation Plaintiff is entitled to recoupment of all damages attributed to him but caused, in fact, by USA.

72. The recoupment claim arises out of the same facts and circumstances as the claim asserted by USA.

73. USA has waived immunity from suit for purposes of a recoupment claim by filing a Claim brought pursuant to the Rivers and Harbors Act, 33 U.S.C. § 401.

WHEREFORE, Limitation Plaintiff Ryan Denver demands judgment against Claimant USA in an amount to be determined by this Honorable Court together with attorneys' fees, costs, interest and such other relief as this Honorable Court deems appropriate.

RESPECTFULLY SUBMITTED on January 27, 2022,

RYAN DENVER
By his counsel,

*/s/ Liam T. O'Connell*
David J. Farrell, Jr. (BBO #559847)
Liam T. O'Connell (BBO # 694477)
Kirby L. Aarsheim (BBO #678774)
**FARRELL SMITH O'CONNELL AARSHEIM APRANS LLP**
46 Middle Street, Second Floor
Gloucester, MA  01930
(978) 744-8918 x 18
loconnell@fsofirm.com

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 5.2, I served this brief on all attorneys of record via the ECF/CM system on January 27, 2022.

*/s/ Liam T. O'Connell*
Liam T. O'Connell