**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| IN THE MATTER OF RYAN DENVER | : | IN ADMIRALTY |
| AS OWNER OF M/V MAKE IT GO AWAY, | : | |
| FOR EXONERATION FROM OR | : | 1:21-cv-11841-ADB |
| LIMITATION OF LIABILITY | : | |

### THE UNITED STATES OF AMERICA'S ANSWER
### TO  LIMITATION PLAINTIFF RYAN DENVER'S, AS OWNER OF THE M/V
### <u>MAKE IT GO AWAY, COUNTERCLAIM</u>

COMES NOW the United States of America, by and through undersigned

counsel, and hereby answers Limitation Plaintiff's Counterclaim as follows:

**Parties**

1.   Limitation Plaintiff Ryan Denver is the registered owner of M/V MAKE IT GO

AWAY, a recreational 37 feet 11 inches (37'11") Pursuit Vessel, Model DC 365, built in

2021, with three 2020 Yamaha 300 HP engines (the "Vessel").

<u>ANSWER</u>: The United States, upon information and belief, admits that Ryan Denver is the

owner of the M/V MAKE IT GO AWAY. The United States lacks sufficient knowledge or

information to form a belief as to the truth of the remaining allegations in paragraph 1.

2.   Claimant USA is a Sovereign which by law has waived immunity from suit in

Admiralty actions and has consented to be sued as this action concerns claims premised on

fault or negligence due to actions or omissions by government agencies or departments.

<u>ANSWER</u>: The United States admits it is, and was at all times pertinent to this Claim, a

sovereign nation authorized to sue Limitation Plaintiff pursuant to the Rivers and Harbors

Act, 33 U.S.C. §§ 401, but denies the remaining allegations in paragraph 2.

3. USA, through the United States Coast Guard ("USCG"), established, owned, maintained, and operated an aid to navigation known as "Daymarker No. 5," which is located at approximately 42° 20' 0.20" N, 071° 0.0' 3.74" W.

ANSWER: The United States admits that through the United States Coast Guard, the United States owned, maintained, and operated an aid to navigation entitled the Boston Main Channel Light No. 5 ("Channel Light No. 5") located at Latitude 42-20-0.162N, Longitude 071-0-3.732W. The remaining allegations in paragraph 3 are denied.

4. Claimant Wilfred Julce, as Special Personal Representative of the Estate of Jeanica Julce, is a resident of Somerville, Massachusetts. Jeanica Julce (the "Decedent") was a passenger onboard the Vessel during the subject voyage and was a resident of Somerville, Massachusetts.

ANSWER: The United States admits that Decedent Jeanica Julce was a passenger onboard the Vessel and was a resident of Somerville, Massachusetts at the time of the allision. The United States lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 4.

5. Claimant Aristide Lex is resident of Boston, Massachusetts, and was a passenger onboard the Vessel during the subject voyage.

ANSWER: The United States admits that Aristide Lex was a passenger onboard the Vessel at the time of the allision. The United States lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 5.

6. Claimant Tory Govan is resident of Somerville, Massachusetts, and was a passenger onboard the Vessel during the subject voyage.

ANSWER: The United States admits that Tory Govan was a passenger onboard the Vessel at the time of the allision. The United States lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 6.

2

7. Claimant Marzouk Onifade is resident of Boston, Massachusetts, and was a passenger onboard the Vessel during the subject voyage.

<u>ANSWER</u>: The United States lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 7.

8. Claimant Musse Kassa is resident of Belmont, Massachusetts, and was a passenger onboard the Vessel during the subject voyage.

<u>ANSWER</u>: The United States admits that Musse Kassa was a passenger onboard the Vessel at the time of the allision. The United States lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 8.

**Jurisdiction**

9. The jurisdiction of this Honorable Court is predicated upon and within the maritime jurisdiction of this Honorable Court pursuant to 28 U.S.C. § 1333, 46 U.S.C. § 741, and Fed. R. Civ. P. 9(h).

<u>ANSWER</u>:  The United States admits this Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. § 1333 and Fed. R. Civ. P. 9(h). The remaining allegations in paragraph 9 are denied.

