UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN THE MATTER OF RYAN DENVER AS OWNER OF M/V MAKE IT GO AWAY, FOR EXONERATION FROM OR LIMITATION OF LIABILITY | * * * * * Civil Action No. 21-cv-11841-ADB * * * * * |

# MEMORANDUM AND ORDER ON CLAIMANTS' MOTION TO DISMISS

BURROUGHS, D.J.

This is an action under the Limitation of Liability Act of 1851 and Rule F of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions brought by Limitation Plaintiff Ryan Denver ("Plaintiff"). He seeks exoneration from or limitation of liability arising from an accident that occurred in Boston Harbor on July 17, 2021. Before the Court is Claimants Aristide Lex, Tory Govan, and Wilfred Julce as Special Personal Representative of the Estate of Jeanica Julce's ("Claimants") motion to dismiss Plaintiff's complaint. For the reasons set forth below, Claimants' motion, [ECF No. 6], is DENIED.

## I.   BACKGROUND

The following facts are taken from the complaint, [Compl.], the factual allegations of which are assumed to be true when considering a motion to dismiss. Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).

This action stems from an accident that occurred at 2:45 a.m. on July 17, 2021, in which a vessel, the M/V MAKE IT GO AWAY ("Vessel") struck a fixed navigational aid ("Daymarker No. 5"), which is located East of Castle Island. [ECF No. 1 ("Compl.") ¶ 6]. Plaintiff is the

registered owner of the Vessel and, at the time of the accident, was navigating it from the Quincy area to Boston's inner harbor with seven passengers onboard.  [Id. ¶¶ 3, 5–6].

Daymarker No. 5 is a fixed navigational aid that is intended to warn deep-draft ocean-going vessels of shallow water.  [Compl. ¶ 7].  It is maintained by the United States Coast Guard ("Coast Guard") and is "supposed to be equipped with a green light that flashes once every two-and-a-half [] seconds . . . ."  [Id. ¶ 8].  The flashing light is affixed to a platform located on top of four pilings that are driven into the seafloor.  [Id. ¶ 8].  At the time of the accident, the light was approximately 40 feet above the water level and the supporting pilings were mostly exposed.  [Id. ¶ 9].  The pilings were not illuminated and were not affixed with any reflective material to make them visible at night.  [Id. ¶ 10].  Also at the time of the accident, a dredging project was in operation in Boston Harbor and two of the dredging vessels were located Northwest of Daymarker No. 5 such that, from the Vessel's perspective, they were behind Daymarker No. 5.[1]  [Id. ¶ 11].

Up until the Vessel's allision with Daymarker No. 5, Plaintiff was navigating it "in a proper manner and at an appropriate speed[,]" and was "keeping the Vessel on the same track line he made good on the earlier outbound trip, as recorded and displayed on the Vessel's chartplotter."  [Compl. ¶¶ 6, 12].  Nevertheless, Plaintiff did not see the pilings until it was too late to avoid the allision because the moon had set hours before the accident, the pilings were not illuminated or affixed with reflective material, and the light atop the pilings was "absorbed by background lights including from the Dredging Project[.]"  [Id. ¶¶ 13–14].  The allision was further unexpected because, as noted above, the Vessel was on the same track line taken on the outbound trip.  [Id. ¶ 14].

---

[1] The vessels, the DREDGE NEW YORK and DRILLBOAT APACHE, are large vessels that are over 200 feet long and have a beam width of close to 60 feet.  [Compl. ¶ 11].

