UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In the Matter of The Complaint and Petition by RYAN DENVER as owner of the M/V MAKE IT GO AWAY, for Exoneration from or Limitation of Liability | Civil Action No. 21-11841-ADB<br><br>In Admiralty |

**LIMITATION PLAINTIFF'S BRIEF OPPOSING CLAIMANTS' JOINT MOTION TO LIFT THE STAY TO MOVE FOR JUDGMENT ON THE PLEADINGS**

Limitation Plaintiff Ryan Denver ("Denver") respectfully submits his opposition to Claimants Aristide Lex's, Tory Govan's, and Wilfred Julce, Special Representative to the Estate of Jeanica Julce's Joint Motion to Lift the Stay for the Limited Purpose of Adjudicating the Claimants'[1] Motion for Judgment on the Pleadings.

Claimants' motion seeks to lift the present discovery stay, *see* ECF No. 44, to adjudicate their new[2] dispositive motion under Fed. R. Civ. P. 12(c). This is the same stay Claimants requested in their (Partial) Joint Proposed Scheduling Order: "it may be incumbent upon the Court to consider issuing a stay until the criminal matter has been fully resolved (*e.g.*, trials, post-trial proceedings, appeals, etc.)." *See* ECF No. 40.

Additionally, as with their first joint motion to dismiss, ECF Nos. 6-7, *see* ECF No. 20 at 1, Claimants have again failed to certify that they complied with L.R. 7.1(a)(2)'s requirement that they confer with Denver's counsel before filing their second joint effort to dismiss, ECF No. 45. Had they actually "attempted in good faith to resolve or narrow the issue," L.R. 7.1(a)(2), by

---

[1] Claimants Marzouk Onifade, Musse Kassa, and United States Coast Guard did not join; thus "Claimants," as used herein, refer only to the three (3) claimants who joined in the motion.

[2] Claimants filed their initial dispositive motion under Fed. R. Civ. P. 12(b)(6) in December of 2021, ECF No. 6, which this Court subsequently denied, ECF No. 27.

initiating a legitimate conference; rather than mentioning it in passing during an unrelated discussion, they may well have been talked out of filing.

Substantively, the legal issue presented by the Claimants' motion is whether the Court should lift the stay that they requested, when their proposed 'new' dispositive motion is futile?

## BACKGROUND

On July 17, 2021, Denver was navigating his boat M/V MAKE IT GO AWAY on its return trip back into Boston Harbor in a proper manner and at an appropriate speed, ECF No. 1 at ¶ 6, and was on the same track line he made good on the outbound trip (shortly before), as recorded and displayed on the chart plotter, *id*. at ¶ 12, when the boat allided with Daymarker No. 5's pilings, *id.* at ¶ 14.  Denver denies liability, ECF No. 1 at ¶ 24, and denies "privity or knowledge," *id.* at ¶ 25.  Denver pointedly asserts that the defective Daymarker No. 5, including its unlit, unmarked, and exposed pilings are the reason he did not see them whilst keeping the Vessel on the same track line, *id.* at ¶¶ 7-14, and that Claimants' alleged damages are due to that and another boat owner's criminally heartless and knowing refusal to render assistance to all of the people in the water, *id*. at ¶¶ 15-20; *see also* ECF No. 12.

There are only a few additional pertinent points necessary to deny Claimants' re-hashed motion.  First, following their first motion on December 17, 2021, the Court's September 8, 2022 Memorandum and Order on Claimants' Motion to Dismiss, ECF No. 37, 2022 WL 4111873, held that the Limitation Complaint's "factual allegations, when considered together, are sufficient, if only barely, to nudge Plaintiff's claim of reasonableness across the line from conceivable to plausible," *id*. at *4, and because Claimants did not contest Plaintiff's "factual allegations that he operated the Vessel in a proper manner," their "halfhearted invocation of both the *OREGON* and *PENNSYLVANIA* Rules were "equally unavailing," *id*. at *4-*5.

