## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **In the Matter of The Complaint and Petition by RYAN DENVER as owner of the M/V MAKE IT GO AWAY, for Exoneration from or Limitation of Liability** | **Civil Action No. 21-11841-ADB**<br><br>**In Admiralty** |

### LIMITATION PLAINTIFF'S BRIEF OPPOSING CLAIMANTS' JOINT MOTION FOR JUDGMENT ON THE PLEADINGS

Limitation Plaintiff Ryan Denver opposes Claimants Aristide Lex's, Tory Govan's, and Wilfred Julce, Special Representative to the Estate of Jeanica Julce's Joint Motion for Judgment on the Pleadings,[1] ECF Nos. 52 and 53, as follows:

### PROCEDURAL CONFUSION

Claimants' present motion to dismiss is a procedurally confusing, third bite at the apple. Their first motion to dismiss, under Fed. R. Civ. P. 12(b)(6), was filed December 17, 2021.  ECF No. 6.  That was denied, ECF No. 27, *In re Denver*, 2022 WL 4111873 (D. Mass. 2022), with the Court holding that (1) the Limitation Complaint's "factual allegations, when considered together, are sufficient, if only barely, to nudge Plaintiff's claim of reasonableness across the line from conceivable to plausible," *id.* at *4, and (2) Claimants' "halfhearted invocation of the *OREGON* and *PENNSYLVANIA* Rules" were "unavailing," *id.* at *4-*5.

Claimants filed a second motion, to lift the ECF No. 44 stay so they could file a Fed. R. Civ. P. 12(c) motion, which they substantively briefed in ECF No. 46 and Denver opposed in ECF No. 47.  Claimants then sought leave to file a reply brief, ECF No. 48, which the Court

---

[1] Claimants Marzouk Onifade, Musse Kassa, and United States Coast Guard did not join; thus "Claimants," as used herein, refer only to the three (3) claimants who joined in the motion.

granted, ECF No. 50.  However, Claimants let the timely filing of their reply brief on March 24, 2023 slip by.

The Court then granted Claimants' motion to lift the ECF No. 44 "stay for the sole purpose of adjudicating a motion to dismiss pursuant to 12(c) of the Federal Rules of Civil Procedure."  ECF No. 51.  Denver read that as meaning adjudication of the Rule 12(c) briefing already submitted by Claimants in ECF No. 46, opposed by Denver in ECF No. 47, and not replied to by Claimants even though they were granted leave.  If incorrect, Denver necessarily repeats much of his ECF No. 47 brief below in opposing Claimants' third attempt at dismissal.

## FACTS

On July 17, 2021, Denver was navigating his MAKE IT GO AWAY on its round trip to Quincy Bay back into Boston Harbor in a proper manner and at an appropriate speed, *see* ECF No. 1 at ¶ 6, and was on the same track line he made good on the outbound trip (shortly before), as recorded and displayed on the chart plotter, *id.* at ¶ 12, when the boat allided with Daymarker No. 5's pilings, *id.* at ¶ 14.  Denver denies liability, ECF No. 1 at ¶ 24, and denies "privity or knowledge," *id.* at ¶ 25.  Denver pointedly asserts that the defective Daymarker No. 5, to include its unlit, unmarked, and exposed pilings as the reason he did not see them whilst keeping the boat on the same track line, *id.* at ¶¶ 7-14, and that Claimants' alleged damages are due to that and another boat owner's criminally heartless and knowing refusal to render assistance to all of the people in the water, *id.* at ¶¶ 15-20; *see also* ECF No. 12.

In the Suffolk County Superior Court criminal proceeding, Judge Ullman recently issued a stunning order barring the Commonwealth of Massachusetts from putting on any evidence of excessive speed due to "the Commonwealth's own careless actions," ECF No. 46 at 32 n.10, and total destruction of MAKE IT GO AWAY, and before that, in a separate destruction of the boat's

GPS data, which the Commonwealth admits was the best evidence of speed.  Accordingly,

Denver remains hopeful the criminal case and the remaining flimsy allegations against him will

be dismissed in the near future.

