UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IN THE MATTER OF RYAN DENVER AS OWNER OF M/V MAKE IT GO AWAY, FOR EXONERATION FROM OR LIMITATION OF LIABILITY | \* \* \* \* \* \* \* \* \* | Civil Action No. 21-cv-11841-ADB |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

This is an action under the Limitation of Liability Act of 1851 and Rule F of the

Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions brought by

Limitation Plaintiff Ryan Denver ("Plaintiff") who seeks exoneration from or limitation of

liability arising from an accident that occurred in Boston Harbor on July 17, 2021.  Before the

Court is Claimants Aristide Lex, Tory Govan, and Wilfred Julce as Special Personal

Representative of the Estate of Jeanica Julce's ("Claimants") motion for judgment on the

pleadings.  For the reasons set forth below, Claimants' motion, [ECF No. 52], is <u>DENIED</u> to the

extent that it seeks to dismiss the Complaint, but <u>GRANTED</u> insofar as it requests a lifting of the

stay of state court proceedings, [ECF No. 4], against Denver.

**I.      BACKGROUND**

    **A.      Procedural History**

 On November 12, 2021, Plaintiff filed his complaint.  [ECF No. 1].  On November 16,

2021, the Court enjoined further proceedings against Plainitff.  [ECF No. 4].  Claimants then

moved to dismiss on December 17, 2021, [ECF No. 6], and the Court denied the motion on

September 8, 2022, In re Denver, 626 F. Supp. 3d 512 (D. Mass. 2022).

On February 2, 2023, the Court stayed this matter pending separate criminal proceedings

against Plaintiff.  [ECF No. 44].  On April 5, 2023, the Court lifted the stay for the limited

purpose of adjudicating a motion for judgment on the pleadings pursuant to Federal Rule 12(c).

[ECF No. 51].

On April 13, 2023, Claimants filed the instant motion for judgment on the pleadings

pursuant to Rule 12(c).  [ECF No. 52].  Claimants ask the Court to dismiss the limitation of

liability claim "as to them and proceed with a jury trial on the merits to determine the percentage

of fault as between [the Vessel] interests and any perceived joint-tortfeasors," or "[i]n the

alternative, . . . to enter an order excusing them from the stay and allowing them to proceed" in

state court.  [ECF No. 53 at 15–16].  Plaintiff opposed on April 27, 2023.[1]

### B.    Background Facts

A motion for judgment on the pleadings is treated much like a Rule 12(b)(6) motion
to dismiss.  Because [a Rule 12(c)] motion calls for an assessment of the merits of
the case at an embryonic stage, the court must view the facts contained in the
pleadings in the light most favorable to the nonmovant and draw all reasonable
inferences therefrom . . . .

Pérez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008) (alteration in original)

(citations and internal quotation marks omitted).

The Court provided a detailed summary of the facts in its order on the motion to dismiss,

see Denver, 626 F. Supp. 3d at 514–15, parts of which the Court repeats below as necessary,

followed by a summary of any "new" facts.

---

[1] On November 8, 2023, Claimants moved for a status conference regarding this motion.  [ECF
No. 65].  Because this Order resolves the motion, Claimants' request is DENIED.

2

1. <u>Facts from the Motion to Dismiss</u>

This action stems from an accident that occurred at 2:45 a.m. on July 17, 2021, in which a vessel, the M/V MAKE IT GO AWAY (the "Vessel") struck a fixed navigational aid ("Daymarker No. 5"), which is located East of Castle Island.  [ECF No. 1 ("Compl.") ¶ 6]. Plaintiff is the registered owner of the Vessel and, at the time of the accident, was personally navigating it from the Quincy area to Boston's inner harbor with seven passengers onboard.  [<u>Id.</u> ¶¶ 3, 5–6].  Thus, when the accident occurred, Plaintiff was both the owner and master of the Vessel.

Daymarker No. 5 is a fixed navigational aid that is intended to warn deep-draft ocean-going vessels of shallow water.  [Compl. ¶ 7].  It is maintained by the United States Coast Guard ("Coast Guard") and is "supposed to be equipped with a green light that flashes once every two-and-a-half [] seconds . . . ."  [<u>Id.</u> ¶ 8].  The flashing light is affixed to a platform located on top of four pilings that are driven into the seafloor.  [<u>Id.</u>].  At the time of the accident, the light was approximately forty feet above the water level and the supporting pilings were mostly exposed. [<u>Id.</u> ¶ 9].  The pilings were not illuminated and were not affixed with any reflective material to make them visible at night.  [<u>Id.</u> ¶ 10].  Also at the time of the accident, a dredging project was in operation in Boston Harbor and two of the dredging vessels were located Northwest of Daymarker No. 5 such that, from the Vessel's perspective, they were behind Daymarker No. 5.[2] [<u>Id.</u> ¶ 11].

