**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **In the Matter of The Complaint and Petition by RYAN DENVER as owner of the M/V MAKE IT GO AWAY, for Exoneration from or Limitation of Liability** | **Civil Action No. 21-11841-ADB** <br><br> **In Admiralty** |

**LIMITATION PLAINTIFF'S BRIEF IN SUPPORT OF MOTION**
**TO ALTER OR AMEND ECF NO. 66**

Limitation Plaintiff Ryan Denver respectfully urges the Court to reconsider and amend its decision to lift the limitation stay allowing the human claimants to file suit in state court. Otherwise, a procedural quagmire will create substantive hash sapping the uniformity of maritime law and injecting *res judicata* confusion into the limitation case; prejudice Denver, leaving him without insurance proceeds to answer the USCG claim against him which cannot be adjudicated in state court, while also precluding him and the human claimants from pursuing the USCG in state court; thereby creating inefficient, multi-forum litigation of a multi-victim marine casualty and defeating concursus.

Denver also incorporates the United States' memorandum in support of its motion to alter or amend, ECF No. 69 and reiterates *United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009) ("motions for reconsideration are appropriate only in a limited number of circumstances: if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust.")

While Denver recognizes the Limitation of Liability Act ("LOLA") is far from a model of Congressional clarity, respectfully, this Court's most recent decision exacerbates confusion by ignoring its own recreational boating decision, *In re Urbelis*, 2018 WL 701350 *6 (D. Mass.

2018) ("'limitation proceedings following a marine disaster will certainly expedite matters by getting all the parties concerned involved in a single proceeding'").  Furthermore, the Court's most recent decision, albeit *dicta* at ECF No. 66 at 12n.10, suggests *sua sponte* reversal of its earlier owner at the helm decision, 626 F.Supp.3d 512, announcing a new standard for privity and knowledge.  Yet all the while, Fed. R. Civ. P. Supp. F(3) remains crystal clear:  "On application of the plaintiff the court shall enjoin the further prosecution of any action or proceeding against the plaintiff or the plaintiff's property with respect to any claim subject to limitation in the action."  That applies here where Denver, as the plaintiff,  is both vessel owner and operator.[1]

## I.   IF *ZAPATA* WAS CORRECT (DESPITE ITS MESS), *PARADISE HOLDINGS* NO DOUBT WAS CORRECT, BUT ECF NO. 66 WAS NOT

Judge Augustus Hand wrote: "The purpose of a limitation proceeding is not merely to limit liability but to bring all claims into concourse and settle every dispute in one action." *The Quarrington Court*, 102 F.2d 916, 918 (2nd Cir.), *cert. denied*, 307 U.S. 645 (1939).

A critical purpose underlying the limitation action is to achieve a "complete and just disposition of a many-cornered controversy." *In re Shell Oil Co. & Shell Offshore Inc. as Owners &/or Owners Pro Hac Vice of M/V EB II*, 780 F. Supp. 1086, 1091 (E.D. La. 1991).  Thus, the limitation proceeding furthers the goal of uniformity which has been declared a dominant requirement for admiralty law.  *Id.*  The importance of concursus was emphasized by Justice Frankfurter in *Maryland Cas. Co. v. Cushing*, 347 U.S. 409, 415-17 (1954):

> The heart of [the limitation] system is a concursus of all claims to ensure prompt and economical disposition of controversies in which there are often a multitude of

---

[1] *Cf. In re Soares*, 107 F.3d 969, 971 (1st Cir. 1997) ("Like a shade tree, the automatic stay which attends the initiation of bankruptcy proceedings, 11 U.S.C. § 362(a) (1994), must be nurtured if it is to retain its vitality.") Bankruptcy is but one of several other statutory schemes where remedies can be limited and damages capped in certain instances.  Patrick J. Bonner, "Limitation of Liability:  Should it be Jettisoned after the DEEPWATER HORIZON?" 85 Tul. L. Rev. 1183 (2011).

claimants.... Moreover, it is important to bear in mind that the concursus is not solely for the benefit of the shipowner. The elaborate notice provisions of the Admiralty Rules are designed to protect injured claimants.  They ensure that all claimants, not just a favored few, will come in on an equal footing to obtain a *pro rata* share of their damages.

