UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In the Matter of RYAN DENVER, as Owner of M/V MAKE IT GO AWAY, for Exoneration from or Limitation of Liability | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | Civil Action No. 21-cv-11841-ADB |

## **MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Limitation plaintiff Ryan Denver brings this action pursuant to the Limitation of Liability Act, 46 U.S.C. §§ 30501–30530, to limit his liability arising from a boat accident in July 2021. This order resolves the two pending dispositive motions: (1) a motion for judgment on the pleadings filed jointly by claimants Aristide Lex, Marzouk Onifade, Tory Govan, and the estate of Jeanica Julce, claimant and counter-defendant the United States of America, and third-party defendant Lee Rosenthal, [ECF No. 97];[1] and (2) a motion for summary judgment filed by claimant Musse Kassa, [ECF No. 99]. For the following reasons, the motion for judgment on the pleadings, [ECF No. 97], and the motion for summary judgment, [ECF No. 99], are both **DENIED**.[2]

---

[1] The motion is titled as a motion to dismiss, but it was filed after the pleadings were closed and seeks dismissal of the action pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, see [ECF No. 97 at 1]; [ECF No. 98 at 6]. Accordingly, the Court will construe and resolve it as a motion for judgment on the pleadings.

[2] This order also resolves three motions related to Kassa's summary judgment motion: Kassa's motion to strike, [ECF No. 106], is **GRANTED IN PART** and **DENIED IN PART**; Kassa's motion to consider facts undisputed pursuant to Federal Rule of Civil Procedure 26(e)(2), [ECF

## I.    BACKGROUND

### A.    Factual Background

The facts underlying this action were fully set forth in the Court's order on the first motion to dismiss filed in this case. See [ECF No. 37 at 1–3]. In summary, at 2:45 a.m. on July 17, 2021, Denver was piloting the M/V MAKE IT GO AWAY (the "Vessel"), which he owned, from the Quincy area back to Boston's inner harbor with seven other passengers aboard, [ECF No. 1 ("Compl.") ¶¶ 3, 5–6], including Govan, [ECF No. 10 at 6], Julce, see [ECF No. 9 at 8], Kassa, [ECF No. 15 ¶ 11], Lex, [ECF No. 8 ¶¶ 58, 61], and Onifade, [ECF No. 13 ¶ 61]. A fixed navigational aid, maintained by the United States Coast Guard and consisting of four exposed pilings extending roughly forty feet above the water, was in the Vessel's path of travel. [Compl. ¶¶ 8–9]. Denver claims that he was navigating "in a proper manner and at an appropriate speed," [id. ¶ 6], following the same route that he had used when he left the harbor, [id. ¶ 12]. The Vessel allided with the navigational aid, the boat began taking on water, and the passengers entered the sea. [Id. ¶¶ 6, 15]. Another vessel approached, apparently to offer aid, but left suddenly without explanation. [Id. ¶¶ 16–18]. Denver and six of the passengers, some of whom suffered injuries, were later rescued by the Coast Guard, while one passenger, Julce, drowned. [Id. ¶¶ 5, 18, 21–22].

### B.    Procedural History

Denver filed this complaint for exoneration from or limitation of liability on November 12, 2021. [ECF No. 1]. The Court issued notice of the limitation action on November 16, 2021. [ECF No. 5]. In December 2021, claims against Denver were filed by Lex, [ECF No. 8], Julce's

---

No. 107], is **DENIED**; and Denver's motion for relief pursuant to Federal Rule of Civil Procedure 56(d), [ECF No. 117], is **DENIED AS MOOT**.

estate, [ECF No. 9], Govan, [ECF No. 10], Onifade, [ECF No. 13], Kassa, [ECF No. 15], and the United States, [ECF No. 16].  Lex, Govan, and Julce's estate also filed a joint motion to dismiss the complaint on December 17, 2021, [ECF No. 6], which the Court later denied, [ECF No. 37].  On January 3, 2022, Denver filed a third-party complaint against Rosenthal, [ECF No. 19], alleging that Rosenthal was the operator of the boat that approached and drove away while the Vessel was in crisis and Denver and the other passengers were in the water, [id. ¶¶ 16–32].  On January 27, 2022, Denver filed a counterclaim against the United States.  [ECF No. 28].

On February 2, 2023, the Court stayed the matter until separate state criminal proceedings against Denver were resolved.  [ECF No. 44].[3]  On February 5, 2025, Denver pleaded guilty in the state criminal action, [ECF No. 103-1 ¶ 5], and on July 2, 2025, Kassa, with the assent of Denver and Lex, moved to lift the Court's stay.  [ECF No. 85].  The Court lifted the stay on July 8, 2025, [ECF No. 90], and approved a joint schedule on July 23, 2025, [ECF No. 93].