**Statement of Facts**

10. Limitation Plaintiff repeats and realleges each and every allegation set forth in his Limitation Complaint, ECF No. 1, and incorporates each allegation as if they were all set forth herein.

<u>ANSWER</u>: Paragraph 10 contains statements which require no response from the United States. To the extent a response is required by the United States, the allegations in paragraph 10 are denied.

11. At approximately 0247 hours on July 17, 2021, Limitation Plaintiff was navigating the Vessel in Boston Harbor, from the Quincy area to Boston's Inner Harbor (in a

Northwesterly direction) to the East of Castle Island, and in a proper manner and at an appropriate speed when the Vessel allided with a fixed navigational aid (Daymarker No. 5) in the vicinity of Castle Island.

ANSWER: The United States admits that at approximately 0247 hours on July 17, 2021, Limitation Plaintiff Ryan Denver was navigating the Vessel in or near Boston Harbor when the Vessel allided with Boston Main Channel Light No. 5, a fixed navigational aid, in the vicinity of Castle Island. The remaining allegations in paragraph 11 are denied.

12. USA, through the USCG, owned, and had a duty to maintain an aid to navigation known as Daymarker No. 5 which the USA was and is responsible for its design, location, construction, equipment and/or fixtures, and maintenance.

ANSWER: The United States admits that through the United States Coast Guard it owned and maintained Boston Main Channel Light No. 5. The remaining allegations in paragraph 12 contain legal conclusions that are respectfully referred to the Court for determination and to which no response from the United States is required.

13. As designed by USA, which it has officially noticed and published, Daymarker No. 5 is supposed to be equipped with a green light flashing at two-and-a-half (2.5) second intervals, three (3) square green dayboards, and that the focal height of the green light is thirty-two (32) feet above sea-level measured at mean high water.

ANSWER:  The United States admits that Boston Main Channel Light No. 5 had a green light flashing at two-and-a-half (2.5) second intervals, was equipped with three (3) square day boards, and stood 32 feet high. The remaining allegations in paragraph 13 are denied as written.

14. Daymarker No. 5's primary purpose, by USA's design, is to warn large deep-draft ocean-going vessels heading inbound and outbound to/from the Port of Boston, which are

constrained by their draft to the ship channel, of shallow water in order to prevent large vessel groundings.

ANSWER: Paragraph 14 contains statements which require no response from the United States. To the extent a response is required by the United States, the allegations in paragraph 14 are denied.

15.  At the time of the allision, the light was nearly forty feet (40') above the approximate water level, and the four (4) black steel pilings were mostly exposed and were taller than the Vessel (measured from the waterline to the bottom of the platform).

ANSWER: The United States lacks sufficient knowledge or information to form a belief as to the truth of the in paragraph 15, and therefore denies them.

16.  The Vessel's draft was approximately three (3) feet on July 17, 2021, during the time the Vessel was navigating in the vicinity of Daymarker No. 5, leaving approximately fifteen (15) feet of water below the Vessel, within the two hundred (200) yard area surrounding Daymarker No. 5.

ANSWER: The United States lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 16, and therefore denies them.

17.  None of Daymarker No. 5's pilings were illuminated or affixed with any reflective material to make them visible at night.

ANSWER: The United States admits that Boston Main Channel Light No. 5's pilings were not affixed with reflective material. The United States lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 17, and therefore denies them.

18.  The Vessel was entitled to navigate in or around any portion of navigable waters; thus, it was not, by law or in fact, constrained to the channel.

ANSWER: Paragraph 18 contains legal conclusions that are respectfully referred to the Court for determination and to which no response from the United States is required. The United States lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 18, and therefore denies them.

19. USA created dangers and hazards to navigation for smaller vessels that have lower heights of eye, by establishing, maintaining, and operating Daymarker No. 5.

ANSWER:  The United States denies the allegations in paragraph 19.

20. USA failed to warn of the dangers and hazards it created with Daymarker No. 5.

ANSWER: The United States denies the allegations in paragraph 20.