Plaintiff and the seven passengers were not ejected from the Vessel in the allision, but they subsequently entered the water once the boat began taking on water. [Id. ¶ 15]. Soon after they entered the water, another motor vessel (the "Unidentified Vessel") approached with the apparent intent of offering aid. [Id. ¶¶ 16–17]. Before any assistance was provided, however, and without notice or explanation, the Unidentified Vessel departed. [Id. ¶ 18]. Plaintiff claims that by leaving without providing aid, the operator of the Unidentified Vessel violated his legal duty to provide assistance at sea pursuant to 46 U.S.C. § 2304. [Id. ¶ 20]. Plaintiff and one of the passengers who could swim tried to help the other six passengers while they waited to be rescued, but Jeanica Julce drowned despite those efforts. [Id. ¶¶ 18, 21–22]. Eventually, the remaining passengers and Plaintiff were rescued by the Coast Guard, and the Vessel was towed into port and has since remained in the Commonwealth's custody. [Id. ¶¶ 22–23].

Plaintiff claims that the accident and all injuries, damages, and losses alleged to have resulted from it were not caused by a breach of applicable statutes or regulations, or any type of unseaworthiness, intentional fault, neglect, or lack of reasonable care by Plaintiff or the Vessel. [Compl. ¶ 24]. He further asserts, in the alternative, that any fault or liability on the part of Plaintiff or the Vessel that may have contributed to any injuries "were occasioned and incurred without the privity or knowledge" of Plaintiff and were "due to the fault of other parties whose actions and/or inactions are not [his] responsibility." [Id. ¶ 25].

On November 12, 2021, Plaintiff filed his complaint. [ECF No. 1]. Claimants moved to dismiss on December 17, 2021, [ECF No. 6], and Plaintiff opposed the motion on January 3, 2022, [ECF No. 20].

## II.     DISCUSSION

### A.     Legal Standard

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in favor of the plaintiff. See Gilbert v. City of Chicopee, 915 F.3d 74, 76, 80 (1st Cir. 2019). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In other words, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (quoting Iqbal, 556 U.S. at 679). "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 14 (1st Cir. 2011)).

### B.     Analysis

Claimants argue that Plaintiff's complaint must be dismissed because (1) he is not entitled to protection under the Limitation of Liability Act (or, the "Act"), 46 U.S.C. § 30501 *et seq.*, and (2) because he failed to properly identify the vessel involved in the accident in his complaint. See generally [ECF No. 7].

1.      The Limitation of Liability Act

The Limitation of Liability Act, 46 U.S.C. § 30501 *et seq.*, limits the liability of a vessel owner to the value of the vessel (and any freight it is carrying, a factor not relevant here) for any damage caused by an accident without the "privity or knowledge" of the owner. Id. § 30505(b). "Privity or knowledge" is defined as "personal participation of the owner in some fault, or act of negligence, causing or contributing to the loss, or some personal knowledge or means of knowledge, of which he is bound to avail himself of a contemplated loss, or conditions likely to produce or contribute to the loss, without adopting appropriate means to prevent it. There must be some personal concurrence, or some fault or negligence on the part of the owner himself, or in which he personally participates, to constitute such privity, within the meaning of the Limitation Act, as will exclude him from the benefit of its provisions." Keller v. Jennette, 940 F. Supp. 35, 38 (D. Mass. 1996) (quoting Petition of M/V Sunshine, II, 808 F.2d 763–64 (11th Cir. 1987)) (internal quotation marks and alteration omitted). "In all events, an entitlement to limitation requires an antecedent finding that the vessel owner was not privy to, and had no knowledge of, the decisive act of negligence or condition of unseaworthiness." Carr v. PMS Fishing Corp., 191 F.3d 1, 4 (1st Cir. 1999).

Claimants contend that Plaintiff cannot plausibly assert that he lacks privity or knowledge of negligence because he was navigating the Vessel at the time of the allision and therefore, "[i]f there was negligence in the operation of the vessel . . . only Plaintiff could be liable for it." [ECF No. 7 at 7 (quoting Complaint of Martin, 18 F. Supp. 2d 126, 128 (D. Mass. 1998)]. Claimants urge the Court to follow the reasoning adopted in Fecht v. Makowski, 406 F.2d 721 (5th Cir. 1969) and Complaint of Martin, 18 F. Supp. 2d 126 (D. Mass. 1998) and hold that because Plaintiff was the "owner at the helm" at the time of the accident, his privity and knowledge of

negligence is made out as a matter of law. [Id. at 4–5]. They contend that the line of cases rejecting Fecht and Martin are distinguishable and non-binding. [Id. at 6].