Second, in the Suffolk County Superior Court criminal proceeding, Denver has recently moved for partial reconsideration of ECF No. 46's Exhibit B – a quite stunning order barring the Commonwealth of Massachusetts from putting on any evidence of excessive speed due to its careless, *id*. at 32 n.10, and total destruction of MAKE IT GO AWAY; and before that, in a separate destruction of the boat's GPS data.  That order got it nearly right -- but the Commonwealth's other allegations should also be barred due to that same evidence destruction, and Denver has requested that in his motion for partial reconsideration from the Superior Court. In any event, Judge Ullman's decision not to dismiss the indictments do not prove the Claimants' allegations of negligence against Denver; and the indictment's flawed factual allegations which were not excluded by J. Ullman's Order cannot be used in support of the claimants' arguments.

## LEGAL ARGUMENT

**I.   Claimants Cannot Satisfy their Burden under Fed. R. Civ. P. 12(c)**

The standard governing the allowance of a Fed. R. Civ. P. 12(c) motion is generally more generous to the nonmovant. *McCord v. Horace Mann Ins. Co.,* 390 F.3d 138, 141 (1st Cir. 2004).  "Judgment on the pleadings under Rule 12(c) may not be entered unless it appears beyond a doubt that the nonmoving party can prove no set of facts in support of her claim which would entitle her to relief." *Id.* (quoting *Feliciano v. State of R.I.*, 160 F.3d 780, 788 (1st Cir. 1998)).

In *R.G. Fin. Corp. v. Vergara-Nunez*, 446 F.3d 178 (1st Cir. 2006) – cited by Claimants in support of their claimed applicable standard – the First Circuit stated:  "Because such a motion calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom to the nonmovant's behoof." *Id.* at 182 (citing *Rivera–Gomez v.*

*de Castro*, 843 F.2d 631, 635 (1st Cir.1988); 5C C.A. Wright & A.R. Miller, *Federal Practice and Procedure* § 1368 (3d ed. 2004)). The court may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice. *R.G. Fin. Corp.,* 446 F.3d at 182 (citing *In re Colonial Mortg. Bankers Corp*., 324 F.3d 12, 15–16 (1st Cir. 2003). There is no resolution of contested facts in connection with a Rule 12(c) motion:  A court may enter judgment on the pleadings only if the properly considered facts conclusively establish the movant's point. *R.G. Fin. Corp.,* 446 F.3d at 182.

Here, by including the criminal court's orders on Denver's motions to dismiss, Claimants appear to improperly submit that the Court should take judicial notice of the Commonwealth's factual allegations remaining after those orders, when considering Claimants' proposed Fed. R. Civ. P. 12(c) motion.  However, the criminal court's denials of Denver's motions to dismiss do not mean the indictments' alleged facts are susceptible to judicial notice.  *See Lopes v. Riendeau*, 177 F. Supp.3d 634, 667 (D. Mass. 2016) (A judicial decision can only be judicially noticed for the procedural history of a case, the fact that a case is pending, or to confirm a filing).

Claimants further reference the pleadings in the suits of *Denver v. Markel,* D. Mass. No. 22-cv-11150-ADB, and *AIG Property Casualty Co. v. Rosenthal,* D. Mass. No. 22-cv-11401-ADB, apparently to request that the Court take judicial notice of those filings in support of Claimants' proposed Fed. R. Civ. P. 12(c) motion.  However, the factual allegations contained in those suits – Denver's dispute with Markel over insurance coverage (22-cv-11150-ADB) and Rosenthal's dispute with his insurer for insurance coverage (22-cv-11401-ADB) – are not material to Denver's privity or knowledge at issue in this limitation of liability proceeding.  Thus Claimants' reference to those suits is wholly irrelevant to their claims that Denver is not entitled to the benefit of the Limitation of Liability Act.

As argued in more detail below, the properly considered facts here – which exclude factual allegations contained in the criminal orders and other suits – do not establish Claimants' position that Denver is not entitled to limit his liability under the Limitation of Liability Act.

## II. The Limitation of Liability Act Amendments Do Not Apply to MAKE IT GO AWAY

Claimants' reference to the James M. Inhofe National Defense Authorization Act for Fiscal Year 2023, PL 117-263, December 23, 2022, 136 Stat. 2395, and suggestions regarding its amendment of the Limitation of Liability Act is misplaced and inapplicable here. The amendment applies to "covered small passenger vessel" which:

> (A) means a small passenger vessel, as defined in section 2101[3], that is—
>     (i) not a wing-in-ground craft; and
>     (ii) carrying—
>         (I) not more than 49 passengers on an overnight domestic voyage; and
>         (II) not more than 150 passengers on any voyage that is not an overnight domestic voyage; and
> (B) includes any wooden vessel constructed prior to March 11, 1996, carrying at least 1 passenger for hire.