## LEGAL ARGUMENT

### A.  Claimants Cannot Satisfy their Burden under Fed. R. Civ. P. 12(c)

Claimants seem to be moving for reconsideration of the Court's denial of their first

motion to dismiss, *Denver*, 2022 WL 4111873, since their legal argument here starts with

citations to the Supreme Court's *Twombly* and *Iqbal* cases and the Second Circuit's owner at the

helm *Bensch* case*,* ECF No. 53 at 3, all three of which were central to the Court's ruling against

Claimants the first time, *Denver*, 2022 WL 4111873 at *2-*4.

The standard governing the allowance of a Fed. R. Civ. P. 12(c) motion is generally more

generous to the nonmovant.  *McCord v. Horace Mann Ins. Co.,* 390 F.3d 138, 141 (1st Cir.

2004).  "'Judgment on the pleadings under Rule 12(c) may not be entered unless it appears

beyond a doubt that the nonmoving party can prove no set of facts in support of her claim which

would entitle her to relief.'"  *Id.* (quoting *Feliciano v. State of R.I.*, 160 F.3d 780, 788 (1st Cir.

1998)).

In *R.G. Fin. Corp. v. Vergara-Nunez*, 446 F.3d 178 (1st Cir. 2006) – cited by Claimants

in support of their claimed applicable standard – the First Circuit stated:  "Because such a motion

calls for an assessment of the merits of the case at an embryonic stage, the court must view the

facts contained in the pleadings in the light most favorable to the nonmovant and draw all

reasonable inferences therefrom to the nonmovant's behoof."  *Id.* at 182 (citing *Rivera–Gomez v.*

*de Castro*, 843 F.2d 631, 635 (1st Cir.1988); 5C C.A. Wright & A.R. Miller, *Federal Practice and*

*Procedure* § 1368 (3d ed. 2004)).  The court may supplement the facts contained in the pleadings

by considering documents fairly incorporated therein and facts susceptible to judicial notice. *R.G. Fin. Corp.,* 446 F.3d at 182.  There is no resolution of contested facts in connection with a Rule 12(c) motion:  A court may enter judgment on the pleadings only if the properly considered facts conclusively establish the movant's point.  *See id.*

Here, by referencing in their brief the criminal court's order on Denver's motion to dismiss, ECF No. 53 at 12 (referencing ECF No. 46, Ex. B), Claimants appear to improperly submit that the Court should take judicial notice of the Commonwealth's factual allegations remaining after that order, when considering Claimants' Fed. R. Civ. P. 12(c) motion.  However, the criminal court's denial of Denver's motion to dismiss does not mean the indictments' alleged facts are susceptible to judicial notice.  *See Berrios–Romero v. Estado Libre Asociado de Puerto Rico*, 641 F.3d 24, 27 (1st Cir. 2011) ("even when a copy of a  judicial decision is placed in the record, it is not evidence nor is it fact."); *see also Lopes v. Riendeau*, 177 F. Supp.3d 634, 667 (D. Mass. 2016) (judicial decision can only be judicially noticed for procedural history of a case, fact that a case is pending, or to confirm filing).  Thus Claimants cannot use the criminal order as substantive support of their motion for judgment on the pleadings.[2]

Claimants further cite to Fed. R. Civ. P. Supp. F(2) for guidance on what a vessel owner is required to plead when petitioning for exoneration from or limitation of liability.  ECF No. 53 at 3.  "Supplemental Rule F(2) requires a vessel owner petitioning for exoneration from or limitation of liability to set forth sufficient facts to render his claim of lack of 'privity and knowledge' [of any negligence] **plausible** as that phrase is defined in *Iqbal.*"  *Bensch*, 2 F.4th at 79 (emphasis added).  The Court has already held that Denver's Complaint "contains just enough

---

[2] As stated *supra*, documents fairly incorporated into a complaint can be considered by the Court in deciding a Fed. R. Civ. P. 12(c) motion, but the Suffolk County Superior Court decision referenced by Claimants was issued on February 7, 2023, nearly fifteen months after Denver's Limitation Complaint, ECF No. 1, and could not have been relied on by Denver at the time he filed it.

factual allegations to plausibly allege lack of privity or knowledge of negligence and therefore survive the motion to dismiss." *Denver*, 2022 WL 4111873 at *4.  This motion is a re-hash.