Up until the Vessel's allision with Daymarker No. 5, Plaintiff was navigating it "in a proper manner and at an appropriate speed[,]" and was "keeping the Vessel on the same track

---

[2] The vessels, the DREDGE NEW YORK and DRILLBOAT APACHE, are large vessels that are over 200 feet long and have a beam width of close to 60 feet.  [Compl. ¶ 11].

3

line he made good on the earlier outbound trip, as recorded and displayed on the Vessel's chartplotter." [Compl. ¶¶ 6, 12]. Nevertheless, Plaintiff did not see the pilings until it was too late to avoid the allision because the moon had set hours before the accident, the pilings were not illuminated or affixed with reflective material, and the light atop the pilings was "absorbed by background lights including from the Dredging Project[.]" [Id. ¶¶ 13–14]. The allision was further unexpected because, as noted above, the Vessel was on the same track line taken on the outbound trip. [Id. ¶ 14].

Plaintiff and the seven passengers were not ejected from the Vessel in the allision, but they entered the water once the boat began taking on water. [Compl. ¶ 15]. Soon after they entered the water, another motor vessel (the "Unidentified Vessel") approached with the apparent intent of offering aid. [Id. ¶¶ 16–17]. Before any assistance was provided, however, and without notice or explanation, the Unidentified Vessel departed. [Id. ¶ 18]. Plaintiff claims that by leaving without providing aid, the operator of the Unidentified Vessel violated his legal duty to provide assistance at sea pursuant to 46 U.S.C. § 2304. [Id. ¶ 20].[3] Plaintiff and one of the passengers who could swim tried to help the other six passengers while they waited to be rescued, but passenger Jeanica Julce drowned despite those efforts. [Id. ¶¶ 18, 21–22]. Eventually, the remaining passengers and Plaintiff were rescued by the Coast Guard, and the Vessel was towed into port. [Id. ¶¶ 22–23].

Plaintiff claims that the accident and "all injuries, damages, and losses [alleged] to have resulted from it were not caused by a breach of applicable statutes or regulations, or any type of unseaworthiness, intentional fault, neglect, or lack of reasonable care" by Plaintiff or the Vessel.

---

[3] It appears that the Unidentified Vessel was operated by David Rosenthal, against whom Plaintiff has brought a third-party complaint as part of this matter. [ECF No. 19].

[Compl. ¶ 24].  He further asserts, in the alternative, that any fault or liability on the part of Plaintiff or the Vessel that may have contributed to any injuries "were occasioned and incurred without the privity or knowledge" of Plaintiff and were "due to the fault of other parties whose actions and/or inactions are not [his] responsibility."  [Id. ¶ 25].

2.  Additional Facts

On November 28, 2022 and February 7, 2023, a state court judge denied Plaintiff's motions to dismiss a criminal indictment against him relating to the same incident, but barred the Commonwealth "from putting on any evidence of excessive speed due to" its "careless actions" in discovery, [ECF No. 54 at 2–3]; see also [ECF No. 46 at 32 n.10], including the destruction of the Vessel, and the deletion of the GPS data evidencing speed, [ECF No. 54 at 2–3]; see also [ECF No. 46 at 18–32].  Claimants nonetheless wish to rely on "evidentiary sources and expert opinions" from the February 7 order.  [ECF No. 53 at 12–13], arguing that "the Commonwealth's expert" in the state matter

> relied upon photographs and other evidence to conclude that the vessel hit head-on and at a high rate of speed.  Despite the Court's conclusion that none of the passengers interviewed used the word "speeding," one of them stated that the vessel had the potential of reaching 50 knots.  Another estimated the speed of the vessel at 20-30 knots.
>
> The photographic evidence also obviates the conclusion that no action was taken to avoid collision.  Claimants submit that it does not take an expert to draw these basic conclusions as consideration of the photograph [in ECF No. 53 at 14] permits.[]  The evidentiary problems in the criminal case aside, Claimants respectfully submit that there is ample evidence of high speed and improper navigation that the Court may consider along with the Plaintiffs admissions and factual assertions . . . .

[Id. at 13 (internal citation removed)].  Moreover, they state that

> [a]lso of importance in th[e] photograph [in ECF No. 53 at 14] is the prominent feature atop the wheelhouse-the structure bearing the word Garmin is the radar antennae.  No mention of radar is made in the complaint but the fact that the vessel was so equipped begs the question as why it was not used to detect and avoid the navigation marker Plaintiff could not see until it was too late.

5

[Id. at 13 n.9 (internal citation removed)].