Commentators and courts often rail against the 1851 Limitation Act as outdated.  Yet concursus, with responsive insurance for resolving marine casualties remains paramount today, whether involving commercial shipping, fallen bridges, family owned tug operations, fishing vessels, or recreational boats -- all subject to essential maritime uniformity, *see Great Lakes Insurance SE v. Raiders Retreat Realty Co.*, 601 U.S. 65, 69 (2024) (9-0 pleasure yacht case), following the same Rules of the Road, navigational aids (particularly salient here with USCG Daymark No. 5), and other federal regulatory schemes, with original jurisdiction for disputes in federal court under the Constitution's Article III admiralty clause.  Accordingly, as *In re Shell Oil Co*., for instance stated:  "Achieving judicial economy therefore is the law which this Court is bound to follow." 780 F. Supp. at 1091.

Allowing multiple claimants' state court suits when there is an inadequate limitation fund (and arguably inadequate insurance proceeds) against the master outside a limitation concursus makes hash.  Look what happened after *Zapata Haynie Corp. v. Arthur*, 926 F.2d 484 (5th Cir. 1991) [*Zapata* I] lifted the stay, allowing a separate suit against the master.  The casualty involved a tugboat's allision with a pipeline causing an explosion and 11 deaths.

First, the W.D. La. limitation case absolved the tug's owner, finding the pipeline company solely responsible for the explosion.  *See Zapata Haynie Corp. v. Arthur*, 980 F.2d 287, 289 (5th Cir. 1992) [*Zapata* II].

Second, in a separate E.D. Tex. suit outside the limitation case, the master was found 35% at fault. *Gough v. Nat. Gas Pipeline Co. of Am.,* 996 F.2d 763, 765 (5th Cir. 1993).

3

Thus, the district courts' disparate decisions were both affirmed by the Fifth Circuit:  For the same explosion, the pipeline was completely at fault in one case but only 65% at fault in the other, which "is logically inconsistent and exemplifies the dangers of multiplicity of litigation." M. Isaacs, "A Critical Defect in the Limitation of Shipowners' Liability Act:  The Exclusion of the Master and Crew," 27 Tul. Mar. L.J. 335, 354 (2002).  As the Supreme Court in a prior limitation case had predicted, "the prosecution of separate suits, if allowed to proceed, would result in a subversion of the whole object and scheme of the statute."  *Providence & N.Y.S.S. Co. v. Hill Mfg. Co.*, 109 U.S. 578, 594 (1883).  And worse – contradictory decisions.

Denver submits it is possible to explain the "proper construction" of "the entire Limitation of Liability Act" as accomplished by *In re Paradise Holdings*, 795 F.2d 756, 762 (9th Cir. 1986), and *Zapata* I's finding that "[t]his act is not ambiguous," 926 F.2d at 485, by considering the original language of the Limitation Act.  As pointed out by Denver in ECF No. 54 at 7n.3, original 46 U.S.C. § 187 (while deplorably drafted even by 1851 standards), can be read as limiting actions to remedies for merchandise malversation – cargo theft, embezzlement, and the like – against "such" master in proceedings outside the limitation case.  *See* J. Sweeney, "Limitation of Shipowner Liability: Its American Roots and Some Problems Particular to Collision," 32 J. Mar. L. & Com. 241 (2001).  That makes sense; any cargo-related sins of commission by the master, officers, or crew rightly could be chased outside the concursus.  But when 46 U.S.C. § 187 was amended to the truncated 46 U.S.C. § 30530 version, although more clarity was streamlined therein, overall concursus confusion remained, and in any event § 30530 does not say the liability of the master must be determined outside concursus in order to gut it. But that is the "clearly unjust" result ECF No. 66 at 11-18 creates.

The Court's vacillations, *id*. at 12n.10 notwithstanding, just as Denver's claim against the USCG gave plausibility to the Court's owner at the helm decision distinguishing Judge Tauro's *In re Martin* decision, so too does Denver's claim against the USCG distinguish the sole one and the same owner/master slip opinion, *In re Lee*.  Leaving the USCG out of the human claimants' now lifted state court suits is precisely why the stay should not have been lifted and if the order is not amended, *Zapata*-like hash is sure to ensue.