On November 19, 2025, third-party defendant Rosenthal and all claimants except Kassa moved for judgment on the pleadings.  [ECF No. 97].  On December 16, 2025, Denver and Kassa each opposed the motion.  [ECF No. 103 (Denver)]; [ECF No. 105 (Kassa)].  On January 6, 2026, the parties seeking judgment on the pleadings filed a reply addressing both Denver's and Kassa's oppositions.  [ECF No. 111].

Separately, on November 25, 2025, Kassa moved for summary judgment.  [ECF No. 99].  Denver opposed Kassa's motion on December 16, 2025.  [ECF No. 104].  On December 30,

---

[3] On April 5, 2023, on motion from Lex, Govan, and the estate of Julce, the Court lifted its stay for the sole purpose of adjudicating a joint motion for judgment on the pleadings by those claimants.  [ECF No. 51].  The Court denied that motion on March 12, 2024, [ECF No. 66], and the case remained stayed, [ECF No. 67].

2025, Kassa filed a motion to strike a declaration by Denver included in Denver's opposition, [ECF No. 106], and on December 31, 2025, Kassa filed a motion to consider certain facts undisputed, [ECF No. 107], and a separate reply to Denver's opposition, [ECF No. 108]. On January 13, 2026, Denver replied to the motion to strike, [ECF No. 112], and the motion to consider facts undisputed, [ECF No. 113]. On January 23, 2026, Denver filed a sur-reply to Kassa's motion for summary judgment, [ECF No. 116], and moved to deny the motion for summary judgment pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, [ECF No. 117], which Kassa opposed on February 6, 2026, [ECF No. 122].

## II.    MOTION FOR JUDGMENT ON THE PLEADINGS

### A.    Legal Standard

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Motions for judgment on the pleadings are resolved under the same standard used for motions under Rule 12(b)(6) of the Federal Rules of Civil Procedure, except that a "Rule 12(c) motion, unlike a Rule 12(b)(6) motion, implicates the pleadings as a whole." Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54–55 (1st Cir. 2006). "Judgment on the pleadings is proper 'only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment.'" Zipperer v. Raytheon Co., 493 F.3d 50, 53 (1st Cir. 2007) (quoting Aponte-Torres, 445 F.3d at 54). In addition to the facts set forth in the pleadings, the Court may also consider "facts susceptible to judicial notice," R.G. Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 182 (1st Cir. 2006), including criminal convictions before other courts, see Kowalski v. Gagne, 914 F.2d 299, 305–06 (1st Cir. 1990).

### B.    Posture of the Case Prior to Denver's Criminal Plea

Before considering the instant motion, it is helpful to briefly recall the Court's order denying the motion to dismiss filed early in this action, In re Denver, 626 F. Supp. 3d 512 (D.

Mass. 2022).  As the Court explained, a vessel owner is not entitled to limitation for an accident caused by an "act of negligence or condition of unseaworthiness" that the owner was "privy to" or "had . . . knowledge of."  Id. at 516 (quoting Carr v. PMS Fishing Corp., 191 F.3d 1, 4 (1st Cir. 1999)); see also 46 U.S.C. § 30523(b) (establishing that limitation is available for any claim not otherwise excluded by law that was "done, occasioned, or incurred, without the privity or knowledge of the [vessel] owner").  The motion to dismiss argued that as an owner at the helm of his own boat at the time of the accident, Denver could not bring a limitation action, because a finding of liability would mean he had been negligent—and was thus ineligible for limitation— while a finding of no liability would make a limitation proceeding unnecessary.  [ECF No. 7 at 4–6].

The Court rejected that argument, noting that other courts had permitted limitation actions to proceed where a limitation plaintiff plausibly alleged that he or she was not negligent in piloting his or her own vessel.  See In re Denver, 626 F. Supp. 3d at 517–18.  The Court reasoned that the complaint, read in the light most favorable to Denver, "contain[ed] just enough factual allegations" to establish that "[Denver] acted reasonably and that the accident and related injuries were caused by other parties' negligence."  Id. at 518.  Accordingly, the Court concluded that Denver was entitled to use the adjudicatory procedure provided by the Limitation of Liability Act, 46 U.S.C. §§ 30501–30530, including the consolidation of claims against the vessel owner in a single action, see Fed. R. Civ. P. F(3)–(5), even if subsequent evidence might ultimately render him ineligible for limitation pursuant to the substantive provisions of the Act. See In re Denver, 626 F. Supp. 3d at 519 ("While it is entirely possible that discovery will undermine [Denver]'s factual allegations, that is an issue for summary judgment or the factfinder

5

at trial.  The Court's present inquiry is limited to the pleadings, which are deemed sufficient to withstand the instant motion."); 46 U.S.C. § 30529; Fed. R. Civ. P. F.