21. At the time of the allision, the Boston Harbor Phase 3 Rock Removal Project (the "Dredging Project") was in operation and DREDGE NEW YORK (has a length of 200' and a beam of 57') and DRILLBOAT APACHE (has a length of 210' and a beam of 60') were off Castle Island, Northwest of Daymarker No. 5. (Behind Daymarker No. 5, from the Vessel's perspective).

ANSWER: The United States admits the DREDGE NEW YORK and DRILLBOAT APACHE were on site at the Boston Harbor Phase 3 Rock Removal Project at the time of the allision. The United States lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 21, and therefore denies them.

22. USA funded, implemented, managed, and controlled the Dredging Project.

ANSWER: The United States admits that through a contract between the U.S. Army Corps of Engineers and Great Lakes Dredge and Dock Co., LLC, it funded the Dredging Project. The United States denies the remaining allegations in paragraph 22.

23. USA failed to mitigate, manage, or reduce the level of background lighting created by its Dredging Project.

ANSWER: The United States denies the allegations contained in paragraph 23.

24. The dangers and hazards to navigation that USA created with Daymarker No. 5, was further aggravated when USA failed to exercise due care, in the continued operation of Daymarker No. 5 in relation to the Dredging Project.

ANSWER: The United States denies the allegations contained in paragraph 24.

25. USA failed to warn of the dangers and hazards with Daymarker No. 5, that were aggravated by USA's Dredging Project.

ANSWER: The United States denies the allegations contained in paragraph 25.

26. Limitation Plaintiff was navigating the Vessel on its return trip to Boston by keeping the Vessel on the same track line he made good on the earlier outbound trip, as recorded and displayed on the Vessel's chartplotter.

ANSWER: The United States lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 26, and therefore denies them.

27. The Moon had set hours before the allision, and Limitation Plaintiff could not see Daymarker No. 5 because of the negligent design, establishment, maintenance, and operation of its high black pilings and its light (even if operational at the time), which was nearly forty (40) feet above the water level, which created dangers and hazards for vessels, particularly smaller vessels with lower heights of eye, like M/V MAKE IT GO AWAY.

ANSWER: The United States denies the allegations contained in paragraph 27.

28. The dangers and hazards created by USA were worsened by USA's Dredging Project, as Daymarker No. 5's forty (40) foot high light, if operational at the time, was absorbed by the backlight from USA's Dredging Project.

ANSWER: The United States denies the allegations contained in paragraph 28.

29. Claimants Aristide Lex, Tory Govan, Marzouk Onifade, Musse Kassa, and decedent Jeanica Julce, as well as other passengers, Pierre Joas and Matthew Postal, were onboard the Vessel during the subject voyage.

<u>ANSWER</u>:  The United States admits that passengers Aristide Lex, Tory Govan, Musse Kassa, and decedent Jeanica Julce were onboard the Vessel at the time of the allision. Upon information and belief, Pierre Joas was onboard the Vessel at the time of the allision. The United States lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 29, and therefore denies them.

30.  Denver was unable to avoid the allision by the time Daymarker No. 5 came into sight.

<u>ANSWER</u>: The United States denies the allegations contained in paragraph 30.

31.  After the allision, which occurred at approximately 2:47 a.m. on July 17, 2021, the Vessel began taking on water, so Denver and the seven (7) passengers, including Claimants and decedent Jeanica Julce, eventually entered the water.

<u>ANSWER</u>: The United States lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 31, and therefore denies them.

32.  Limitation Plaintiff and one of the passengers who could swim did everything they could to assist the remaining six (6) people in the water, until help arrived.

<u>ANSWER</u>: The United States lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 32, and therefore denies them.

33.  Law enforcement agencies took seven (7) people including Limitation Plaintiff back to shore. Search and Rescue responders found Jeanica Julce's body sometime later.

<u>ANSWER</u>: The United States admits seven (7) people were taken back to shore following the incident and that the body of Jeanica Julce was found later on July 17, 2021. The United States lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 33, and therefore denies them.

34.  On December 17, 2021, Wilfred Julce, as Special Personal Representative of the Estate of Jeanica Julce, filed an Answer and Claim, including claims for wrongful death, pain and suffering, and punitive damages.

<u>ANSWER</u>: Paragraph 34 contains statements which require no response from the United States. To the extent a response is required by the United States, the allegations in paragraph 34 are admitted.