Fecht involved an accident in which one passenger was killed and another injured when a seventeen-foot outboard motorboat operated by its owner struck a submerged object. 406 F.2d at 721. The owner and his wife filed a petition for limitation or exoneration from liability and the district court denied the claimants' motion to dismiss. Id. at 722. The Fifth Circuit reversed and found that "when an owner is in control of and operating his pleasure craft he has privity or knowledge with respect to its operation, [and] therefore he is not entitled to limitation for accidents arising from his negligence." Id.

Martin was an order on summary judgment that involved a factually similar scenario: the plaintiff was the sole owner and operator of the vessel and claimed to have operated it in a safe manner. Martin, 18 F. Supp. 2d at 128–29. Despite Plaintiff's assertion that he operated the boat safely, then-Chief Judge Tauro applied the same reasoning adopted in Fecht and held that the plaintiff could not avail himself of the Act's protections because "[i]f there was negligence . . . only [p]laintiff could be liable for it." Id. at 128. The court distinguished another in-circuit case, Keller v. Jennette, 940 F. Supp. 35 (D. Mass. 1996), because, there, the claimant alleged that his injuries were caused, at least in part, by the negligent operation of another vessel. Id. at 129.

As Claimants concede, other circuit and district courts have rejected Fecht and Martin's reasoning and hold that an owner's operation of a vessel at the time of an accident does not defeat a limitation of liability action. This line of cases cautions against deciding, at the pleadings and without the benefit of discovery, whether it would be possible for the vessel owner to demonstrate lack of privity or knowledge. See Bensch v. Estate of Umar, 2 F.4th 70, 73 (2d Cir. 2021); see also Petition of M/V Sunshine, II, 808 F.2d 762, 765 (11th Cir. 1987) ("In short,

6

in most circumstances negligence in operation will be sufficiently connected to the owner on board his own small vessel and operating it that he will be found to have privity or knowledge, but this common sense recognition of how the facts will usually work is not an ineluctable doctrine to be applied at the pleading stage, on conclusory and disputed allegations, as a substitute for the knowledge necessary to lead a court to a rational decision."); In re Muer, 146 F.3d 410, 416–17 (6th Cir. 1998) (same); In re Petition of Anthony Albergo, No. 17-cv-61281, 2017 WL 5632042, at *3 (S.D. Fla. Nov. 22, 2017); Complaint of Ingoglia, 723 F. Supp. 512, 515 (C.D. Cal. 1989) (holding that determining privity or knowledge "would not be appropriate for a dismissal motion").

The Second Circuit's opinion in Bensch is instructive. The plaintiff was the owner of the vessel and was operating it at the time of the accident. Bensch, 2 F.4th at 73. After the accident, he filed an action seeking protection under the Act. Id. at 74. The district court dismissed his initial complaint and the first amended complaint because neither pleading contained any factual allegations showing that the plaintiff was not negligent. Id. at 74–75. The plaintiff then filed a motion for leave to file a second amended complaint and attached the proposed amended pleading, which included factual allegations tending to show that he had not been negligent. Id. at 75. These allegations included, among others, that he was properly experienced in conditions on the waterway in question, that his vessel was properly maintained, and that he kept a proper lookout. Id. at 75, 80. The district court nonetheless denied the motion for leave to amend and the plaintiff appealed. Id. at 75. The Second Circuit affirmed the district court's dismissal of the complaint and first amended complaint, concluding they were "insufficient" because they "contain[ed] no factual allegations showing that [the plaintiff] was not *also* negligent." Id. at 79. In contrast, the Second Circuit reversed the denial of leave to amend because it found that the