Here, MAKE IT GO AWAY was a recreational vessel neither chartered nor carrying passengers for hire. *See* Complaint, ECF No. 1. Further, as even Claimants' acknowledge, the amendment is "to be applied prospectively only." ECF No. 46 at n.1. Congress prospectively

---

[3] A "small passenger vessel" is:

> a wing-in-ground craft, regardless of tonnage, **carrying at least one passenger for hire**, and a vessel of less than 100 gross tons as measured under section 14502 of this title, or an alternate tonnage measured under section 14302 of this title as prescribed by the Secretary under section 14104 of this title—
>     (A) carrying more than 6 passengers, including at least one **passenger for hire**;
>     (B) that is **chartered** with the crew provided or specified by the owner or the owner's representative and carrying more than 6 passengers;
>     (C) that is **chartered** with no crew provided or specified by the owner or the owner's representative and carrying more than 12 passengers;
>     (D) that is a submersible vessel carrying at least one **passenger for hire**; or
>     (E) that is a **ferry** carrying more than 6 passengers.

46 U.S.C.A. § 2101(47) (emphasis added).

5

eliminated small *commercial* passenger vessels from limitation but *did not gut the rest of the Limitation of Liability Act*.  Congress recently had the opportunity to do so but instead eliminated only a small portion of the Act's applicability – which is not applicable here.

### III.     The So-Called Home Port Doctrine Does Not Support Dismissal

While it is dubious that Claimants' so-called "Home Port Doctrine" even exists in the context of limitation of liability cases, Denver's plausible lack of privity or knowledge despite his "owner at the helm" status has already been ruled to preclude dismissal at the pleading stage of this litigation.

#### A.  Claimants Fail Again in Arguing Privity or Knowledge As a Matter of Law

Claimants' first motion to dismiss failed because they could not show the owner at the helm here equates with Denver's privity or knowledge.  So they try again, arguing that since Denver was using his boat in Boston Harbor where it is normally docked he was "actually (not 'virtually') on scene" and must have had actual "close contact" with and "directly supervised" himself.  *See* ECF No. 46 at 4.

Thus Claimants are trying again to impute privity and knowledge to Denver as owner as a matter of law.  Yet their purported Home Port Doctrine is a virtual step removed from the Owner at the Helm Doctrine which has already failed Claimants, as does their Home Port argument.

As the Court noted in its Memorandum and Order on Claimants' first motion to dismiss, 2022 WL 4111873, at *3, *In re M/V SUNSHINE, II,* 808 F.2d 762 (11th Cir. 1987), stated that the owner at the helm "is **not an ineluctable doctrine to be applied at the pleading stage**, on conclusory and disputed allegations, as a substitute for the knowledge necessary to lead a court to rational decision." *Id.* at 765 (emphasis added).  The same can be said for the Home Port Doctrine, which is actually not a limitation of liability doctrine at all.

### B. There is No Limitation of Liability Home Port Doctrine

Claimants rely on three district court cases for their admittedly "somewhat similar motion to dismiss," ECF No. 46 at 5, contending there is some established, overriding doctrine precluding limitation of liability for casualties occurring in a vessel's home port, *id.* at 4. Curiously, regarding their case-in-chief, they claim in their first motion that "they did not then have the benefit of the *Amador* court's reasoning and logic," *id.* at 5, although it was decided March 31, 2021, almost nine months before the first motion on December 17, 2021, ECF No. 6.