**B.  Claimants Miscite, Misapply 28 U.S.C. § 305012 [sic], and Miss *Paradise Holdings***

After their first Fed. R. Civ. P. 12(c) brief heralding an alleged Home Port Doctrine, ECF No. 46, which was shown to be doctrinally absent, ECF No. 47, Claimants have now decided to lead off with a brand new argument, ECF No. 53 at 4-6, based on what properly should be cited as 46 U.S.C § 30530 (renumbered 2022, formerly 46 U.S.C. § 30151, and before that, 46 U.S.C. § 187).  Assuming that is what they now think is their best argument, it is at best half-baked, relying mostly on slip opinions which are factually distinguishable from this case where Denver -- the owner and master of MAKE IT GO AWAY -- is one and the same person.

*1.  Paradise Holdings and the Reasons for Concursus*

And through it all, Claimants fail to call the Court's attention to the leading case on the subject, *In re Paradise Holdings, Inc.*, 795 F.2d 756 (9th Cir.), *cert. denied sub nom. Stone v. Paradise Holdings*, 479 U.S. 1008 (1986).

*Paradise Holdings* considered the interplay of the injunction (like ECF No. 4) under 46 U.S.C. § 30529(c) (as currently codified) staying suits against a corporate vessel owner who filed for limitation of liability *versus* "the liability of an individual as a master, officer, or seaman, even though the individual is also an owner of the vessel" under 46 U.S.C § 30530 (as currently codified).  Some claimants filed a state court suit against the captain, who was an additional insured on the owner's insurance policy.  Considering "the entire Limitation of Liability Act," 795 F.2d at 762, the Ninth Circuit affirmed the District Court's discretion "to stay the state action or otherwise to shape the limitation proceedings in a manner that promotes the purpose of the act," *id*. at 763.

*Paradise Holdings'* primary reasoning was to maintain a *Maryland Cas. Co. v. Cushing,* 347 U.S. 409, 415 (1954) "concursus of all claims to ensure the prompt and economical disposition of controversies," to preserve insurance proceeds for the multiple claimants. Otherwise, if some claimants, like the Claimants here, were able to pursue the additional insured captain individually in state court, "prior to the limitation proceeding, the danger of depletion of the insurance coverage would clearly exist." *See* 795 F.2d at 761-62.  This is a particular concern here where there are pending coverage disputes over both Denver's and Bad Samaritan Rosenthal's insurance policies, *Denver v. Markel Corp.*, D. Mass. No. 1:21-cv-11841-ADB and *AIG Property Cas. Co. v. Rosenthal*, D. Mass. No. 1:22-cv-11401-ADB, respectively.

As *Paradise Holdings* summed up, the Limitation of Liability Act is

> designed to aggregate all claims against a shipowner so that they may be decided at one time under substantive and procedural rules of admiralty law.  *See Cushing*, 347 U.S. at 414–16…. If claimants are permitted to proceed with their state court action prior to the limitation proceeding, there is a possibility that the state litigation will have some preclusive effect on issues in the limitation proceeding.  We agree with the district court that the result would be to frustrate this additional purpose of the Act and to relegate the limitation proceeding from its intended central role to a secondary position.

795 F.2d 762.

Other reasons for enjoining disparate state court actions against an "individual as a master, officer, or seaman" include (1) the depletion of insurance proceeds in suits against *respondeat superior* employees and (2) the incongruity of enjoining suit against the owner while permitting suit against the captain when they are one and the same person.  These two reasons were not specifically mentioned by *Paradise Holdings* but it did state "Limitation actions are equitable proceedings in which courts must consider 'the rights of all claimants in addition to … the rights of the insureds and the insur[e]rs.'"  795 F.2d at 761 (citation omitted).