## II.     DISCUSSION

### A.     Legal Standard

"After the pleadings are closed—but early enough not to delay trial—a party may move

for judgment on the pleadings." Fed. R. Civ. P. 12(c). Courts considering motions for judgment

on the pleadings use a standard similar to the one used for motions to dismiss under Federal Rule

of Civil Procedure 12(b)(6), except that a "Rule 12(c) motion, unlike a Rule 12(b)(6) motion,

implicates the pleadings as a whole." Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54–55 (1st

Cir. 2006). "Judgment on the pleadings is proper 'only if the uncontested and properly

considered facts conclusively establish the movant's entitlement to a favorable judgment.'"

Zipperer v. Raytheon Co., 493 F.3d 50, 53 (1st Cir. 2007) (quoting Aponte-Torres, 445 F.3d at

54).

### B.     Analysis

#### 1.     Previously Raised Arguments

As an initial matter, Claimants rehash several arguments that they previously raised, and

seem to argue that in light of the new facts from the criminal case, the Court should reconsider

its finding on the motion to dismiss that, among other things,

> Plaintiff's complaint contains just enough factual allegations to plausibly allege
> lack of privity or knowledge of negligence and therefore survive the motion to
> dismiss. Although Plaintiff's conclusory allegations that he lacked privity or
> knowledge of negligence need not be, and are not, considered, the complaint also
> contains several factual allegations that suggest Plaintiff acted reasonably and that
> the accident and related injuries were caused by other parties' negligence. These
> allegations include that Plaintiff was navigating the Vessel in a proper manner, at
> an appropriate speed, and on the same track line that he travelled on the outbound
> trip. [Compl. ¶¶ 6, 12]. He further alleges that he could not see Daymarker No. 5's
> pilings until it was too late to avoid an allision because (1) the Coast Guard
> neglected to illuminate the pilings or affix them with reflective material to make
> them visible at night and (2) the lights on the dredging boats absorbed the flashing

6

light from Daymarker No. 5, which was located approximately 40 feet above the
water surface. [Id. ¶¶ 10, 13]. The Complaint also suggests that Jeanica Julce
drowned as a result of the Unidentified Vessel fleeing the scene of the accident
without providing assistance. [Id. ¶¶ 17–20]. In the Court's view, these factual
allegations, when considered together, are sufficient, if only barely, to nudge
Plaintiff's claim of reasonableness across the line from conceivable to plausible.

Denver, 626 F. Supp. 3d at 518; [ECF No. 53 at 12–14]. For example, they rely again on Federal

Rule of Civil Procedure Supplemental Rule for Certain Admiralty and Maritime Claims Rule

F(2), [ECF No. 7 at 3–4; ECF No. 53 at 3, 7–9]; as well as the Oregon and Pennsylvania Rules,

[ECF No. 53 at 10–12], which the Court previously found did not alter its analysis, Denver, 626

F. Supp. 3d at 518–19.[4] In light of and consistent with the Court's prior ruling, id., even if the

Court could consider the newly raised facts,[5] they are insufficient to meet the Rule 12(c)

_____

[4] Claimants now point to several COLREGs ("maritime 'rules of the road'") that Plaintiff
purportedly violated, namely Rule 5 (maintaining a proper look-out by sight and hearing), Rule 6
(safe speed), and Rule 19 (navigating in restricted visibility). [ECF No. 53 at 9–12]; see also
U.S. Coast Guard & U.S. Dep't of Homeland Sec., Amalgamated International & U.S. Inland
Navigation Rules, https://www.navcen.uscg.gov/navigation-rules-amalgamated (last visited Mar.
6, 2024). They specifically argue, for example, that "Plaintiff's factual assertions only directly
implicate Rule[] 6 in their assertion as to appropriate speed.[] Plaintiff leaves the Court in the
dark as to the other rules, either ignoring them completely or providing only conclusory, non-
specific information which does not establish the facts on the basis for which limitation is
asserted." [ECF No. 53 at 9–10]. They further aver that "[i]t can easily be deduced by reading
Plaintiff's facts that he was traveling blind and too fast at the time of the allision[,]" [id. at 10],
and then make a summary judgement-style argument regarding the specific facts alleged in the
Complaint, ultimately stating that "the limited 'facts' that are alleged allow only for a finding
that . . . [Plaintiff's] negligence caused or contributed to the allision," [id. at 11]. Though the
facts highlighted by Claimants may be persuasive on summary judgment, at this stage, the Court
maintains its ruling that the "complaint contains just enough factual allegations to plausibly
allege lack of privity or knowledge of negligence," Denver, 626 F. Supp. 3d at 518, especially in
light of the Rule 12(c) standard that "[j]udgment on the pleadings is proper 'only if the
uncontested and properly considered facts conclusively establish the movant's entitlement to a
favorable judgment,'" Zipperer, 493 F.3d at 53.