In sum, assuming *arguendo* that the Fifth Circuit was correct in lifting the stay in *Zapata* I because there was nothing in the record to indicate the master was covered under the vessel owner's insurance and so would not deplete it for the limitation action, 926 F.2d at 487 n.2, the Ninth Circuit in *Paradise Holdings* rightly ruled D. Hi. properly exercised its discretion to maintain the stay of state court actions against the master since he was an additional insured on the vessel owner's policy and state court actions against him would deplete funds available to claimants in the limitation action, 795 F.2d 756.  Here, Denver is one and the same, vessel owner and master, covered by one primary policy, plus excess.  Those proceeds need to be marshalled in this limitation action to satisfy claimants like the United States government who cannot litigate the USCG claim in state court.

## II.   LIFTING THE STAY AGAINST DENVER AS MASTER CIRCUMVENTS HIS BENEFIT OF INSURANCE AS OWNER UNDER THE LIMITATION ACT

"A major purpose of the Act is to permit the shipowner to retain the benefit of his insurance."  *Paradise Holdings, Inc.*, 795 F.2d at 762. "The reason for requiring the limitation proceeding to be completed first is to permit the vessel owner to receive the benefit of his insurance." *Olympic Towing Corp. v. Nebel Towing C*o., 419 F.2d 230, 235 n.17 (5th Cir. 1969), *cert. denied*, 397 U.S. 989 (1970), *overruled on other grounds*, *Crown Zellerbach Corp. v. Ingram Industries, Inc*., 783 F.2d 1296 (5th Cir. 1986)(en banc).  If the state court proceedings

are completed against the master prior to the limitation proceeding, the owner's insurance may well be depleted and the state court's findings could interfere with the federal district court's obligation of determining the circumstances surrounding "privity or knowledge." *In re Spanier Marine Corp.*, 1983 WL 188043, at *2 (E.D. La. Mar. 15, 1983)(restraining the state court action against the master and crew pending resolution of the limitation proceeding).

A limitation stay has been upheld against managing agents, *United States v. M/V Mandan,* 1991 WL 148211, at *1 (E.D. La. Jan. 25, 1991), corporate shareholders, *Flink v. Paladini*, 279 U.S. 59, 63 (1929), and corporate officers, *Guillot v. Cenac Towing Co.*, 366 F.2d 898 (5th Cir.1966).  The Court, in its discretion, should solve the present problem by amending its ECF No. 66 Order and staying the human Claimants' suit against Denver as master outside of the concursus.

## CONCLUSION

Lifting the stay to permit the human Claimants to proceed against Denver as master in state court destroys his ability to limit his liability under LOLA and at least as importantly destroys concursus, denying Denver and Claimant USCG the benefit of his insurance, creating inefficient and duplicative litigation, and unnecessarily injecting issue preclusion confusion into multi-party marine casualty litigation.

In ECF No. 66, the Court endeavored to craft "the fairest and most efficient" solution, *id.* at 18, but it is unworkable and clearly unjust, so Denver proposes another course.  The Claimants can bring their suit against Denver as master in the D. Mass. concursus, with the Court then determining if Denver as owner had privity and knowledge and is not entitled to limit his liability.  All parties -- Owner/Master Denver, human Claimants, Claimant USCG, and Rosenthal

-- then would be efficiently litigating their claims amongst all parties, within the concursus to

avoid *Zapata* injustice.

RESPECTFULLY SUBMITTED April 9, 2024

RYAN DENVER
By his counsel,


*/s/ David J. Farrell, Jr.*
David J. Farrell, Jr. (BBO #559847)
Liam T. O'Connell (BBO # 694477)
Kirby L. Aarsheim (BBO #678774)
FARRELL SMITH O'CONNELL
AARSHEIM APRANS LLP
27 Congress Street, Suite 508
Salem, MA  01930
(978) 744-8918
dfarrell@fsofirm.com
loconnell@fsofirm.com
kaarsheim@fsofirm.com


**Certificate of Service**
Pursuant to Local Rule 5.2, I served this brief on
all attorneys of record via the ECF/CM system
April 9, 2024.

*/s/ David J. Farrell, Jr.*

7