####     C.       Discussion

The parties seeking judgment on the pleadings now argue that Denver's recent guilty plea changes the analysis.  All parties agree that Denver pleaded guilty in Massachusetts court to violating chapter 90B, section 8B(2) of the Massachusetts General Laws, see [ECF No. 98-1 at 19–20]; [ECF No. 98-2 at 3], which imposes criminal penalties on a person who "operates a vessel recklessly or negligent[ly] so that the lives or safety of the public might be endangered and by any such operation causes the death of another person," Mass. Gen. Laws ch. 90B, § 8B(2).[4]  The parties seeking judgment on the pleadings contend that Denver should be estopped from denying that he was negligent because he admitted to being negligent as part of his guilty plea.  [ECF No. 98 at 9–10].  Denver opposes their position for several reasons.

####     1.       Whether the Motion Must Be Converted to One for Summary Judgment

Denver contends that if the Court considers the documents establishing his guilty plea, which were filed in support of the motion for judgment on the pleadings, then it must "treat[] [this motion] as one for summary judgment under Rule 56" of the Federal Rules of Civil Procedure.  [ECF No. 103 at 1 (quoting Fed. R. Civ. P. 12(d))].  The Court disagrees.  Because Denver's plea in the related state court action is "susceptible to judicial notice," R.G. Fin. Corp.,

---

[4] This statutory section is titled "Operation of a vessel under the influence of a controlled substance causing death," Mass. Gen. Laws ch. 90B, § 8B, but the charge to which Denver pleaded guilty was boat homicide by negligent operation, which is established by subsection (2) of the statute and does not involve controlled substances.  See [ECF No. 98-1 at 19–20]; [ECF No. 98-2 at 3].  Though certain filings mistakenly refer to the statutory title rather than the charge to which Denver pled guilty, see, e.g., [ECF No. 97 at 1], the Court takes that to be a scrivener's error that was later corrected, see [ECF No. 111 at 1], and will construe all references to the statute as though they referred to the correct subsection.

446 F.3d at 182; accord Kowalski, 914 F.2d at 305–06, the Court may properly supplement the factual record by noticing that fact without converting the motion to one for summary judgment. R.G. Fin. Corp., 446 F.3d at 182. The Court further observes that consideration of Denver's guilty plea would not require any improper "resolution of contested facts," id., given that Denver does not dispute that he made the plea, see [ECF No. 103-1 ¶ 5]. Accordingly, the Court will take notice of the fact of Denver's plea without treating the motion as one for summary judgment.

### 2.    Whether Denver Should Be Estopped from Denying Negligence

The parties seeking judgment as a matter of law argue that the doctrine of judicial estoppel should prohibit Denver from disclaiming his alleged negligence after he admitted to certain facts during his plea colloquy. [ECF No. 98 at 9]. Denver responds that his prior guilty plea should not preclude him from disclaiming negligence in this proceeding. [ECF No. 103 at 3–5]. The Court agrees with Denver.

"Judicial estoppel is an 'equitable doctrine' intended 'to protect the integrity of the judicial process,' both by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment,' and by preventing the 'risk of inconsistent court determinations.'" Keathley v. Buddy Ayers Constr., Inc., 146 S. Ct. 1532, 1538–39 (2026) (quoting New Hampshire v. Maine, 532 U.S. 742, 749–51 (2001)). "The contours of the doctrine are hazy, and there is no mechanical test for determining its applicability." Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 33 (1st Cir. 2004) (first citing New Hampshire, 532 U.S. at 750–51; and then citing Patriot Cinemas, Inc. v. Gen. Cinemas Corp., 834 F.2d 208, 212 (1st Cir. 1987)); see also Keathley, 146 S. Ct. at 1539–40 (rejecting "overly rigid" rule in judicial-estoppel context and emphasizing that "when a court conducts an equitable inquiry, it

must act 'on a case-by-case basis,' considering all relevant facts and circumstances" (quoting Holland v. Florida, 560 U.S. 631, 649–50 (2010))).  Despite that uncertainty, however, "three factors have guided [the First Circuit] in the past."  United States v. Szpyt, 785 F.3d 31, 41 (1st Cir. 2015).  First, for judicial estoppel to apply, "a party's later position must be clearly inconsistent with its earlier position."  Id. (quoting United States v. Pakala, 568 F.3d 47, 59 (1st Cir. 2009)).  If that factor is satisfied, courts examine two additional factors: "whether the party has succeeded in persuading a court to accept that party's earlier position" and "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."  Id. (quoting Pakala, 568 F.3d at 59).