35. On December 17, 2021, Aristide Lex filed an Answer and Claim, including claims that he was caused to suffer serious and permanent injuries, including anguish of mind, allegedly related to his fear of drowning.

<u>ANSWER</u>: Paragraph 35 contains statements which require no response from the United States. To the extent a response is required by the United States, lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 35, and therefore denies them.

36. On December 21, 2021, Tory Govan filed an Answer and Claim, including claims for damages allegedly related to her pain, severe anxiety, mental and emotional suffering.

<u>ANSWER</u>: Paragraph 36 contains statements which require no response from the United States. To the extent a response is required by the United States, the allegations in paragraph 35 are admitted.

37. On December 28, 2021, Marzouk Onifade filed an Answer and Claim, including claims that he was caused to suffer serious and permanent injuries, including anguish of mind, allegedly related to his fear of drowning.

<u>ANSWER</u>: Paragraph 37 contains statements which require no response from the United States. To the extent a response is required by the United States, the allegations in paragraph 37 are admitted.

38. On December 29, 2021, Musse Kassa, filed an Answer and Claim, including claims for damages allegedly related to his mental anguish.

ANSWER: Paragraph 38 contains statements which require no response from the United States. To the extent a response is required by the United States, the allegations in paragraph 38 are admitted.

## Count I Negligence

39. Limitation Plaintiff reasserts each and every ¶ above as if fully incorporated herein.

ANSWER: Paragraph 39 contains a statement which requires no response from the United States. To the extent a response is required by the United States, the allegations in paragraph 39 are denied.

40. The USA, by and though the USCG, pursuant to federal law, has a duty to establish, maintain, and operate aids to navigation for the promotion of safety of navigation.

ANSWER: Paragraph 40 contains legal conclusions that are respectfully referred to the Court for determination and to which no response from the United States is required.

41. The USA had a duty to exercise due care in maintaining and ensuring that Daymarker No. 5 was in good working order.

ANSWER: Paragraph 41 contains legal conclusions that are respectfully referred to the Court for determination and to which no response from the United States is required.

42. USA made the decision to facilitate safe navigation in Boston Harbor, by constructing and placing Daymarker No. 5; therefore, USA had a duty to perform its undertaken responsibility with due care.

ANSWER: Paragraph 42 contains legal conclusions that are respectfully referred to the Court for determination and to which no response from the United States is required. The remaining allegations in paragraph 42 are denied.

43. USA made the decision to facilitate safe navigation in Boston Harbor, by constructing and placing Daymarker No. 5, and in doing do, USA induced mariners, including smaller

vessels, to rely on Daymarker No. 5 as an aid to navigation, but failed to warn smaller vessels of the dangers and hazards it created with Daymarker No. 5, particularly at night.

ANSWER: Paragraph 43 contains legal conclusions that are respectfully referred to the Court for determination and to which no response from the United States is required. The remaining allegations in paragraph 43 are denied.

44. USA made the decision to facilitate safe navigation in Boston Harbor, by constructing and placing Daymarker No. 5, and in doing do, USA induced mariners, including smaller vessels, to rely on Daymarker No. 5 as an aid to navigation, but failed to warn smaller vessels of the dangers and hazards it created with Daymarker No. 5, which were aggravated by USA's Dredging Project.

ANSWER: Paragraph 44 contains legal conclusions that are respectfully referred to the Court for determination and to which no response from the United States is required. The remaining allegations in paragraph 44 are denied.

45. USA made the decision to facilitate safe navigation in Boston Harbor, by constructing and placing Daymarker No. 5, which Limitation Plaintiff relied upon, but USA breached its duty to perform its functions in a reasonable manner as it was foreseeable that Daymarker No. 5 was a danger and hazard to smaller vessels at night.

ANSWER: Paragraph 45 contains legal conclusions that are respectfully referred to the Court for determination and to which no response from the United States is required. The remaining allegations in paragraph 45 are denied.

46. USA was required to operate and maintain Daymarker No. 5, regardless of the costs associated.

ANSWER: Paragraph 46 contains legal conclusions that are respectfully referred to the Court for determination and to which no response from the United States is required.