proposed second amended complaint contained sufficient facts to plausibly state a claim for relief.  Id. at 80.  The court noted that the plaintiff's allegations in the proposed second amended complaint "could be more factually detailed" because, for example, he did not specify the exact speed at which he was proceeding at the time of the accident, but concluded that "the plausibility standard does not require that a plaintiff plead every factual detail relevant to liability, or allege facts that, if proved to the factfinder's satisfaction, would rule out every possible defense to his claim" and reiterated that "[i]t is sufficient for the pleading to contain sufficient factual allegations to 'nudge[ ] [the petitioner's] claims across the line from conceivable to plausible.'" Id. (quoting Twombly, 550 U.S. at 570).

The First Circuit has not written on this issue and in the absence of binding precedent the Court concludes that, when considering a motion to dismiss, the legal analysis applied in Bensch, and by courts in the Second, Eleventh, and Sixth Circuits, is more appropriate than the categorical rule adopted in Fecht and Martin.  The former approach is preferable because it considers whether the complaint, when read as a whole, contains sufficient factual allegations to permit the court to find that the plaintiff's lack of privity or knowledge of negligence is plausible.  This inquiry better reflects the "bedrock principles" announced by the Supreme Court that to survive a motion to dismiss a complaint's factual allegations need only "raise a right to relief above the speculative level." Frith v. Whole Foods Market, Inc., 38 F.4th 263, 269–70 (1st Cir. 2022) (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 8 (1st Cir. 2011)).  In contrast, the analysis applied in Fecht and Martin overly restricts a court's analysis to two facts: whether the plaintiff owned the vessel and was operating it at the time of the accident.  This truncated analysis invites courts to abdicate their obligation to read complaints "as a whole" and to not parse them "piece by piece to determine whether each allegation, in isolation, is

plausible." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 14 (1st Cir. 2011)).

Applying these "bedrock principles" here, the Court concludes that Plaintiff's complaint contains just enough factual allegations to plausibly allege lack of privity or knowledge of negligence and therefore survive the motion to dismiss. Although Plaintiff's conclusory allegations that he lacked privity or knowledge of negligence need not be, and are not, considered, the complaint also contains several factual allegations that suggest Plaintiff acted reasonably and that the accident and related injuries were caused by other parties' negligence. These allegations include that Plaintiff was navigating the Vessel in a proper manner, at an appropriate speed, and on the same track line that he travelled on the outbound trip. [Compl. ¶¶ 6, 12]. He further alleges that he could not see Daymarker No. 5's pilings until it was too late to avoid an allision because (1) the Coast Guard neglected to illuminate the pilings or affix them with reflective material to make them visible at night and (2) the lights on the dredging boats absorbed the flashing light from Daymarker No. 5, which was located approximately 40 feet above the water surface. [Id. ¶¶ 10, 13]. The Complaint also suggests that Jeanica Julce drowned as a result of the Unidentified Vessel fleeing the scene of the accident without providing assistance. [Id. ¶¶ 17–20]. In the Court's view, these factual allegations, when considered together, are sufficient, if only barely, to nudge Plaintiff's claim of reasonableness across the line from conceivable to plausible.

Lastly, Claimants' halfhearted invocation of the Oregon and Pennsylvania Rules, do nothing to alter the foregoing analysis. Under the Oregon rule, "when a vessel under its own power collides with an anchored vessel or a navigational structure, the burden of proving absence of fault or *vis major* rests on the pilot vessel." City of Boston v. S.S. Texaco Texas, 773

9

F.2d 1396, 1398 (1st Cir. 1985) (citing The Oregon, 158 U.S. 186 (1894)). Claimants argue that the rule makes "clear" that Plaintiff "cannot make a *prima facie* showing of freedom from fault" because he admitted the incident was an allision and that the Vessel was moving when it struck Daymarker No. 5. [ECF No. 7 at 8]. Claimants, however, do not contest Plaintiff's factual allegations that he operated the Vessel in a proper manner, at an appropriate speed, and was unable to avoid an allision with Daymarker No. 5's pilings because they were not properly illuminated and the light affixed to the top of the pilings was absorbed by the lights on the nearby dredging vessels. As discussed above, these factual allegations plausibly allege Plaintiff's lack of negligence or, in other words, freedom from fault and therefore the Oregon rule does not compel a different result.