The reported decision of their case-in-chief, *Velez Amador v. Garcia Torres*, 2021 WL 5749847, at *13, *15 (D. P.R. 2021), coins the term Home Port Doctrine as "established" in a limitation of liability context, citing Claimants' two other cases which do not mention that term, *In re J.R. Nichols, LLC*, 2012 WL 1802588, at *5 (S.D. Texas 2012), and *Haney v. Miller's Launch, Inc.*, 773 F.Supp.2d 280, 289-90 (E.D.N.Y. 2010). None of those cases was decided at the pleading stage: *In re J.R. Nichols* was post-trial findings and conclusions while *Velez Amador* and *Haney v. Miller's Launch* were both summary judgment decisions after discovery. The courts in those cases focused on findings of fact or material facts not in dispute in analyzing what one of them called the Home Port Doctrine – which definitely was not "an ineluctable doctrine to be applied at the pleading stage." *See In re M/V SUNSHINE, II,* 808 F.2d at 765.

But a Fed. R. Civ. P. 12(b)(6) case, *In re Franz*, 7 F.Supp.3d 238, 240 n.2 (N.D.N.Y. 2014), which Claimants do not cite, was unimpressed with any so-called Home Port Doctrine and its supposed roots in the *In re J.R. Nichols* and *Haney v. Miller's Launch* cases. *In re Franz* noted "the court has not discovered" any "binding precedent regarding…the home port doctrine," and that the argument for dismissal "was constrained by the fact that it is raised under Rule 12(b)(6)." *Id*. at 244-45.

7

Indeed, there is no other precedent for the so-called Home Port Doctrine in the limitation of liability context. There is, however, an historical Home Port Doctrine involving maritime liens, which once construed maritime liens in a vessel's home port as invalid. But that is now considered "antiquarian." G. Gilmore & C. Black, *The Law of Admiralty*, § 9-25 (2d. ed. 1975). And this is not a maritime lien case.[4]

Thus, *Velez Amador* adopted an outdated maritime lien doctrine erroneously. It is not an established limitation doctrine ineluctably imputing privity or knowledge at the pleading stage to the owner from the locally operating master and even if it were, Denver as owner/helmsman is one and the same who plausibly pleaded that he had no privity or knowledge of the allision. In sum, Claimants' "somewhat similar motion to dismiss" is nothing more than a re-hashed and less compelling argument in search of a doctrine that does not exist.

## IV.   Claimants Again Skip to Liability Without Contesting the Limitation Complaint's Allegations of Safe Operation

As with their first motion to dismiss, Claimants are trying to put the liability cart before the horse. *See* ECF No. 20 at 10. Claimants now confusingly cite *Velez Amador's* summary judgment decision to avoid THE PENNSYLVANIA Rule due to their continued lack of alleged operational violations, admitting they "will not be arguing, should their motion be allowed, that dismissal can be based upon a final determination of fault at this stage." ECF No. 46 at 5.

Instead, at the pleading stage Claimants seem to ground their proposed motion to dismiss Denver's limitation of liability complaint on a defunct maritime lien home port doctrine with no established similarly worded limitation of liability doctrinal preclusion. There is no new reason to lift the stay, which Claimants requested from the Court, in order for Claimants to bring such a

---

[4] There is also a now defunct vessel taxation "home port doctrine," *Polar Tankers, Inc. v. City of Valdez, Alaska*, 557 U.S. 1, 16 (2009), which had nothing to do with limitation of liability.

futile motion, especially under Fed. R. Civ. P. 12(c) where the standard is more generous to Denver as the nonmovant.

## CONCLUSION

Claimants once again are trying to impute privity and knowledge to Denver before discovery, which has been stayed on Claimants' request, pending the outcome of the criminal case.  Their motion to lift the stay should be denied.

RESPECTFULLY SUBMITTED March 10, 2023.

RYAN DENVER
By his counsel,


*/s/ David J. Farrell, Jr.*
David J. Farrell, Jr. (BBO #559847)
Liam T. O'Connell (BBO # 694477)
Kirby L. Aarsheim (BBO #678774)
**FARRELL SMITH O'CONNELL AARSHEIM APRANS LLP**
46 Middle Street, Second Floor
Gloucester, MA  01930
(978) 744-8918 x 3
dfarrell@fsofirm.com
loconnell@fsofirm.com
kaarsheim@fsofirm.com

Certificate of Service

Pursuant to Local Rule 5.2, I served this brief on all attorneys of record via the ECF/CM system on March 10, 2023.

*/s/ David J. Farrell, Jr.*
David J. Farrell, Jr.