6

Although Fifth Circuit case law is contrary to *Paradise Holdings, see Zapata Haynie Corp. v. Arthur*, 926 F.2d 484 (5th Cir. 1991), which does not extend the limitation stay to the "master, officer, or seaman,"[3] Denver submits that the reasons to establish a broader concursus as stated above is generally the better policy.  Even if *Zapata* were to be applied here, there is nothing in it that would dictate allowing state suits against Denver wearing his captain's hat before his owner's limitation issue is decided -- an owner at the helm cannot be deemed two people in order to sue one of them.  Similarly, when a bankruptcy petition is filed, the 11 U.S.C. § 362(a) automatic stay prevents creditors from taking any collection actions against the debtor or the property of the debtor's estate.  *See In re Slabicki*, 466 B.R. 572, 577 (B.A.P. 1st Cir. 2012).  The automatic bankruptcy stay applies to the debtor and debtor's property alone but "does not extend to separate legal entities." *Id.* at 577. The Owner and Master herein, is Ryan Denver, individually, the same legal entity.

Furthermore, broad concursus is also the routine practice in the First Circuit.  *See, e.g., In re Teixeira*, 2019 WL 6837857 (D. R.I. 2019) ("district court has broad discretion in issuance of

---

[3] While the Fifth Circuit in *Zapata* stated 46 U.S.C. § 187 is "not ambiguous," 926 F.2d 484, previously the Ninth Circuit in *Paradise Holdings*, when looking at "the entire Limitation of Liability Act," concluded differently, 795 F.2d at 762.  Denver submits that the current truncated 46 U.S.C § 30530 confusion in the context of the entire Limitation of Liability Act goes back to the prior language of 46 U.S.C. § 187, which was limited to carriage of cargo:

> Nothing in sections 182, 183, 184, 185 and 186 of this title shall be construed to take away or affect the remedy to which any party may be entitled, against the **master, officers, or seamen, for or on account of any embezzlement, injury, loss, or destruction of merchandise, or property, put on board any vessel**, or an account of any **negligence, fraud, or other malversation of such** master, officers, or seamen, respectively, nor to lessen or take away any responsibility to which any master or seaman of any vessel may by law be liable, notwithstanding **such** master or seaman may be an owner or part owner of the vessel.

(emphasis added).  If the Master stole the gold cargo, claimants could go after him.

injunction under Fed. R. Civ. P. Supp. F(3)"[4] citing *Paradise Holdings*); *In re Urbelis*, 2018 WL 701350 *6 (D. Mass. 2018) ("'limitation proceedings following a marine disaster will certainly expedite matters by getting all the parties concerned involved in a single proceeding'")[5]; *Keller v. Jennette*, 940 Supp. 35, 38 (D. Mass. 1968) ("where a boat owner has filed a petition to limit liability a claimant may proceed in state court only where 'the state proceeding could have no possible effect on the petitioner's claim for limited liability in the admiralty court,'" quoting *Lake Tankers Corp. v. Henn,* 354 U.S. 147, 153 (1956)).

### 2. *Claimants' Cases are Factually Distinguishable*

To support their argument, Claimants cite five slip opinions that are factually distinguishable because all involve a limiting vessel owner where the injunction was not extended to a different individual(s) who was not an owner. *In re Thunder, Inc.*, 2001 WL 1660254 (M.D. Fla. 2001), allowed suit against the 23' Seacraft's Captain Jeffrey Beaulieu, a non-owner.[6] *In re Sarasota Youth Sailing Program, Inc.*, 2021 WL 3419059 (M.D. Fla. 2021), allowed a state court suit against the owner's employee/captain Wiley Baugh. *In re Blain*, 2002 WL 610604 (E.D.N.C. 2022), refused to enjoin Julianna Lopez's suit against the owner's son/operator Paul Blain, a non-owner. *Gerace v. Varlack Ventures, Inc.*, 2017 WL 5071271 (D. V.I. 2017) refused to extend the stay to suits against non-owners J. Quest and T.K. Sailing. *Cox Operating, LLC v. ATINA,* 2021 WL 5760971 (E.D. La. 2021), enjoined suits against Cox but not against its uninsured, non-owning Capt. Hurmuzlu.