[5] "In reviewing a motion under Rule 12(c) . . . [the Court] may consider 'documents the
authenticity of which are not disputed by the parties; . . . documents central to plaintiffs' claim;
[and] documents sufficiently referred to in the complaint.'" Curran v. Cousins, 509 F.3d 36, 44
(1st Cir. 2007) (third alteration in original) (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir.
1993)).

standard that they be "uncontested and . . . conclusively establish the movant's entitlement to a favorable judgment." Zipperer, 493 F.3d at 53 (quoting Aponte-Torres, 445 F.3d at 54). Accordingly, the Court declines to re-evaluate Claimants' repeated arguments, and considers only their new legal arguments.

      2.  The Home Port Doctrine

The Limitation of Liability Act, 46 U.S.C. § 30501 et seq. ("LOLA"), limits the liability of a vessel owner to the value of the vessel (and any freight it is carrying, a factor not relevant here) for any damage caused by an accident without the "privity or knowledge" of the owner. Id. § 30523(a)–(b).[6]  In support of a new argument for dismissal, Claimants aver that three cases— Vélez Amador v. García Torres, No. 17-cv-02050, 2021 WL 5749847 (D.P.R. Mar. 31, 2021), In re J.R. Nicholls, LLC, No. 10-cv-00449, 2012 WL 1802588 (S.D. Tex. May 17, 2012), and Haney v. Miller's Launch, Inc., 773 F. Supp. 2d 280 (E.D.N.Y 2010)—establish the so-called "Home Port Doctrine" that precludes the application of limited liability under LOLA to Plaintiff here, [ECF No. 53 at 6].

---

[6] As the Court previously explained,

> "[p]rivity or knowledge" is defined as "personal participation of the owner in some fault, or act of negligence, causing or contributing to the loss, or some personal knowledge or means of knowledge, of which he is bound to avail himself of a contemplated loss, or conditions likely to produce or contribute to the loss, without adopting appropriate means to prevent it.  There must be some personal concurrence, or some fault or negligence on the part of the owner himself, or in which he personally participates, to constitute such privity, within the meaning of the Limitation Act, as will exclude him from the benefit of its provisions."

Denver, 626 F. Supp. 3d at 516 (quoting Keller v. Jennette, 940 F. Supp. 35, 38 (D. Mass. 1996) (quoting Petition of M/V Sunshine, II, 808 F.2d 762, 763–64 (11th Cir. 1987) (internal quotation marks and alteration omitted))).  "In all events, an entitlement to limitation requires an antecedent finding that the vessel owner was not privy to, and had no knowledge of, the decisive act of negligence or condition of unseaworthiness." Id. (quoting Carr v. PMS Fishing Corp., 191 F.3d 1, 4 (1st Cir. 1999)).

In each of these cases, the courts began their analysis with the understanding that whether an owner "is entitled to limit liability requires a two-part inquiry.  The trier must determine if the accident was caused by defendant's negligence.  If negligence is shown, the vessel owner must prove that the negligence occurred without its privity or knowledge."  Haney, 773 F. Supp. 2d at 289; see also Vélez, 2021 WL 5749847, at *13 (similar); Nicholls, 2012 WL 1802588, at *4 (similar).

Beyond that, the Vélez court explained that

> [t]he Home Port Doctrine has been established in order to deny limitation of liability in instances where the vessel seeking limitation, the owner and the casualty all occur in local waters of the home port.  According to the East District of New York, the nature of a voyage in a home port "suggests the opportunity to more detailed control by the owner and the responsibility of its executives, who were virtually on the scene, to supervise the vessel's ongoing seaworthiness more closely than if the vessel were in high seas."

2021 WL 5749847, at *13 (first quoting Haney, 773 F. Supp. 2d at 290; and then citing Nicholls, 2012 WL 1802588, at *5).  There, the court granted summary judgment, finding that there was no limitation of liability under LOLA where two vessels collided in the vessel's home port. Vélez, 2021 WL 5749847, at *1, 20.

Similarly, in Haney, where a vessel hit a pier "in sight of its home port," the court found on summary judgment that a limitation of liability had not been established because "[t]he nature of the vessel's voyages—providing taxi service over the New York ports' waterways," which is where the incident occurred, "suggests the opportunity for more detailed control by the owner and responsibility of its executives, who were virtually on the scene, to supervise the vessel's ongoing seaworthiness more closely than if the vessel were on the high seas."  773 F. Supp. 2d at 283, 289–90.

Finally, in <u>Nicholls</u>, where a vessel was apparently "in a harbor and within a few miles of its own dock," the court found after a non-jury trial that the vessel "was operated within the [harbor channel] at the time of the incident, and the captain and crew were in daily, close contact with ownership and supervisory personnel.  This is simply not a case where the purpose of the Act would be served by a limitation of liability, and, in any event, the facts do not support limitation."  2012 WL 1802588, at *5.