The First Circuit has explicitly "rejected any per se rule that judicial estoppel always applies or never applies to facts admitted during a guilty plea."  Thore v. Howe, 466 F.3d 173, 185 (1st Cir. 2006).  "[T]he mere assertion of inconsistent facts from those admitted in a plea does not . . . inherently impugn[] the integrity of the judicial process" because "guilty pleas do not necessarily establish absolute historic[al] facts," and "[a]ll facts recited during the plea colloquy are not necessarily 'accepted' by a judge."  Id. at 183–84.  Thus, the doctrine does not apply every time parties take inconsistent positions; rather, it applies only where, due to judicial acceptance of the prior position, there is a "risk of inconsistent decisions."  Id. at 184 (emphasis added) (citing New Hampshire, 532 U.S. at 750–51).  In light of the "number of reasons why a defendant might choose to plead guilty," id. at 185 (first citing Carrasca v. Pomeroy, 313 F.3d 828, 835 (3d Cir. 2002); and then citing Haring v. Prosise, 462 U.S. 306, 318–19 (1983)), "it would be . . . wrong to use the judicial estoppel doctrine automatically to foreclose genuine efforts to demonstrate the truth," id. at 184.  When faced with potential applications of judicial estoppel to facts admitted during a guilty plea, courts therefore must look to "the particular facts

8

of the case," including whether the party's "current position is directly inconsistent with facts admitted at his plea colloquy" and whether there was "sufficient acceptance by the state court of the facts previously admitted." Id. at 185.

i.    Directly Inconsistent Positions

At his plea colloquy, Denver was informed that the state court needed to "be certain that you understand and that you agree and that you accept the facts and the evidence that would be presented at time of trial." [ECF No. 98-1 at 10–11]. The prosecutor then read a statement of facts, which, as relevant here, included the following sentences:

> Mr. Denver was the one who was operating the boat that . . . early morning. As he was operating the boat, he failed to maintain a proper lookout and the level of attention that was required that early morning as he was operating back into the harbor.

[Id. at 11–12]. Denver indicated that he heard the facts and understood them, and the court then asked whether he "did . . . , in fact, do the things, the acts . . . that were [just] described." [Id.]. Denver answered, "Yes." [Id.]. When the court asked whether he understood that his guilty plea meant that he was "admitting that the facts told to the [c]ourt just now are true," he again answered, "Yes." [Id. at 12–13]. Finally, the court asked if there were "any facts that you say are different from the facts you've heard summarized," and Denver answered, "No." [Id.]. Later in the proceeding, the court stated its findings, which included that "there is a factual basis for the defendant's plea of guilty to each of the indictments in the evidence summarized to the [c]ourt by the Commonwealth," [id. at 19], and accepted Denver's guilty plea to "operat[ing] a vessel recklessly or negligent[ly] so that the lives or safety of the public might be endangered and by any such operation caus[ing] the death of another person," Mass. Gen. Laws ch. 90B, § 8B(2). [ECF No. 98-1 at 20].

9

In sum, Denver's relevant factual admissions during his plea colloquy were that he (1) was operating the boat, (2) failed to maintain a proper lookout, and (3) was not maintaining the level of attention that was required.  [ECF No. 98-1 at 11–12].  The Court doubts that the words "proper" lookout and "required" level of attention are precise enough, by themselves, to establish particular historical facts,[5] and to the extent that they are given meaning by a particular legal framework, the state criminal law applicable to that hearing was different from the law relevant to this action, in which the Court "look[s] to 'the principles of maritime negligence' to provide substance to each element," Sawyer Bros., Inc. v. Island Transporter, LLC, 887 F.3d 23, 29 (1st Cir. 2018) (quoting La Esperanza de P.R., Inc. v. Perez y Cia. de P.R., Inc., 124 F.3d 10, 17 (1st Cir. 1997)) (citing Canal Barge Co. v. Torco Oil Co., 220 F.3d 370, 376 (5th Cir. 2000)); see also In re City of New York, 522 F.3d 279, 283 (2d Cir. 2008) (looking to admiralty law to establish duty of care in limitation action).  Whether these admissions, which supported a finding of negligence by the Massachusetts state court, see [ECF No. 98-1 at 11–12, 20], are directly inconsistent with the positions Denver is currently taking in this litigation is a close call.