47. General principles of maritime law, impose upon USA a duty to exercise ordinary care, including the duty to warn of reasonably foreseeable harm.

ANSWER: Paragraph 47 contains legal conclusions that are respectfully referred to the Court for determination and to which no response from the United States is required.

48. USA had a duty to take precautions to warn of dangers it created by placing obstructions, such as Daymarker No. 5, within navigable waters.

ANSWER: Paragraph 48 contains legal conclusions that are respectfully referred to the Court for determination and to which no response from the United States is required. To the extent a response is required by the United States, the allegations in paragraph 48 are denied.

49. USA had a duty to warn of the dangers and hazards to navigation, particularly to smaller vessels, that it created by negligently establishing, maintaining, and operating Daymarker No. 5.

ANSWER: Paragraph 49 contains legal conclusions that are respectfully referred to the Court for determination and to which no response from the United States is required. To the extent a response is required by the United States, the allegations in paragraph 49 are denied.

50. The USA breached its duty of care to Limitation Plaintiff and Claimants by negligently constructing and maintaining Daymarker No. 5 such that it created a hazard to navigation for smaller vessels that have lower heights of eye.

ANSWER: Paragraph 50 contains legal conclusions that are respectfully referred to the Court for determination and to which no response from the United States is required. To the extent a response is required by the United States, the allegations in paragraph 50 are denied.

51. Daymarker No. 5 was at all relevant times herein, a structure that caused an obstruction, as both terms are defined under 33 C.F.R. § 64.06, which created a hazard to navigation as defined by the same regulation.

ANSWER: Paragraph 51 contains legal conclusions that are respectfully referred to the Court for determination and to which no response from the United States is required. To the extent a response is required by the United States, the allegations in paragraph 51 are denied.

52. The USA created a hazard to navigation by negligently constructing, operating, and maintaining Daymarker No. 5, which was further aggravated by the USA's Dredging Project.

ANSWER: Paragraph 52 contains legal conclusions that are respectfully referred to the Court for determination and to which no response from the United States is required. To the extent a response is required by the United States, the allegations in paragraph 52 are denied.

53. When USA established Daymarker No. 5, and mariners subsequently relied on its actions, a duty was created for the USA to act reasonably and with due care to ensure that Daymarker No. 5 was marked in a way that did not create a new hazard, aside from the one it was intended to warn of (the low water off of Castle Island).

ANSWER: Paragraph 53 contains legal conclusions that are respectfully referred to the Court for determination and to which no response from the United States is required. The remaining allegations in paragraph 53 are denied.

54. The USA negligently constructed, maintained, operated, and or kept in good working order Daymarker No. 5, including but not limited to the following manners:

a) Daymarker No. 5's dayboard was not maintained in accordance with the requirements that USA ensure the dayboard's film and/or retroreflective markings were not delaminated or worn beyond the acceptable limits set by the USA.

b) Daymarker No. 5's dayboard was not maintained in accordance with the requirements that the dayboard's size, the dayboard's number's size, and coloring of same meet USA's required specifications.

c) Daymarker No. 5 was not maintained in accordance with the requirements that its light comply with the USA's focus requirements and that the optic be within the prescribed tolerances of the same.

d) USA failed to inspect, service, and/or maintain Daymarker No. 5 within the required intervals.

e) USA failed to maintain and operate Daymarker No. 5, and its equipment and/or fixtures, in compliance with the various regulations and internal policies, procedures, and requirements.

f) USA failed to properly illuminate or affix with any reflective material to Daymarker No. 5's exposed pilings to make them visible at night to smaller vessels.

g) USA failed to maintain and operate Daymarker No. 5 in accordance with the requirements, as it failed to apply the correct degree of background lighting in determining the required luminous intensity and/or effective luminous intensity for Daymarker No. 5's light.

h) USA failed to maintain and operate Daymarker No. 5 in accordance with the requirements, as it failed to apply the correct degree of background lighting, which was drastically increased by its own Dredging Project, in determining the required luminous intensity and/or effective luminous intensity for Daymarker No. 5's light, for the duration of the Dredging Project.

i) USA failed to maintain and operate Daymarker No. 5 in accordance with the requirements, as it failed to correctly determine the correct height of eye of Daymarker No. 5's users in its determination of the light that is required.

j) USA failed to maintain and operate Daymarker No. 5's light with the required luminous intensity and/or effective luminous intensity.