Claimants appeal to the Pennsylvania rule is equally unavailing. In The S.S. Pennsylvania v. Troop, 86 U.S. 125, 135 (1873), the Supreme Court "established a burden shifting regime for maritime cases where a statutory or regulatory violation has some causal connection to the injury that occurred." Poulis-Minott v. Smith, 388 F.3d 354, 363 (1st Cir. 2004). "In order to shift the burden of proof to the defendant, the plaintiff must meet a two-part test. 'If a plaintiff can establish both that the defendant breached a statutory duty and that the breach is relevant to the casualty in question, the defendant assumes the burden of proving that its breach could not have caused plaintiff's damages.'" Id. (quoting Pan Am. Grain Mfg. Co., Inc. v. P. R. Ports Auth., 295 F.3d 108, 115–16 (1st Cir.2002)). Claimants assert that the Pennsylvania rule is "obviously invoked here" based on "any of several of the COLREGS or 'Rules of the Road'" and that, based on this principle "it is all the more clear that Plaintiff's assertion that he had no knowledge or privity as to the operation of the vessel is implausible." [ECF No. 7 at 8]. Claimants, however, fail to identify a specific statute allegedly violated by

10

Plaintiff. They instead appear to argue that because an allision occurred, Plaintiff must have violated a statute. This argument, however, ignores the factual allegations in the complaint, which, as already discussed, plausibly allege that Plaintiff acted reasonably and in accordance with the relevant maritime rules and regulations.

While it is entirely possible that discovery will undermine Plaintiff's factual allegations, that is an issue for summary judgment or the factfinder at trial. The Court's present inquiry is limited to the pleadings, which are deemed sufficient to withstand the instant motion.

2. Identification of the Vessel

Claimants also argue that the complaint fails to state a claim because Plaintiff misidentified the Vessel by providing an incorrect "official number." [ECF No. 7 at 9–10]. While Claimants are correct that in the complaint Plaintiff incorrectly stated the Vessel was assigned USCG No. 1308302, [Compl. at 1], and USCG No. 1318281, [id. at 6], they have not alleged that this discrepancy is anything more than a scrivener's error and have not demonstrated that they have suffered any prejudice as a result of the error. Claimants have also offered no support for their conclusory suggestion that Plaintiff is attempting to substitute a vessel. To the contrary, there is no dispute between the parties that the accident occurred on the M/V MAKE IT GO AWAY, "a recreational 37 feet 11 inches (37' 11") Pursuit Vessel, Model DC 365, built in 2021, with three 2020 Yamaha 300 HP engines." [Id. ¶ 4]. There is also no dispute that the Vessel has remained in the Commonwealth's custody since the time of the accident. [Id. ¶ 23]. Moreover, Plaintiff plausibly asserts in his opposition that the error was due, in part, to correspondence from the Coast Guard that incorrectly stated that the Vessel's official number was 1308302. [ECF No. 20 at 13]. Thus, because the identity of the motor vessel involved in

the accident is not actually in dispute and because the misidentification identified by Claimants is, at most, a drafting error, the Court declines to dismiss the complaint on this ground.

## III.     CONCLUSION

For the foregoing reasons, Claimants' motion to dismiss, [ECF No. 6], is <u>DENIED</u>.

**SO ORDERED.**

September 8, 2022

/s/ Allison D. Burroughs<br>
ALLISON D. BURROUGHS<br>
U.S. DISTRICT JUDGE