---

[4] Fed. R. Civ. P. Supp. F(3) states that upon compliance with Supp. F(1) "all claims and proceedings against the owner or the owner's property with respect to the matter in question shall cease."

[5] *See* ECF No. 28 at 7-8 and Denver's third-party claim against Rosenthal and counterclaim against the USA/United States Coast Guard.

[6] There were also state court suits against another boat's operator, Bradley Furth, which Thunder Marine did not oppose. It would have been inconsistent for Thunder Marine to have opposed them if the Furth vessel owner had filed for limitation.

Similarly, *Zapata*, 926 F.2d 484, enjoined suits against the corporate owner but not against the non-owning Captain Gough.

### 3.   *In re Lee Stands Alone*

So Claimants' argument comes down to "at least one other court," *In re Lee,* 2009 WL 3387955 (N.D. Ill. 2009), where the owner/captain's limitation case was dismissed at the pleadings stage with formulistic woodenness.  Notably, *Lee* granted a Fed. R. Civ. P. 12(b)(6) motion (which the Court has already denied as to Claimants here, *Denver*, 2022 WL 4111873). *Lee* did not rule on a Fed. R. Civ. P. 12(c) motion which is the basis of Claimants' present motion.  ECF Nos. 51, 52, 53 at 3.

 Denver is unaware of any other cases like *Lee*.  And contrary to Claimants' brief, *Lee* does not state "it is not within the province of this Court to reconcile any such inconsistencies when the language of the Act is plain."  *Id*. at 6.  *Lee's* first reason for dismissal was an unnuanced application of the owner at the helm theory, which the Court has already ruled did not require dismissal of Denver's limitation complaint.  *Denver*, 2022 WL 4111873 at \*3-\*4.  *Lee's* second reason applied 46 U.S.C. § 30512, the predecessor to 46 U.S.C § 30530, without any consideration of concursus benefits.  *Lee,* 2009 WL 3387955 at \*2.

It is telling that neither *Bensch* nor any of the other owner at the helm cases addressed earlier by the Court in *Denver*, 2022 WL 4111873, even considered 46 U.S.C. § 30530 or its predecessors' "liability of an individual as a master, officer, or seaman, even though the individual is also an owner of the vessel" as an issue.  Claimants may think they have come up with a clever angle but it would require a King Solomon cutting of Denver into two pieces.

*In re Lee* stands completely alone.

### C.  The So-Called Home Port Doctrine Does Not Support Dismissal

While it is dubious that Claimants' so-called "Home Port Doctrine" even exists in the context of limitation of liability cases, Denver's plausible lack of privity or knowledge despite his "owner at the helm" status has already been ruled here to preclude dismissal at the pleading stage under Fed. R. Civ. P. 12(b)(6).  *Denver*, 2022 WL 4111873.

#### 1.  *Claimants Fail Again in Arguing Privity or Knowledge As a Matter of Law*

So Claimants try again, now under Fed. R. Civ. P. 12(c), which is "admittedly somewhat similar"[7] to their earlier motion to dismiss.  ECF No. 46 at 5.  Now they argue that since Denver was using his boat in Boston Harbor, where it is normally docked, he was "actually (not 'virtually') on scene" and had "detailed control" over himself.  *See* ECF No. 53 at 7.

Thus Claimants are trying again to impute privity and knowledge to Denver as owner as a matter of law.  Yet their purported Home Port Doctrine is a step removed from the owner at the helm doctrine which has already failed Claimants -- as does their home port argument.