Here, Claimants argue that "[i]t is undisputed that the [V]essel's homeport is Boston," "that the [V]essel was operated within the Port of Boston and that that is where the casualty occurred," and further, that Plaintiff resides in Boston.  [ECF No. 53 at 7].  The fact that he was "actually (not 'virtually') on scene," they argue, makes "application of the doctrine and its supporting rationale all the more relevant."  [<u>Id.</u>].

In response, Plaintiff argues that none of <u>Vélez</u>, <u>Haney</u>, or <u>Nicholls</u> was decided at the pleading stage, and points to <u>In re Franz</u>, 7 F. Supp. 3d 238 (N.D.N.Y. 2014) as calling into question even the existence of a Home Port Doctrine.  [ECF No. 54 at 11]; <u>see</u> <u>Franz</u>, 7 F. Supp. 3d at 244–45 ("Even if there were binding precedent regarding what the [claimants] have called the home port doctrine, which the court has not discovered nor have the[y] provided, . . . the argument is constrained by the fact that it is raised under Rule 12(b)(6).  The complaint makes no reference to the relationship between the [vessel] and its home port, nor do the [claimant]s point to any evidence, not even materials outside of the pleadings, that would support the conclusion that [the vessel] remained within view of its home port"), <u>questioned on other grounds by</u> <u>Bensch v. Estate of Umar</u>, 2 F.4th 70, 77 n.7 (2nd Cir. 2021).

First, <u>Vélez</u>, <u>Haney</u>, or <u>Nicholls</u> are not binding on this Court, and second, it is not clear to the Court that the Home Port Doctrine is an accepted rule for declining, without more, to limit

liability under LOLA.  Rather, as all three cases confirm, the key inquiry for limiting liability under LOLA is whether "the accident was caused by defendant's negligence[, and i]f negligence is shown, the vessel owner must prove that the negligence occurred without its privity or knowledge."  See Haney, 773 F. Supp. 2d at 289; see also Vélez, 2021 WL 5749847, at *13 (similar); Nicholls, 2012 WL 1802588, at *4 (similar).  In fact, the reasoning in at least Vélez and Haney suggests that the Home Port Doctrine is not a categorical rule, but instead a factor to be considered as part of the knowledge, privity, and negligence analysis required under LOLA.  See Vélez, 2021 WL 5749847, at *13 ("nature of a voyage in a home port 'suggests the opportunity to more detailed control by the owner . . . who were virtually on the scene, to supervise the vessel's ongoing seaworthiness'"); Haney, 773 F. Supp. 2d at 289–90 (same).

Here, the fact that a Vessel was operating in its home port may very well bear on the negligence analysis, as it may have done in Vélez, Haney, and Nicholls.  See Vélez, 2021 WL 5749847, at *13; Haney, 773 F. Supp. 2d at 289; Nicholls, 2012 WL 1802588, at *4–5.  That said, the Court declines to find at this early stage that the fact that the Vessel was operating in or near Boston harbor is determinative.[7]

    3.  46 U.S.C. § 30530

Claimants next argue for the first time that Plaintiff was not only the owner of the Vessel, but also the "Master" of the Vessel under 46 U.S.C. § 10101.[8]  [ECF No. 53 at 4–6].  Further,

---

[7] Claimants' additional argument, relying on Vélez, that a determination of Plaintiff's liability vis-à-vis the Unidentified Vessel (operated by third-party complainant Rosenthal, [ECF No. 19]) is not necessary for purposes of LOLA, [ECF No. 53 at 12], does not change the fact that Plaintiff may be entitled to limitation of liability under LOLA in his capacity as owner of the Vessel, and thus does not change the result here.

[8] 46 U.S.C. § 10101(1) defines "Master" as "the individual having command of a vessel."  Id.

given that Title 46 § 30530[9] provides that "[t]his chapter does not affect the liability of an individual as a master, . . . even though the individual is also an owner of the vessel," 46 U.S.C. § 30530, Claimants argue that Plaintiff is not entitled to "any protection from [their] counterclaims or the stay imposed by the court," [ECF No. 53 at 4].[10]

The Court agrees that liability for the master of a vessel is not limited under LOLA, and that an injunction of state court proceedings against a separate master is not required.  See Zapata Haynie Corp. v. Arthur, 926 F.2d 484, 485–86 (5th Cir. 1991) (where owner and master were different, finding that the limitations of liability in LOLA are, "by their plain terms, conferred on ship owners only.  'The purpose of the limitation act is to release the ship owner from some liability for conduct of the master and other agents of the owner for which these parties were themselves liable.' . . .  The Act provides for stays of litigation against ship owners, not masters; therefore, we find that a stay of litigation against the master is not within the scope of the Act"

---

[9] Claimants incorrectly cite to 28 U.S.C. § 305012.  [ECF No. 53 at 4–6].