That said, the Court need not resolve the issue of whether Denver's factual position here is directly inconsistent with his limited and vague admissions at his plea colloquy, because the remaining two factors favor permitting Denver to maintain his current position.

---

[5] By contrast, the factual admissions in Thore were more specific: the plaintiff had previously admitted in a plea colloquy that he accelerated his vehicle toward police officers, pushing one cruiser underneath a parked truck.  466 F.3d at 176–78.  When the plaintiff later sought to use the same events to support his own civil rights action, the contradiction between his first and subsequent accounts of the events was clear enough that the plaintiff himself "conceded that his current position [wa]s directly inconsistent with facts admitted at his plea colloquy."  Id. at 185.

ii.    Judicial Acceptance

Under Massachusetts law, a guilty plea "is not necessarily conclusive as to the facts admitted," and the Massachusetts Supreme Judicial Court has rejected the argument that a guilty plea should have "preclusive, as compared with evidentiary, effect in subsequent civil litigation." Aetna Cas. & Sur. Co. v. Niziolek, 481 N.E.2d 1356, 1362–63 (Mass. 1985); accord Metro. Prop. & Cas. Ins. Co. v. Morrison, 951 N.E.2d 662, 672 (Mass. 2011). This rule of Massachusetts law suggests that, although the Massachusetts court accepted Denver's factual admissions when it accepted Denver's guilty plea, it did not expect to foreclose "inconsistent decisions" in later actions. Thore, 466 F.3d at 184.[6] The nature of the acceptance by that court persuades this Court that the "integrity of the judicial process" will not be "inherently impugn[ed]" by allowing Denver to maintain a contrary position in this action. Id. at 183.

iii.    Unfair Advantage or Detriment

Finally, no party would suffer an unfair detriment or gain an unfair benefit by permitting Denver to advance his present factual position. Any advantage obtained by Denver in the state criminal action did not create a detriment for his counterparties in this action, and any advantage he obtains in this action will not create a detriment for the state prosecution in the prior action. Accordingly, the only question is whether Denver himself would obtain an unfair benefit from

---

[6] The First Circuit has "note[d] that one commentator has questioned why, if state law would not judicially estop a second action in state court . . . a federal court has an interest in applying the doctrine to its own proceedings." Thore, 466 F.3d at 181 n.1 (citing 18B Wright & Miller's Federal Practice & Procedure § 4477 (2d ed. 2002)). The Court is unaware of any case in which a Massachusetts court has applied judicial estoppel to facts admitted during a plea colloquy. See Com. Ins. v. Phillips, No. MICV201301520F, 2013 WL 5988403, at *2–3 (Mass. Super. Ct. Oct. 13, 2013) (noting that the parties had not identified any Massachusetts case applying judicial estoppel after a guilty plea, crediting the analysis in Thore, and concluding that under Massachusetts law, "a guilty plea . . . does not support the application of the doctrine of judicial estoppel in later civil proceedings").

maintaining contradictory positions.  Denver did obtain benefits from his initial guilty plea, including "conclud[ing] a criminal proceeding," limiting his further expenditure of "financial resources for legal fees, expert witnesses, and investigation," and facilitating resolution of the pending "civil claims against [him]," [ECF No. 103-1 at 2], but the same is true of most or all guilty pleas.  Cf. Thore, 466 F.3d at 185 (citing Haring, 462 U.S. at 318–19) (noting "shock, avoidance of financial and emotional cost, and hope for a lesser sentence" as reasons why a person might plead guilty).  If all advantages gained by a guilty plea mandated judicial estoppel, there would be no reason for courts to analyze this factor, because "any defendant who plead[ed] guilty and in doing so admit[ted] to certain facts . . . [w]ould be judicially estopped" from subsequently taking an inconsistent position.  Id. at 183.

That approach "is not [the] view" of the First Circuit.  Thore, 466 F.3d at 183.  Rather, to satisfy this factor, an advantage or disadvantage must be sufficiently "unfair," id. at 181, such as "where a criminal convicted on his own guilty plea seeks as a plaintiff in a subsequent civil action to claim redress based on a repudiation of the confession," id. at 183 (quoting Lowery v. Stovall, 92 F.3d 219, 225 (4th Cir. 1996)).  Here, Denver is simply seeking to limit his civil liability arising from events for which he has already conceded criminal liability.  On balance, the Court does not discern a fairness problem sufficient to bar Denver from maintaining his present factual position.[7]

### D.    Stipulation to Dismissal

Finally, the parties seeking judgment as a matter of law argue that the Court should dismiss the limitation action because Denver has apparently agreed to stipulate to its dismissal,