14

k) USA failed to maintain and operate Daymarker No. 5 with the required detection range.

l) USA failed to maintain and operate Daymarker No. 5's light with the required operational range.

m) USA failed to maintain and operate Daymarker No. 5's light with the correct focal height.

n) USA failed to conduct a Waterway Analysis Management System study in accordance with its requirements.

o) USA failed to reassess its Waterways Analysis Management System analysis, in accordance with the requirements, when it commenced its Dredging Project.

p) And such other and further faults and negligence as discovery in this case may disclose.

ANSWER: Paragraph 54 subparts (a) – (p) contain legal conclusions that are respectfully referred to the Court for determination and to which no response from the United States is required. To the extent a response is required by the United States, the allegations in paragraph 54 subparts (a) – (p) are denied.

55. The USA breached its duty to warn vessel owners, including the Limitation Plaintiff, of the dangers and hazards it created with establishing Daymarker No. 5 with exposed and unmarked pilings by failing to illuminate or affix any reflective material to the exposed pilings to make them visible at night to smaller vessels.

ANSWER: Paragraph 55 contains legal conclusions that are respectfully referred to the Court for determination and to which no response from the United States is required. To the extent a response is required by the United States, the allegations in paragraph 55 are denied.

56. USA's failure to reasonably mark Daymarker No. 5, was a breach of its duty to administer the U.S. Aids to Navigation System in accordance with 33 C.F.R. § 62.1(c).

15

ANSWER: Paragraph 56 contains legal conclusions that are respectfully referred to the Court for determination and to which no response from the United States is required. To the extent a response is required by the United States, the allegations in paragraph 56 are denied.

57. The damages caused by Daymarker No. 5 to Limitation Plaintiff, the Vessel, and as alleged by Claimants were reasonably foreseeable consequences of USA's failure to warn vessel operators, including Limitation Plaintiff, concerning the dangers and hazards with Daymarker No. 5.

ANSWER: Paragraph 57 contains legal conclusions that are respectfully referred to the Court for determination and to which no response from the United States is required. To the extent a response is required by the United States, the allegations in paragraph 57 are denied.

58. As a direct, foreseeable, and proximate result of USA's negligence, Limitation Plaintiff's vessel M/V MAKE IT GO AWAY was a total loss, Claimants allegedly sustained injuries and Jeanica Julce drowned.

ANSWER: Paragraph 58 contains legal conclusions that are respectfully referred to the Court for determination and to which no response from the United States is required. To the extent a response is required by the United States, the allegations in paragraph 58 are denied.

59. As a direct, foreseeable, and proximate result of the USA's negligence, Limitation Plaintiff sustained damages, including the total loss of M/V MAKE IT GO AWAY, as well as legal fees, costs and related expenses incurred in the defense of Claimants' alleged injuries and damages, and Limitation Plaintiff is entitled to recovery of said damages and expenses from USA.

ANSWER: Paragraph 59 contains legal conclusions that are respectfully referred to the Court for determination and to which no response from the United States is required. To the extent a response is required by the United States, the allegations in paragraph 59 are denied.

**Count II Contribution**

60. Limitation Plaintiff reasserts each and every ¶ above as if fully incorporated herein.

ANSWER: Paragraph 60 contains a statement which requires no response from the United

States. To the extent a response is required by the United States, the allegations in paragraph

60 are denied.

61. Within Claimants' Claims filed in the pending Limitation Action, Claimants allege

that their damages were caused due to Limitation Plaintiff's negligence.

ANSWER: Paragraph 61 contains statements which require no response from the United

States. To the extent a response is required by the United States, the allegations in paragraph

61 are admitted.

62. Limitation Plaintiff states that Claimants' alleged damages, including but not limited

to Jeanica Julce's death and their alleged physical injuries, were caused in whole or in part by

the negligence and/or culpable conduct by USA, without misconduct by Limitation Plaintiff.