As the Court noted in ruling against Claimants on their first motion to dismiss, *Denver*, 2022 WL 4111873 at *3, the owner at the helm "is **not an ineluctable doctrine to be applied at the pleading stage**, on conclusory and disputed allegations, as a substitute for the knowledge necessary to lead a court to rational decision," *In re M/V SUNSHINE, II,* 808 F.2d 762, 765 (11th Cir. 1987) (emphasis added).  The same can be said for the Home Port Doctrine, which is actually not a limitation of liability doctrine at all.

---

[7] To the extent this is a motion for reconsideration, Claimants do not cite Fed. R. Civ. P. 60(b) and its reasonable time standard.

**2.** *There is No Limitation of Liability Home Port Doctrine*

Claimants rely on three District Court cases for this "similar" dismissal motion, ECF No. 46 at 5, contending there is some established, overriding doctrine precluding limitation of liability for casualties occurring in a vessel's home port, ECF No. 53 at 6.

Claimants case-in-chief, *Velez Amador v. Garcia Torres*, 2021 WL 5749847 at *13, *15 (D. P.R. 2021), coins the term Home Port Doctrine as "established" in a limitation of liability context, citing Claimants' two other cases which do not mention that term, *In re J.R. Nichols, LLC*, 2012 WL 1802588 at *5 (S.D. Texas 2012), and *Haney v. Miller's Launch, Inc.*, 773 F.Supp.2d 280, 289-90 (E.D.N.Y. 2010).  None of those cases was decided at the pleading stage: *In re J.R. Nichols* was post-trial findings and conclusions while *Velez Amador* and *Haney v. Miller's Launch* were both summary judgment decisions after discovery.  The courts in those cases focused on findings of fact or material facts not in dispute in analyzing what only one of them called the Home Port Doctrine – which definitely is not "an ineluctable doctrine to be applied at the pleading stage."  *See In re M/V SUNSHINE, II,* 808 F.2d at 765.

Furthermore, a Fed. R. Civ. P. 12(b)(6) case, *In re Franz*, 7 F.Supp.3d 238, 240 n.2 (N.D.N.Y. 2014), which Claimants do not cite, was unimpressed with any so-called Home Port Doctrine and its supposed roots in the *In re J.R. Nichols* and *Haney v. Miller's Launch* cases. *Franz* noted that "the court has not discovered" any "binding precedent regarding" the so-called "home port doctrine."  *Id*. at 244-45.

Indeed, there is no other precedent for the so-called Home Port Doctrine in the limitation of liability context.  There is, however, an historical Home Port Doctrine which once construed maritime liens in a vessel's home port as invalid.  But that is now considered "antiquarian."  G. Gilmore & C. Black, *The Law of Admiralty*, § 9-25 (2d. ed. 1975).  And this is not a maritime

lien case.  There is also a now defunct vessel taxation "home port doctrine," *Polar Tankers, Inc. v. City of Valdez,* 557 U.S. 1, 16 (2009), which had nothing to do with limitation of liability.

Thus it was a mistake for *Velez Amador* to suggest the name of outdated maritime lien and taxation doctrines as a basis for finding privity and knowledge.  The so-called Home Port Doctrine is not an established limitation doctrine ineluctably imputing privity or knowledge at the pleading stage to the owner from the locally operating master and even if it were, Denver as owner at the helm is one and the same person who plausibly pleaded that he had no privity or knowledge of negligence for the allision.  And that is true wearing either his owner or captain hats.  In sum, Claimants' admittedly "somewhat similar motion to dismiss," ECF No. 46 at 5, is nothing more than a re-hashed and less compelling argument in search of a doctrine that does not exist.

### D. Claimants' Litany of Alleged COLREG Violations Leave The OREGON and The PENNSYLVANIA Rules Not Yet Available

Section D of Claimants' brief, ECF No. 53 at 7-12, continues to read like a motion for reconsideration.  At this juncture – *which Claimants forget is the pleadings stage* – Claimants' brief arguing Denver violated COLREGS 2, 5, 6, and 19 is too little, too late.  Their citation and footnote 6 attachment of the recent *Schneider v. Leonard* case is procedurally unavailing here since it consists of post-trial Findings of Fact and Conclusions of Law.