[10] The Court previously found that Plaintiff was "the owner at the helm," Denver, 626 F. Supp. 3d at 516, and as explained above, that "Plaintiff's complaint contains just enough factual allegations to plausibly allege lack of privity or knowledge of negligence and therefore survive the motion to dismiss," id. at 518.  At the same time, the Court rejected a categorical rule that an owner at the helm of his vessel necessarily has privity or knowledge of any negligence on the vessel such that they could never be entitled to limitation of liability under LOLA.  Id. at 517–18.  As the Court noted in its earlier decision, the First Circuit has not weighed in on this issue.  Id. at 518.  The cases cited by Plaintiff were factually distinct from the instant case, id. (citing Fecht v. Makowski, 406 F.2d 721 (5th Cir. 1969); Complaint of Martin, 18 F. Supp. 2d 126 (D. Mass. 1998)), and several courts that have written on this issue have declined to adopt a categorical rule, see id. at 517–18 (citing Bensch, 2 F.4th at 73 (2d Cir. 2021); Petition of M/V Sunshine, II, 808 F.2d at 765; In re Muer, 146 F.3d 410, 416–17 (6th Cir. 1998); In re Petition of Anthony Albergo, No. 17-cv-61281, 2017 WL 5632042, at *3 (S.D. Fla. Nov. 22, 2017); Complaint of Ingoglia, 723 F. Supp. 512, 515 (C.D. Cal. 1989)).  That said, given the purpose of LOLA, it may be the better course to conclude that "privity and knowledge" requires only "participation and control" such that when an owner is operating their own pleasure craft, there is necessarily privity and knowledge.

(emphasis in original) (quoting <u>In re Brent Towing Co., Inc.</u>, 414 F. Supp. 131, 132 (N.D. Fla. 1975))); <u>see also</u> <u>In re Sarasota Youth Sailing Program, Inc.</u>, No. 21-cv-00150, 2021 WL 3419059, at *4 (M.D. Fla. Aug. 5, 2021) ("[the master] does not identify—and the Court cannot discern—any language in the Act that would provide a non-owner such as himself the type of injunctive relief he seeks in his motion. . . . [LOLA] clearly provides that it applies purely to vessel owners, . . . and it is well settled that a court should follow the plain language of an unambiguous statute."). <u>But see</u> <u>In re Paradise Holdings, Inc.</u>, 795 F.2d 756, 761 (9th Cir. 1986) ("[Plaintiff] does not contest claimants' right ultimately to pursue the captain in state court, and the injunction does not 'take away' this remedy. The injunction does, however, delay the state court remedy and possibly subjects it to the preclusion of some issues by reason of the intervening admiralty litigation."). The question here, though, is whether the Court must stay state court proceedings against a master who is also the owner.

Supplemental Rule F(3) provides that

> all claims and proceedings against the owner or the owner's property with respect to the matter in question shall cease. On application of the plaintiff the court shall enjoin the further prosecution of any action or proceeding against the plaintiff or the plaintiff's property with respect to any claim subject to limitation in the action.

<u>Id.</u> Despite the fact that this would seem to unequivocally entitle the owner to a continued stay of proceedings against him as master, the application of the rule, taking into account the purposes of the statutory limitation on liability, has been less straightforward and confirms that the rule espouses a general requirement rather than a rule without exceptions. <u>See</u> <u>Lewis v. Lewis & Clark Marine</u>, 531 U.S. 438, 451 (2001).

Specifically, the Supreme Court has long recognized a "well settled policy to administer the statute not 'with a tight and grudging hand' but 'broadly and liberally,' so as 'to achieve its purpose to encourage investments in shipbuilding and to afford an opportunity for the

determination of claims against the vessel and its owner.'"  Coryell v. Phipps, 317 U.S. 406, 411

(1943) (first quoting Providence & N.Y. S.S. Co. v. Hill Mfg. Co., 109 U.S. 578, 589 (1883);

and then quoting Just v. Chambers, 312 U.S. 383, 385 (1941)) (additional citations omitted)); see

also Lewis, 531 U.S. at 453 (2001) ("The Act was designed to encourage investment and protect

vessel owners from unlimited exposure to liability.").[11]  Moreover, as the Ninth Circuit more

recently held, an owner, as distinct from a master, is "generally entitled to an injunction

enjoining 'the further prosecution of any action or proceeding against the [owner] or his property

with respect to any claim subject to limitation in the action,'" Paradise Holdings, 795 F.2d at 761

(quoting Fed. R. Civ. P. Supp. R. F(3)) (emphasis added), tellingly finding the rule to "generally

entitle[]" an owner to a stay, id., rather than requiring that "all claims and proceedings against

the owner or the owner's property with respect to the matter in question shall cease," Fed. R.