---

[7] The Court also notes that guilty pleas benefit all parties in a criminal proceeding, and to hold otherwise on facts such as these could discourage pleading by future state defendants who also face federal civil liability.

and because the parties are maintaining other actions in this Court where they can litigate their claims against Denver.  [ECF No. 111 at 4].  Neither of these is reason to dismiss the limitation action.  Even if Denver "remains willing to stipulate with <u>all</u> parties to a dismissal of the limitation of liability action," [ECF No. 103 at 2 (emphasis added)], these parties have not all agreed to dismiss the action, <u>see, e.g.</u>, [ECF No. 99], and Denver has not filed a stipulation of dismissal.  The Court may not dismiss an action <u>sua sponte</u> because of the limitation plaintiff's willingness to dismiss under certain circumstances that have not materialized.  Nor does the availability of other suits bar Denver from seeking limitation of liability, as is his right under the supplemental admiralty rules of the Federal Rules of Civil Procedure.  <u>See</u> Fed. R. Civ. P. F.

### E.    Conclusion

For the foregoing reasons, the Court concludes that Denver should not be estopped from maintaining that he was not negligent for purposes of this limitation action, and that his willingness to stipulate to its dismissal under certain circumstances does not furnish a basis for the Court to dismiss the complaint without such stipulation.  Movants thus are not entitled to judgment on the pleadings or dismissal of the complaint.  Because the Court concludes that movants have not shown that they are entitled to judgment on the pleadings, it does not address the issues raised in Kassa's opposition, [ECF No. 105], which concerns whether the Court may grant a motion for judgment on the pleadings that is not joined by every counterparty.

### III.    MOTION FOR SUMMARY JUDGMENT

Like the parties seeking judgment on the pleadings, Kassa argues that Denver's state-court guilty plea changes the posture of this case such that the Court now may enter judgment in his favor.  Whereas the parties seeking judgment on the pleadings sought dismissal only of the limitation complaint by application of judicial estoppel, Kassa seeks summary judgment on Denver's liability for purposes of future litigation, [ECF No. 100 at 12], by application either of

13

collateral estoppel, [id. at 8], or of the ordinary summary judgment standard, [id. at 6]. The collateral estoppel issue may be quickly resolved. "[I]t is pellucid that [Massachusetts state court] guilty pleas . . . should not . . . be[] given collateral estoppel effect by the district court; they c[an] be treated as admissions only in any subsequent civil litigation." United States v. One Parcel of Real Prop., 900 F.2d 470, 473 (1st Cir. 1990); see also Morrison, 951 N.E.2d at 672 ("[A] plea may be offered as evidence of a defendant's guilt in subsequent civil litigation but it is not given preclusive effect."). In the absence of collateral estoppel, Denver's plea colloquy is simply one piece of evidence to be weighed against others in determining whether summary judgment is warranted.

### A.    Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if "its existence or nonexistence has the potential to change the outcome of the suit," Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010) (citing Martínez v. Colón, 54 F.3d 980, 984 (1st Cir. 1995)), and it is genuinely disputed if "the evidence of record permits a rational factfinder to resolve it in favor of either party," id. at 4–5 (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). "[T]he moving party must direct [the Court] to specific evidence in the record that would be admissible at trial," Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4 (1st Cir. 2015), and show that the evidence either "negates an essential element of the non-moving party's claim," id. (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)), or "demonstrate[s] that the non-moving party will be unable to carry its burden of persuasion at trial," id. at 5 (quoting Carmona, 215 F.3d at 132). Once the moving party has identified such evidence, the burden shifts to the party opposing summary judgment to "demonstrate that a trier of fact could reasonably resolve [each

14

issue on which she would bear the burden of proof at trial] in her favor." Borges, 605 F.3d at 5 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

The Court reviews "the entire record in the light most hospitable to the party opposing summary judgment," Podiatrist Ass'n v. La Cruz Azul de P.R., Inc., 332 F.3d 6, 13 (1st Cir. 2003) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)), and draws all inferences "in the light most favorable to the party opposing the motion," Oleskey ex rel. Boumediene v. U.S. Dep't of Def., 658 F. Supp. 2d 288, 294 (D. Mass. 2009) (quoting Founding Church of Scientology of Wash., D.C., Inc. v. Nat'l Sec. Agency, 610 F.2d 824, 836 (D.C. Cir. 1979)), but it will not credit "conclusory allegations, improbable inferences, [or] unsupported speculation." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (quoting Medina-Muñoz, 896 F.2d at 8).