ANSWER: The United States denies the allegations contained in paragraph 62.

63. As a result of the USA's conduct, Claimants allegedly suffered damages, including

but not limited to Jeanica Julce's death and alleged injuries. If the Claimants are entitled to

recover against Limitation Plaintiff, he is entitled to contribution from USA for all damages

he may be required to pay Claimants, and for costs, expenses, and fees incurred in defense of

this action.

ANSWER: The United States denies the allegations contained in paragraph 63.

**Count III Indemnity**

64. Limitation Plaintiff reasserts each and every ¶ above as if fully incorporated herein.

ANSWER: Paragraph 64 contains a statement which requires no response from the United

States. To the extent a response is required by the United States, the allegations in paragraph

64 are denied.

65.  Within Claimants' Claims filed in the pending Limitation Action, Claimants allege that their damages were caused due to Limitation Plaintiff's negligence.

ANSWER: Paragraph 65 contains statements which require no response from the United States. To the extent a response is required by the United States, the allegations in paragraph 65 are admitted.

66.  Limitation Plaintiff states that Claimants' damages, including but not limited to Jeanica Julce's death, and their alleged physical injuries were caused solely by USA's negligence, without misconduct by Limitation Plaintiff.

ANSWER: The United States denies the allegations contained in paragraph 66.

67.  A superseding cause may cut off liability for antecedent acts of negligence in admiralty cases where the superseding cause is the result of negligence.

ANSWER: Paragraph 67 contains legal conclusions that are respectfully referred to the Court for determination and to which no response from the United States is required.

68.  As a result of USA's conduct, Claimants allegedly suffered damages, including but not limited to Jeanica Julce's death and alleged injuries. If Claimants are entitled to recover against Limitation Plaintiff, he is entitled to indemnity from USA for all damages he may be required to pay Claimants, and for costs, expenses, and fees incurred in defense of this action.

ANSWER: Paragraph 68 contains legal conclusions that are respectfully referred to the Court for determination and to which no response from the United States is required. To the extent a response is required by the United States, the allegations in paragraph 68 are denied.

**Count IV Recoupment**

69.  Limitation Plaintiff reasserts each and every ¶ above as if fully incorporated herein.

ANSWER: Paragraph 69 contains a statement which requires no response from the United States. To the extent a response is required by the United States, the allegations in paragraph 69 are denied.

70. Within Claimants' Claims filed in the pending Limitation Action, Claimants allege that their damages were caused due to Limitation Plaintiff's negligence.

ANSWER: Paragraph 70 contains statements which require no response from the United States. To the extent a response is required by the United States, the allegations in paragraph 70 are admitted.

71. To the extent that USA's actions or omissions caused damage to Daymarker No. 5 due to its failure to properly warn recreational vessels concerning Daymarker No. 5, as well as caused the damage to Limitation Plaintiff's Vessel and the passenger Claimants, Limitation Plaintiff is entitled to recoupment of all damages attributed to him but caused, in fact, by USA.

ANSWER: Paragraph 71 contains legal conclusions that are respectfully referred to the Court for determination and to which no response from the United States is required. To the extent a response is required by the United States, the allegations in paragraph 71 are denied.

72. The recoupment claim arises out of the same facts and circumstances as the claim asserted by USA.

ANSWER: Paragraph 72 contains legal conclusions that are respectfully referred to the Court for determination and to which no response from the United States is required. To the extent a response is required by the United States, the allegations in paragraph 72 are denied.

73. USA has waived immunity from suit for purposes of a recoupment claim by filing a Claim brought pursuant to the Rivers and Harbors Act, 33 U.S.C. § 401.

ANSWER: Paragraph 73 contains legal conclusions that are respectfully referred to the Court for determination and to which no response from the United States is required. To the extent a response is required by the United States, the allegations in paragraph 73 are denied.

WHEREFORE, Limitation Plaintiff Ryan Denver demands judgment against Claimant USA in an amount to be determined by this Honorable Court together with attorneys' fees, costs, interest and such other relief as this Honorable Court deems appropriate.

ANSWER: Limitation Plaintiff's Wherefore paragraph does not require a response from the United States. To the extent a response is required, the United States denies the allegations and claims for relief contained therein.