Again, "Claimants' halfhearted invocation of the *Oregon* and *Pennsylvania* Rules" fails because Denver alleges "he operated the Vessel in a proper manner, at an appropriate speed, and was unable to avoid an allision with Daymarker No. 5's pilings because they were not properly illuminated and the light affixed to the top of the pilings was absorbed by the lights on the nearby dredging vessels."  *Denver*, 2022 WL 4111873 at *4.  What is it that Claimants fail to understand about MAKE IT GO AWAY hitting unmarked, unlit pilings at night?  As the Court stated

regarding Claimants' first motion to dismiss, the "present inquiry is limited to the pleadings, which are deemed sufficient to withstand the instant motion."  *Id.* at *5.  The same is true with Claimant's Fed. R. Civ. P. 12(c) motion.

### E.  *Velez Amador* is Both Procedurally and Factually Inapposite

Denver responds to the confusing Section E of Claimants' brief, ECF No. 53 at 12, by distinguishing *Velez Amador* as procedurally inapposite because it is a summary judgment decision based on "uncontested material facts" that LA NENA II violated its Certificate of Inspection by carrying passengers without its required crew compliment and in violation of statute and regulation.  2021 WL 5749847 at *14.  These factors "pre-existed the subject voyage and collision."  *Id.* at *16.  The decision goes on at length to show how LA NENA II's owner had privity and knowledge of pre-existing deficiencies such that "[t]he reality is LA NENA II should have never left the dock" on the night of the collision.  With that the *Velez Amador* court determined LA NENA II's owner was not entitled to exoneration or limitation of liability.  *Id.* at *16-*17.  That is all factually inapposite here too:  Nothing Claimants have raised in their three motions to dismiss allege in any way that MAKE IT GO AWAY had pre-existing deficiencies.

### F.  Claimants Finish with Throw Away Arguments

Claimants' final two arguments, ECF No. 53 at 12-15, merit little responsive ink.

#### 1.  *Judge Ullman*

As noted *supra* at 2-3, Judge Ullman has ruled that any evidence of excessive speed is barred from the Suffolk County criminal case due to the Commonwealth's spoliation of evidence.[8]  Judge Ullman's decision not to dismiss the entire indictment and its flawed factual

---

[8] Furthermore, Judge Ullman on April 18, 2023 from the bench denied the Commonwealth's motion to reconsider his February 7, 2023 order.

allegations cannot prove Claimants' allegations of negligence against Denver.  Those are not

facts susceptible of judicial notice.  *See Berrios–Romero*, 641 F.3d at 27; *Lopes*, 177 F. Supp.3d

at 667.  If anything, Claimants' reference back to Judge Ullman's decision attached to ECF No.

46 is further support that Claimants' ECF No. 53 brief is the tardy reply it was granted leave to

file by ECF No. 50.[9]

### 2.   *Criticism of the Limitation Act is Nothing New -- But it is the Law*

As Judge Stearns for example has stated, "if writing on a blank slate, I would

unhesitatingly" interpret "the Limitation Act to exclude owners of pleasure craft engaged in

noncommercial activities."  However,

> the Supreme Court has assumed without discussion in at least two
> cases that the Limitation Act applies to pleasure craft…. If the
> First Circuit is of a different mind, it has given no hint sufficient to
> permit a district court to deviate from the weight of precedent.

*Keller*, 940 F. Supp. at 37 (citations and footnote omitted).