Civ. P. Supp. R. F(3).

　　　　That the rule espouses a general requirement rather than an absolute mandate has been

often repeated, and two specific exceptions have been honored in practice even if not explicit in

the rule: cases where (1) "there is only a single claimant," and (2) "the total claims do not exceed

the value of the limitation fund . . . ."  Lewis, 531 U.S. at 451; see also, e.g., In re Williams

Sports Rentals, Inc., 90 F.4th 1032, 1037–38 (9th Cir. 2024) (finding that "[i]n general, a district

court has 'broad discretion' in deciding whether to dissolve or reinstate an injunction previously

issued under the Limitation Act.  But we have recognized two contexts in which a state-court

lawsuit poses no threat to the owner's limitation right, and in which the district court must allow

---

[11] In addition to the purpose of encouraging ship building, see Coryell, 317 U.S. at 411, LOLA
exists in part because it is "considered unfair to impose liability on a shipowner for
circumstances beyond his control, such as the acts of his agents and servants, not to mention the
perils of the sea."  2 Thomas J. Shoenbaum, Admiralty & Mar. Law § 15:1 (6th ed. Nov. 2023).

the state court to proceed." (first quoting <u>Newton v. Shipman</u>, 718 F.2d 959, 961–62 (9th Cir.

1983) (per curiam); and then citing <u>Lewis</u>, 531 U.S. at 451)); <u>In re Tetra Applied Techs. LP</u>, 362

F.3d 338, 341 (5th Cir. 2004) ("This court has recognized that 'claims may proceed outside the

limitation action (1) if they total less than the value of the vessel, or (2) if the claimants stipulate

that the federal court has exclusive jurisdiction over the limitation of liability proceeding and that

they will not seek to enforce a greater damage award until the limitation action has been heard by

the federal court.'" (quoting <u>Odeco Oil & Gas Co. v. Bonnette</u>, 4 F.3d 401, 404 (5th Cir. 1993));

<u>Matter of Elizabeth & Niki Fishing Corp.</u>, No. 21-cv-10020, 2023 WL 8545117, at *2 (D. Mass.

Dec. 11, 2023) ("Two circumstances would warrant dissolving the present stay. . . ." (internal

citations omitted)).

     In the <u>Lewis</u> case, for example, the Supreme Court upheld the dissolution of an injunction

where the total claims did not exceed the value of the limitation fund and there was "probably"

only one claimant, but did not explicitly limit the instances in which an injunction could be

dissolved in favor of state court proceedings to those circumstances, <u>see</u> 531 U.S. at 442.  More

generally, the Court held that "state courts, with all of their remedies, may adjudicate claims . . .

against vessel owners so long as the vessel owner's right to seek limitation of liability is

protected," <u>id.</u> at 455, and that LOLA does "not create a freestanding right to exoneration from

liability in circumstances where limitation of liability is not at issue," <u>id.</u> at 453.  Rather, "the

scope of exclusive federal jurisdiction is proportional to the federal interest in protecting the

vessel owner's right to seek limitation of liability."  <u>Id.</u>

     In so holding, the Supreme Court revisited and reaffirmed its holding in <u>Langnes v.

Green</u>, in which it found that for the federal court

    [t]o retain the cause would be to preserve the right of the shipowner, but to destroy
    the right of the suitor in the state court to a common-law remedy; to remit the cause

15

to the state court would be to preserve the rights of both parties.  The mere statement of these diverse results is sufficient to demonstrate the justice of the latter course; and we do not doubt that, in the exercise of a sound discretion, the District Court, following that course, should have granted respondent's motion to dissolve the restraining order so as to permit the cause to proceed in the state court, retaining, as a matter of precaution, the petition for a limitation of liability to be dealt with in the possible but (since it must be assumed that respondent's motion was not an idle gesture but was made with full appreciation of the state court's entire lack of admiralty jurisdiction) the unlikely event that the right of petitioner to a limited liability might be brought into question in the state court, or the case otherwise assume such form in that court as to bring it within the exclusive power of a court of admiralty.  The failure to do this, in our opinion, constituted an abuse of discretion subject to the correcting power of the appellate court below and of this court.