## B.    Facts Before the Court

Kassa and Denver have identified only two pieces of evidence for the Court to consider in resolving Kassa's summary judgment motion. Kassa directs the Court to Denver's plea colloquy and other documents related to it. [ECF No. 100 at 6–11]. Denver directs the Court to a declaration filed in support of his oppositions to summary judgment and judgment on the pleadings, [ECF No. 103-1], which Kassa has moved to strike, [ECF No. 106].

### 1.    Motion to Strike

Kassa seeks to strike Denver's declaration on the basis that it "does not comply with the requirements" of Rule 56(c)(4) of the Federal Rules of Civil Procedure. [ECF No. 106 at 1].[8]

---

[8] The Court construes the motion to strike as an objection under Federal Rule of Civil Procedure 56(c)(2). See Suzuki v. Abiomed, Inc., No. 16-cv-12214, 2019 WL 109340, at *7 (D. Mass. Jan. 4, 2019) ("[F]ollowing the 2010 amendments to Rule 56, a motion to strike is no longer a proper means of attacking the admissibility of summary judgment evidence." (quoting OFI Int'l, Inc. v.

Specifically, Kassa objects to Denver's statement that the assertions in his declaration are "based on my personal knowledge and/or based on my own investigation and understanding to the best of my personal knowledge and ability," [ECF No. 103-1 ¶ 1], and Denver's "incorporat[ion] . . . as true . . . [of] all of [his] Limitation Complaint's Statement of Facts," [id. ¶ 3]. [ECF No. 106 at 1].

Though Kassa is correct that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge," Fed. R. Civ. P. 56(c)(4); see Bonner v. Triple-S Mgmt. Corp., 68 F.4th 677, 687 (1st Cir. 2023) ("[T]he requisite personal knowledge must concern facts as opposed to conclusions, assumptions, or surmise." (alteration in original) (quoting Perez v. Volvo Corp., 247 F.3d 303, 316 (1st Cir. 2001))), and portions of Denver's declaration arguably do not satisfy this requirement, "district courts must apply Rule 56(c)(4) 'to each segment of an affidavit, not to the affidavit as a whole,' and approach the declaration with 'a scalpel, not a butcher's knife,' disregarding only those portions that are inadmissible and crediting the remaining statements." Rodríguez-Rivera v. Allscripts Healthcare Solns., Inc., 43 F.4th 150, 170 (1st Cir. 2022) (quoting Perez, 247 F.3d at 315). As Kassa recognizes, it is "likely that Mr. Denver has personal knowledge" of at least some of the statements in the limitation complaint. [ECF No. 106 at 4]. The contents of certain statements make clear that they are based on Denver's own knowledge and understanding. Among those statements are Denver's claims that he was "navigating the Vessel . . . in a proper manner and at an appropriate speed," [ECF No. 1 ¶ 6], that Denver "could not see Daymarker No. 5," [id. ¶ 13], and that he "was unable to avoid the allision by the time Daymarker No. 5 came into sight," [id. ¶ 14]. The

---

Port Newark Refrigerated Warehouse, No. 11-cv-06376, 2015 WL 140134, at *1 (D.N.J. Jan. 12, 2015))).

motion to strike is thus denied in part as to those three statements, and otherwise granted with leave to file an amended declaration if Denver wishes.[9]

## 2.      Motion to Consider Facts Undisputed

Kassa next asks the Court to consider four facts undisputed on the basis that Denver "failed 'to properly address another party's assertion of fact as required by Rule 56(c)' and Local Rule 56.1." [ECF No. 107 at 1 (quoting Fed. R. Civ. P. 56(e))].  Those facts are that "Denver negligently failed to maintain a proper lookout in violation of Rule 5 of applicable U.S.C.G. Navigation Rules," [ECF No. 99-1 at 2]; "Denver negligently failed to pay adequate attention to his navigation and operation of the vessel," [id. at 3]; "Denver's negligence and/or legal fault was a substantial cause of the allision, but not necessarily the sole or exclusive cause of the allision," [id.]; and "Denver was in privity and had knowledge of his own acts and omissions resulting in the allision," [id.].  [ECF No. 107 at 1 (identifying facts)].  Denver disputes those facts on the basis that (1) they are mixed statements of law and fact and (2) they purport to apply Denver's criminal conviction as "conclusive in civil cases against Denver."  [ECF No. 104 at 2–3].  Kassa contends that Denver has not properly supported his denial of the facts as required by Rule 56(c) of the Federal Rules of Civil Procedure, and that the Court should thus treat them as undisputed.  The Court disagrees.

Rule 56(c) provides that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion" in one of several ways.  Fed. R. Civ. P. 56(c)(1).  Though Denver has

---

[9] Kassa also argues that the declaration fails to "lay a foundation establishing that [its] claims, opinions, [and] . . . statements . . . 'would be admissible in evidence' . . . or that the 'declarant [Denver] is competent to testify on the matters stated." [ECF No. 106 at 4 (quoting Fed. R. Civ. P. 56 (c)(4))].  The limited statements referenced above are Denver's firsthand impressions from the night of the accident and are thus within the requirements of Rule 56(c)(4).

disputed the procedural correctness of the facts asserted by Kassa,[10] he has not cited any evidence to dispute their factual accuracy.  When a party "fails to properly address another party's assertion of fact as required by Rule 56(c)," the Court "may" take certain actions against that party, including giving the party "an opportunity to properly . . . address the fact" or "consider[ing] the fact undisputed."  Fed. R. Civ. P. 56(e)(1)–(2).  Here, however, there are other materials in the record which the Court may consider in determining whether a fact is disputed. Fed. R. Civ. P. 56(c)(3).  These include Denver's sworn declaration, which avers that he was navigating the vessel properly and at an appropriate speed, and that by the time he saw the navigational aid, he was unable to prevent an allision.  Those statements—which the Court may consider in resolving the summary judgment motion—are enough to show genuine issues of material fact as to whether Denver paid appropriate attention while at the helm, proceeded at a reasonable speed, and maintained a proper lookout.  Accordingly, the motion to consider facts undisputed is denied.

### C.    Merits

Kassa seeks summary judgment on the issues of exoneration and limitation of liability, and asks the Court to make findings that would establish Denver's liability for the allision, see [ECF No. 100 at 12], such that the parties could then seek their own damages in individual actions against Denver, see [id. at 10].  Kassa argues that Denver must rebut a presumption of fault for the allision, and that he is unable to do so on the summary judgment record.  [Id. at 6]. Denver disputes that he should bear the burden of rebutting a presumption of liability, [ECF No.

---

[10] Because it resolves this motion on other grounds, the Court does not decide whether Denver's legal and procedural objections to the facts have merit.

104 at 5], and contends that there remain factual disputes that preclude summary judgment, [id. at 4–5].

Even assuming for sake of argument that the burden-shifting presumptions advanced by Kassa apply here,[11] those presumptions merely shift the burden of proof, and there remains on the record before the Court a genuine dispute of fact as to whether Denver was at fault or not for the allision. The evidence before the Court consists solely of two conflicting sets of statements by Denver, those made at his plea colloquy and those in the declaration filed with his opposition to summary judgment. Denver's statements in the latter group—that he was navigating properly and appropriately and that he was unable to see the navigational aid until it was too late to avoid the allision—carry his burden, as the non-moving party, of responding to the facts presented by Kassa, the moving party, with evidence showing that the trier of fact could resolve the issue of fault in his favor, thereby preventing summary judgment.

## IV.    CONCLUSION

For the foregoing reasons, the motion for judgment on the pleadings, [ECF No. 97], and the motion for summary judgment, [ECF No. 99], are both **DENIED**. Kassa's motion to strike, [ECF No. 106], is **GRANTED IN PART** and **DENIED IN PART** with leave to file an amended declaration. Kassa's motion to consider facts undisputed pursuant to Federal Rule of Civil

---

[11] Kassa seeks to apply two doctrines of maritime law known as the Oregon and Pennsylvania rules. [ECF No. 100 at 3–4, 5–8, 11]. As the Court previously explained, the Oregon rule provides that "when a vessel under its own power collides with an anchored vessel or a navigational structure, the burden of proving absence of fault or vis major rests on the pilot vessel." Denver, 626 F. Supp. at 518 (quoting City of Boston v. S.S. Texaco Tex., 773 F.2d 1396, 1398 (1st Cir. 1985)). The Pennsylvania rule provides that where "a plaintiff can establish both that the defendant breached a statutory duty and that the breach is relevant to the casualty in question, the defendant assumes the burden of proving that its breach could not have caused plaintiff's damages." Id. at 519 (quoting Poulis-Minott v. Smith, 388 F.3d 354, 363 (1st Cir. 2004)).

19

Procedure 26(e)(2), [ECF No. 107], is **DENIED**.  Denver's motion for relief pursuant to Federal

Rule of Civil Procedure 56(d), [ECF No. 117], is **DENIED AS MOOT**.


        **SO ORDERED.**

July 9, 2026                                              */s/ Allison D. Burroughs*
                                                  ALLISON D. BURROUGHS
                                                  U.S. DISTRICT JUDGE