## UNITED STATES' AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Limitation Plaintiff's Counterclaim fails to state a claim upon which relief may be granted in whole or in part. In particular, because Limitation Plaintiff's Counterclaim challenges conduct that is both discretionary and susceptible to policy analysis, the discretionary function exception applies and all allegations challenging such discretionary conduct should be dismissed for lack of subject matter jurisdiction.

### SECOND AFFIRMATIVE DEFENSE

Limitation Plaintiff's damages and the claims and alleged damages of decedent Jeanica Julce, and passenger claimants (Tory Govan, Musse Kassa, Aristide Lex, and Marzouk Onifade) were not caused or contributed to by any wrongful act or omission by any agent, servant or employee of the United States.

**WHEREFORE**, the United States prays:

1.     That Limitation Plaintiff Ryan Denver be denied the right to exoneration from, or limitation of liability and his Complaint be dismissed;

2.     That Limitation Plaintiff Ryan Denver be adjudged liable, without limitation, to the United States for all losses sustained by the United States as a result of the July 17, 2021 incident, including interest, costs, and attorneys' fees;

20

3.      That the United States, at its discretion, be permitted to commission an independent appraisal of the value of the M/V MAKE IT GO AWAY and offer evidence of the same for the Court's consideration in setting the limitation amount, should limitation be found to apply;

4.      That the claim of the United States be adjudicated herein, and that judgment be entered against Limitation Plaintiff, Ryan Denver, and the M/V MAKE IT GO AWAY, for all damages and losses sustained by the United States as a result of the July 17, 2021, incident described above.

5.      For all such other and further relief to which the United States may be entitled.


Dated: March 25, 2022                   Respectfully submitted,

                                        BRIAN M. BOYNTON
                                        Principal Deputy Assistant Attorney General
                                        U.S. Department of Justice, Civil Division

                                        RACHEAL S. ROLLINS
                                        United States Attorney

                                        /s/ Jessica G. Sullivan
                                        JESSICA G. SULLIVAN
                                        Trial Attorney
                                        United States Department of Justice
                                        Civil Division, Torts Branch
                                        Post Office Box 14271
                                        Washington, D.C. 20044-4271
                                        Telephone: (202) 616-4044
                                        Facsimile: (202) 616-4002
                                        Email: jessica.sullivan@usdoj.gov

                                        Attorneys for the United States of America

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 25, 2022, I electronically filed the United States of

America's Answer to Limitation Plaintiff Ryan Denver's Counterclaim with the Clerk of

Court through the CM/ECF system which will send notification to all counsel of record:

Liam O'Connell
Kirby L. Aarsheim
Farrell Smith O'Connell, LLP
46 Middle Street, 2nd Fl.
Gloucester, MA 01930
loconnell@fsofirm.com
kaarsheim@fsofirm.com

William Burke O'Leary
The O'Leary Law Firm
63 Shore Road, Ste. 25
Winchester, MA 01890
bill@tuglaw.com

Dennis P. Phillips
63 Shore Road, Ste. 23
Winchester, MA 01890
dppesq1@comcast.net

Peter R. Chandler
Sheff Law Offices, P.C.
The Daniel Webster Suite
10 Tremont Street
Boston, MA 02108
DSheff@shefflaw.com
pchandler@shefflaw.com

Stesha A. Emmanuel
McCarter & English, LLP
City Place I
185 Asylum Street, 36th Fl.
Hartford, CT 06103
semmanuel@mccarter.com

Carolyn M. Latti
Latti & Anderson, LLP
30 - 31 Union Wharf
Boston, MA 02109
clatti@lattianderson.com

Robert W. Norton
Giarrusso, Norton, Colley & McGlone, PC
308 Victory Road
Marina Bay
North Quincy, MA 02171
rnorton@gncm.net

Kevin G. Kenneally
Freeman Mathis & Gary, LLP
60 State Street, Suite 600
Boston, MA 02109
kkenneally@fmglaw.com


*/s/ Jessica G. Sullivan*
JESSICA G. SULLIVAN
Trial Attorney
United States Department of Justice