Claimants' reference to the James M. Inhofe National Defense Authorization Act for

Fiscal Year 2023, PL 117-263, December 23, 2022, 136 Stat. 2395, is an inapplicable red herring

which really stands out among all the returning blue alewives this springtime.  That amendment

to the Limitation of Liability Act, now codified at 46 U.S.C. § 30501, applies to "covered small

passenger vessel" which:

---

[9] Denver also disputes that the photo Claimants attached of crunched fiberglass can somehow take on judicial notice of excessive speed or prove radar problems.  Besides being utterly speculative and self-serving, this bears on facts which have yet to be developed through discovery and is in direct conflict with the basic principle of a Fed. R. Civ. P. 12(c) motion:  The complaint's factual allegations must be accepted as true.  *See Grajales v. Puerto Rico Ports Auth.*, 682 F.3d 40, 45 (1st Cir. 2012).  And as the Court earlier said, it is obligated to read complaints "'as a whole' and to not parse them 'piece by piece to determine whether each allegation, in isolation, is plausible.'"  *Denver*, 2022 WL 4111873 at *4.

(A) means a small passenger vessel, as defined in section 2101[10], that is—
    (i) not a wing-in-ground craft; and
    (ii) carrying—
        (I) not more than 49 passengers on an overnight domestic voyage; and
        (II) not more than 150 passengers on any voyage that is not an overnight
        domestic voyage; and
(B) includes any wooden vessel constructed prior to March 11, 1996, carrying at
    least 1 passenger for hire.

Here, MAKE IT GO AWAY was a recreational vessel neither chartered nor carrying passengers for hire.  *See* ECF No. 1, ¶¶ 4-5.  Congress prospectively eliminated small *commercial* passenger vessels from limitation but *did not gut the rest of the Limitation of Liability Act*.  Congress recently had the opportunity to do so but instead eliminated only a small portion of the Act's applicability – which has no bearing here.

But one final point does have bearing.  In Claimants' brief, ECF No. 53 at 15 n.10, they argue Denver's earlier brief, ECF No. 47, "somehow deemed it appropriate to unnecessarily spend time and energy arguing" 46 U.S.C. § 30501's "inapplicability instead of addressing the wholly relevant rationale behind the enactment."  That reads like a reply brief -- which, again, the Court granted Claimants leave to file but they failed to timely do.  Until now -- and in

---

[10] A "small passenger vessel" is:

> a wing-in-ground craft, regardless of tonnage, **carrying at least one passenger for hire**, and a vessel of less than 100 gross tons as measured under section 14502 of this title, or an alternate tonnage measured under section 14302 of this title as prescribed by the Secretary under section 14104 of this title—
>     (A) carrying more than 6 passengers, including at least one **passenger for hire**;
>     (B) that is **chartered** with the crew provided or specified by the owner or the
>         owner's representative and carrying more than 6 passengers;
>     (C) that is **chartered** with no crew provided or specified by the owner or the
>         owner's representative and carrying more than 12 passengers;
>     (D) that is a submersible vessel carrying at least one **passenger for hire**; or
>     (E) that is a **ferry** carrying more than 6 passengers.

46 U.S.C.A. § 2101(47) (emphasis added).

combination with what is just a "somewhat similar motion" for reconsideration of their earlier dismissal motion's denial.

## CONCLUSION

Whatever the procedural posture of ECF Nos. 52 and 53, Claimants' motion for a Fed. R. Civ. P 12(c) judgment on the pleadings tries once again to impute privity and knowledge to Denver and circumvent concursus before discovery.  The motion should be denied.

RESPECTFULLY SUBMITTED April 27, 2023.

RYAN DENVER
By his counsel,

*/s/ David J. Farrell, Jr.*
David J. Farrell, Jr. (BBO #559847)
Liam T. O'Connell (BBO # 694477)
Kirby L. Aarsheim (BBO #678774)
FARRELL SMITH O'CONNELL
AARSHEIM APRANS LLP
46 Middle Street, Second Floor
Gloucester, MA  01930
(978) 744-8918 x 3
dfarrell@fsofirm.com
loconnell@fsofirm.com
kaarsheim@fsofirm.com

**Certificate of Service**
Pursuant to Local Rule 5.2, I served this brief on
all attorneys of record via the ECF/CM system
April 27, 2023.

*/s/ David J. Farrell, Jr.*
David J. Farrell, Jr.