282 U.S. 531, 541–42 (1931); see Lewis, 531 U.S. at 449–52.  Although Langnes was decided

before the adoption of Supplemental Rule F(3) in 1966, in reaffirming Langnes, and subsequent

to the enactment of the rule, the Supreme Court, in effect, reiterated its view that a state court

action against a vessel owner did not need to be stayed in favor of a limitation action:  "where

. . . the District Court satisfies itself that a vessel owner's right to seek limitation will be

protected, the decision to dissolve the injunction is well within the court's discretion."  Lewis,

531 U.S. at 454.

 If the injunction were to be lifted, the case against Denver in his capacity as master of the

Vessel would proceed in state court which is clearly a competent forum for the resolution of the

underlying case.  Under the facts present here—where any negligence would be the result of his

actions as master, as opposed to in his capacity as owner, and his rights as owner will be

preserved because this federal action is not being dismissed—the Court concludes that this is the

fairest and most efficient way to resolve this matter.  See Lewis, 531 U.S. at 449 (state court

"competent to hear [claimant's] personal injury claim and the vessel owner's claim for

limitation").[12]  Put another way, just as a stay is not required when there is only one claimant or

the claim is for less than the value of the vessel, despite the language of Supplemental Rule F(3),

there is similarly no need for a stay here where the owner was at the helm and it is the negligence

of the master, if any, that will drive liability rather than his actions as owner.[13]  Further, this

_____

[12] At least one case, In re Lee, has taken this reasoning one step further and dismissed the federal case against the owner plaintiff, finding that the attempt to seek "protection solely as a vessel owner[] fail[ed] because the event as pled occurred with [the owner's] privity and knowledge as captain of the vessel," and also that the owner and captain could "not receive immunity from potential claims based on his actions as captain of the vessel because he was also the owner of the vessel."  No. 08-cv-06669, 2009 WL 3387955, at *2 (N.D. Ill. Oct. 14, 2009).  The court ultimately held that

> [i]n his Amended Complaint, [the owner/captain] alleges that the sinking of the vessel was the result of a crushing wave.  If [his] allegations are taken as true—that the cause of the sinking was purely an act of God—[he], as captain or owner, is not responsible.  In Joyce v. Joyce, the Seventh Circuit opined that if a vessel owner was not negligent by entrusting his boat to another, then the vessel owner "will incur no liability for negligent entrustment and, consequently, has no need for the Act's protection."  Joyce v. Joyce, 975 F.2d 379, 385 (7th Cir.1992).  Similarly, if [he] was not negligent, then he has no need for the Act's protection.  Therefore, the protection of 30505(a) is not applicable because there is no reason to limit his liability to the cost of the vessel.
>
> [The owner/captain's] allegations, even viewed in the light most favorable to him, cannot plausibly be viewed as a limitation of his liability as pled.  If the sinking of [vessel] was due only to an act of God, as [he] alleges, then he would not require the protection of the Act, and his Amended Complaint is without merit.  Therefore, the Amended Complaint fails to state a claim on the alleged facts and is dismissed.

Id. at *2.  The Lee court did not address whether a stay of separate proceedings was appropriate.  See id.  Though the Court here does not go as far as the court did in Lee, the Lee court's reasoning is nevertheless instructive to the extent that it recognizes instances where the findings with respect to a master are likely to be determinative of liability rather than any liability that the same master may have as owner.  See id.

[13] Should the state court action somehow result in a finding against Denver as owner for an amount that exceeds the value of the vessel, which seems unlikely given that all of the allegations of negligence concern the actions of the owner as master rather than as owner (e.g., an owner negligently hiring a captain or contractor to work on his vessel), the matter can be

finding is consistent with the purpose of LOLA to protect an owner from "circumstances beyond his control," Shoenbaum, Admiralty & Mar. Law § 15:1, as the facts here show that Denver was in control of the Vessel as its master.

In sum, the Court finds that precedent from the Supreme Court and several other courts around the country supports the discretionary nature of the stay against a master who is also the owner of the vessel, despite the language of Supplemental Rule F(3). See supra. Although the Ninth Circuit in Paradise Holdings reached a different result by staying the state court proceedings, even it found that such a stay against a master is discretionary. See 795 F.2d at 763.

Therefore, under the circumstances here, which involve an owner as master on a pleasure craft whose negligence (if any) is likely to be attributable to him as master rather than owner, the Court will not maintain a stay of state court claims against Denver as master of the Vessel. This is the fairest and most efficient way to resolve this matter and consistent with the purposes of LOLA. Accordingly, the stay is lifted and the state court case may proceed against Denver as master of the Vessel, to allow a jury to promptly determine where liability lies.

## III.     CONCLUSION

For the foregoing reasons, Claimants' motion for judgment on the pleadings, [ECF No. 52], is DENIED to the extent that it seeks to dismiss the Complaint, but GRANTED insofar as it requests a lifting of the stay of state court proceedings against Denver as master of the Vessel.

**SO ORDERED.**

March 12, 2024

_____

returned to this Court for an allocation of the resources available to satisfy a claim. But this decision will be better made if this Court has the benefit of a jury verdict that assesses the negligence of those involved in the incident in one proceeding.

Case 1:21-cv-11841-ADB   Document 66   Filed 03/12/24   Page 19 of 19

_/s/ Allison D. Burroughs_
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE